UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CHAD STANBRO,                                              :
                                                          :
                    Plaintiff,                            :     20-cv-1591(KMK)
                                                          :
              -against-                                   :
                                                          :
CORRECTION OFFICER NADYA PALOU, et al.,                   :
                                                          :     Consolidated for Purposes of Discovery
                                                          :     with:
                    Defendants.                           :
-------------------------------------------------------------------X
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
CHAD STANBRO,                                             :
                                                         :
                    Plaintiff,                           :
                                                         :
              -against-                                  :
                                                         :     19-cv-10857(KMK)
WESTCHESTER COUNTY HEALTH CARE                           :
CORPORATION, et al.,                                     :
                                                         :
                    Defendants.                          :
------------------------------------------------------------------ X

**DEFENDANTS CORRECTION OFFICER KRISTOFER LEONARDO, CORRECTION
OFFICER RICHARD LANDRY, AND SERGEANT ENRIQUE TORRES'
MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
<u>MOTION FOR SPOLIATION SANCTIONS</u>**

LETITIA JAMES
Attorney General
State of New York
Attorney for Defendants Leonardo, Landry,
Torres, and Pagliaro
28 Liberty Street, 18th Floor
New York, NY 10005
Tel.: (212) 416-8906

DEANNA L. COLLINS
Assistant Attorney General
    of <u>Counsel</u>

Dated:  June 15, 2021

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

RELEVANT ALLEGATIONS, EVIDENCE, AND PROCEDURAL HISTORY ....................... 3

STANDARD OF REVIEW .................................................................................................. 6

ARGUMENT ...................................................................................................................... 7

POINT I          PLAINTIFF FAILS TO ESTABLISH THAT THE OAG REPRESENTED
                 DEFENDANTS HAD CONTROL OVER THE VIDEO OR THAT THE
                 UNION OR TORRES HAD A DUTY TO PRESERVE ..................................... 7

        A.       There Is No Evidence The Union Ever Received A Copy Of The Video ............ 7

        B.       The Union Had No Duty To Preserve The Video And Was Not An Agent
                 Of The OAG Represented Defendants For Purposes Of This Litigation ............ 9

        C.       Torres Had No Duty To Preserve Video For Which He Had No
                 Responsibility ................................................................................................. 13

        D.       Any Duty To Preserve Arose After The Video Was Lost................................. 15

POINT II         PLAINTIFF FAILS TO ESTABLISH THAT THE OAG REPRESENTED
                 DEFENDANTS ACTED WITH THE NECESSARY CULPBABLE
                 MENTAL STATE ................................................................................................ 15

POINT III        PLAINTIFF FAILS TO ESTABLISH ANY PREJUDICE FROM THE
                 LOSS OF THE VIDEO ...................................................................................... 17

POINT IV         THE GOALS OF A SPOLIATION SANCTION WOULD NOT BE
                 ADVANCED BY SANCTIONING THE OAG REPRESENTED
                 DEFENDANTS .................................................................................................. 19

CONCLUSION ................................................................................................................. 20

## TABLE OF AUTHORITIES

**CASES**                                                                           **PAGE(S)**

Alaimo v. Trans World Airlines, Inc.,
    No. 00-cv-3906, 2005 WL 267558 (S.D.N.Y. Feb. 3, 2005) ....................................................9

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)........................................................................................................14

Barsoum v. N.Y.C. Hous. Auth.,
    202 F.R.D. 396 (S.D.N.Y. 2001) ..................................................................................15

Beck v. Commc'ns Workers of Am.,
    800 F.2d 1280 (4th Cir. 1986) (concurring opinion), per curiam decision aff'd
    487 U.S. 735 (1988)........................................................................................................12

Bernardez v. Graham,
    No. 11-cv-6463, 2015 WL 13236701 (S.D.N.Y. Nov. 3, 2015) (McCarthy, J.)
    (Rep. & Recommendation), adopted by 2016 WL 8715936 (S.D.N.Y. Apr. 15,
    2016) ..............................................................................................................................14

Cabrera v. Jakabovitz,
    24 F.3d 372 (2d Cir. 1994), cert. denied 513 U.S. 876 (1994), superceded by
    statute on other grounds as recognized by Mhany Mgmt., Inc. v. Cnty. of
    Nassau, 819 F.3d 581 (2d Cir. 2016) ............................................................................11

Cleveland v. Caplaw Enters.,
    448 F.3d 518 (2d Cir. 2006).................................................................................... 10-11

Dilworth v. Goldberg,
    3 F. Supp. 3d 198 (S.D.N.Y. 2014)..................................................................................8

Doe v. Cook Cnty.,
    798 F.3d 558 (7th Cir. 2015) .........................................................................................12

Eirhart v. Libbey-Owens Ford Co.,
    726 F. Supp. 700 (N.D. Ill. 1989) .................................................................................12

Fujitsu Ltd. v. Fed. Exp. Corp.,
    247 F.3d 423 (2d Cir. 2001)................................................................................... 7, 9-10

Howard Johnson Rest., Inc. v. N.L.R.B.,
    No. 77-cv-124, 1977 WL 1700 (W.D.N.Y. 1977)........................................................12

In re Terrorist Bonbings of U.S. Embassies in E. Africa,
    552 F.3d 93 (2d Cir. 2008)...............................................................................................6

Jacquety v. Baptista,
　　No. 19-cv-9642, 2021 WL 1885263 (S.D.N.Y. May 11, 2021) ...............................................7

Johnson v. Perry,
　　763 F. App'x 81 (2d Cir. 2019) (summ. order) ................................................................ 6-7

Karsch v. Blink Health Ltd.,
　　No. 17-cv-3882, 2019 WL 2708125 (S.D.N.Y. June 20, 2019) ...........................................17

Knipe v. Skinner,
　　999 F.2d 708 (2d Cir. 1993)..............................................................................................14

Koch v. Greenberg,
　　No. 07-cv-9600, 2011 WL 13260757 (S.D.N.Y. Aug. 16, 2011)..........................................9

Levy v. Young Adult Inst., Inc.,
　　103 F. Supp. 3d 426 (S.D.N.Y. 2015).................................................................................9

Offor v. Mercy Med. Ctr.,
　　No. 15-cv-2219, 2019 WL 4918082 (E.D.N.Y. Oct. 4, 2019) ..............................................8

Residential Funding Corp. v. DeGeorge Fin. Corp.,
　　306 F.3d 99 (2d Cir. 2002)................................................................................................16

Rivera v. Hudson Vally Hosp. Grp., Inc.,
　　No. 17-cv-5636 (KMK), 2019 WL 3955539 (S.D.N.Y. Aug. 22, 2019)................................7

Sec. & Exch. Comm'n v. Allaire,
　　No. 03-cv-4087, 2019 WL 6114484 (S.D.N.Y. Nov. 18, 2019)............................................9

Slotkin v. Citizens Cas. Co.,
　　614 F.2d 301 (2d Cir. 1979), cert. denied 449 U.S. 981 (1980) ........................................11

Thomas v. Butkiewicus,
　　No. 3:13-cv-747, 2016 WL 1718368 (D. Conn. Apr. 29, 2016) ............................... 13-14, 16

Thousand v. Corrigan,
　　No. 15-cv-1025, 2017 WL 4480185 (N.D.N.Y. Oct. 6, 2017)..............................................19

Tri-Cnty. Motors, Inc. v. Am. Suzuki Motor Corp.,
　　494 F. Supp. 2d 161 (E.D.N.Y. 2007) .................................................................................8

Ungar v. City of New York,
　　329 F.R.D. 8 (S.D.N.Y. 2018) ...................................................................................... 16-17

Weslowski v. Zugibe,
　　96 F. Supp. 3d 308 (S.D.N.Y. 2015), aff'd 626 F. App'x 20 (2d Cir. 2015)
　　(summ. order)....................................................................................................................9

iii

West v. Goodyear Tire & Rubber Co.,
    167 F.3d 776 (2d Cir. 1999)......................................................................................19


**STATUTES**

Federal
    42 U.S.C. § 1983.....................................................................................................14

State
    N.Y. Pub. Off. Law § 17..........................................................................................10


**RULES**

Federal Rules of Civil Procedure
    Rule 37............................................................................................................. 16-17
    Rule 37 (2015 Amend. cmt.)............................................................................ 16-17
    Rule 45..................................................................................................................10

Federal Rules of Evidence
    Rules 801-805..........................................................................................................8
    Rule 803...................................................................................................................8


**MISCELLANEOUS**

N.Y.S. Corr. Officers & Police Benevolent Ass'n, Inc., "About Us," available at
    nyscopba.org/about-us (last visted June 2, 2021)..................................................10

Restatement (Second) of Agency § 1 (cmt. b) (1958)..................................................11

Restatement (Third) of Agency (2006)
    § 8.09(1)................................................................................................................11
    cmt. a.....................................................................................................................11

## PRELIMINARY STATEMENT

The OAG Represented Defendants, by their attorney, LETITIA JAMES, Attorney General of the State of New York, respectfully submit this memorandum of law in opposition to Plaintiff's motion for spoliation sanctions (ECF 67).[1] Plaintiff Chad Stanbro ("Plaintiff") brings these matters, which have been consolidated for purposes of discovery, against the following defendants: in the matter of Stanbro v. Palou, No. 20-cv-1591(SDNY), defendants Correction Officer ("CO") Kristofer Leonardo, CO Richard Landry, Sergeant ("Sgt.") Enrique Torres, Nurse Gary Pagliaro, CO Raymond Deal, and CO Nadya Palou; and in the matter of Stanbro v. Westchester County Health Care Corporation, No. 19-cv-10857(SDNY), defendants Westchester Medical County Health Care Corporation, Westchester Medical Center ("WMC"), Dr. Frank Weber, and Dr. John Full (collectively, the "Medical Defendants"). Plaintiff alleges that he was subject to excessive force by COs Leonardo, Landry, Deal, and Palou while undergoing an outpatient dental procedure at WMC performed by Drs. Weber and Full. He further alleges that the Medical Defendants failed to provide him proper medical care and improperly permitted his discharge without addressing his medical needs. Finally, he alleges that he was subjected to verbal abuse upon his return to Fishkill Correctional Facility ("Fishkill") from WMC by Nurse Pagliaro and Sgt. Torres and additional excessive force by Nurse Pagliaro that Sgt. Torres failed to intervene in.

Plaintiff now moves for spoliation sanctions against CO Leonardo, CO Landry, Sgt. Torres (collectively, the "OAG Represented Defendants"),[2] CO Deal, and CO Palou because of the inability to date of the New York State Department of Corrections and Community Supervision ("DOCCS") to locate video of Plaintiff's escort from Fishkill to an outside hospital after these

---

[1] Unless otherwise indicated, citation to the ECF docket is to the docket in the matter of Stanbro v. Palou, No. 20-cv-1591(SDNY).

[2] Plaintiff does not move against Nurse Pagliaro, whom this Office also represents. For convenience however, CO Leonardo, CO Landry, and Sgt. Torres will be referred to as the "OAG Represented Defendants" in this memorandum.

alleged events occurred. For the reasons set forth below, the OAG Represented Defendants respectfully request that Plaintiff's motion be denied.

In summary, first, Plaintiff's motion must be denied because he cannot meet his burden of proof to establish that the OAG Represented Defendants had control over or responsibility for the lost video, nor any duty to preserve it. His conclusory assertion that such responsibility may be imputed from the alleged conduct of the correctional officers' union because of an alleged agency relationship is baseless and unsupported by any necessary factual evidence. Also unsupported, is Plaintiff's contention that Sgt. Torres "investigated" the "incident" because he collected the paperwork. Further, a litigation hold was put into place well before this litigation commenced and shortly after litigation was anticipated and the only likely explanation is that the video was lost shortly after it was created, as no entity that ordinarily may receive a copy of it has one.

Second, Plaintiff acknowledges that the video was not lost or destroyed with a willful mental state or by anyone acting in bad faith, and his argument that ordinary negligence is sufficient to show entitlement to the sanctions he seeks is erroneous. In any event, there is no evidence that the OAG Represented Defendants acted negligently considering that they either did not know of the video's existence or otherwise had no control over or responsibility for it.

Third, Plaintiff is unable to show any prejudice from the loss of the video because there is already evidence that shows Plaintiff in the same state he would be shown therein. Additionally, it is highly unlikely that the video would portray the speculative condition he suggests that it may because the video did not begin until after the events that he claims occurred at Fishkill were over, among other things.

Finally, an award of sanctions in this matter would run contrary to their purpose. The OAG Represented Defendants were not responsible for the video and had no control over its preservation

or loss and therefore cannot be deterred from engaging in the same conduct in the future. Further, there is no risk that any jury determination would be in error without the video, as there is already substantial evidence of Plaintiff's allegations of pain and his physical appearance is already in the record. In light of this, Plaintiff is not in any different position than had the video existed.

## RELEVANT ALLEGATIONS, EVIDENCE, AND PROCEDURAL HISTORY

For the purpose of this motion only, the following are the pertinent facts:  On August 31, 2018, Plaintiff, an inmate at Fishkill, was transported by COs Deal and Palou, who worked at Fishkill, from Fishkill to the WMC dental clinic for an outpatient dental procedure. COs Leonardo and Landry, who worked at Greene Correctional Facility ("Greene"), were also at the WMC dental clinic escorting and supervising several inmates from Greene. During Plaintiff's procedure, Plaintiff became agitated, aggressive, and violent and the correction officers used force to restrain Plaintiff. Drs. Weber and Full stopped the dental procedure as a result of Plaintiff's noncompliance. Plaintiff alleges that as a result of alleged use of force by the COs, he suffered an injury and was temporarily paralyzed.[3] Security staff from WMC provided a wheelchair for Plaintiff, and COs Deal and Palou then left the dental clinic with Plaintiff in the chair, and transported him back to Fishkill. COs Leonardo and Landry were no longer involved at this point.

Surveillance video from cameras inside the WMC dental clinic hallways and outside the hospital have been produced in discovery. Plaintiff is depicted in those videos as he is being wheeled out of the examination room, out of the dental clinic, and out of the facility. (See Decl. of

---

[3] Plaintiff devotes much of his "Statement of Fact" section of his memorandum of law in support of his motion for spoliation sanctions to describe testimony of the officers regarding the force used at WMC and to argue that the force was unnecessary, excessive, and resulted in substantial injuries. The OAG Represented Defendants dispute such "facts," and accordingly present their own brief summary of what occurred at WMC herein. Further, the OAG Represented Defendants note that Plaintiff has fully regained any alleged loss of his ambulatory functionality.

Deanna L. Collins in Opp'n to Pl.'s Mot. for Spoliation Sanctions ("Collins Decl.") at Ex. A (an example of a "screen shot" from the WMC surveillance video).)

Plaintiff arrived at Fishkill and remained in the van until staff removed him. He testified that Nurse Pagliaro "ripped" him out of the van and that other unidentified officers caught him before he could fall on his face and was not injured during this extraction. He was then placed into a medical chair and Nurse Pagliaro wheeled him into the medical unit at Fishkill. (Pl.'s Dep. Tr. 90:10—91:20, 92:10, 158:20—159:4 (attached to Collins Decl. at Ex. B).) While Plaintiff was in the medical chair inside the exam room in the RMU, photographs were taken of him, which have been produced in this action. (See Collins Decl. at Ex. C.) Plaintiff testified that inside the room, an unidentified person unbuckled the chair's belt and Plaintiff slid to the floor and hit the back of his head on a door. (Pl.'s Dep. Tr. 92:13-23.) Plaintiff testified that Nurse Pagliaro then used a plastic needle to "stab" Plaintiff's foot while he was on the floor in order to get some kind of reflex and then pushed on Plaintiff's toenail and pinched Plaintiff's legs but Plaintiff was unable to feel any of these things. (Id. 94:13—95:11.) EMT's then arrived, placed Plaintiff into a bed (i.e., a stretcher), wheeled him outside the RMU, presumably placed him into an ambulance, and transported him to St. Luke's Hospital. (Id. at 95:23—96:5, 166:11-20, 167:25—168:5.) Plaintiff testified that officers from Fishkill accompanied him on this EMT transport and that nothing remarkable happened during it. (Id. at 168:6-11, 171:12-14.)

Fishkill contains a Regional Medical Unit ("RMU"), which occupies an entire building of the facility. (Pagliaro Dep. Tr. 24:3—25:23 (attached to Collins Decl. at Ex. D).) The first floor of the building contains a clinic, which itself consists of a small emergency room, doctors and nurses' offices for examinations, a conference room, and a dental clinic. (Id. at 24:3-11.) After entering the RMU's front door, there is a hallway; to the right is the clinic and to the left is the specialty

area that includes specialty clinics for, for example, cardiology, endocrinology, and oncology. (Id. 24:12—25:7.) The second floor of the RMU building contains an infirmary with bedrooms and single rooms and a long-term care unit; the third floor contains an Alzheimer's unit; and the basement contains a dialysis area. (Id. 25:24—26:24.) There are also storage rooms in the RMU. (Id. at 26:25—27:3.)

Fishkill Deputy Superintendent of Security ("DSS") Stephen Urbanski ordered uninvolved officers to accompany Plaintiff on this transport by EMTs to St. Luke's Hospital and ordered that the transport be videotaped with a handheld video camera. (Urbanski Dep. Tr. 59:25—60:10 (attached to Collins Decl. at Ex. E).) DSS Urbanski later viewed the footage that was recorded (hereinafter, the "Video") after the camera was returned to Fishkill but could not recall what it depicted. (Id. 61:22—62:11.) However, he recalled that the way Plaintiff appeared on the Video was substantially the same as how he appeared in the photographs that were taken of him inside the RMU, except that in the Video he was not in a chair. (Id. 64:20—65:3.) DSS Urbanski also testified that Fishkill notified the Office of Special Investigations ("OSI"), which is the investigating arm of DOCCS, that day to begin an investigation. (Id. at 21:25—22:18.)

Sgt. Torres testified that, as part of standard operating procedure, a handheld video camera would have been used to record Plaintiff's transport to the outside hospital. (Torres Dep. Tr. 100:25—101:22 (attached to Collins Decl. at Ex. F); see also Decl. of Stephen Urbanski ("Urbanski Decl.") ¶ 5 (attached to Pl.'s Not. of Mot. (ECF 67) at Ex. 7 at p. 8-11).) However, he testified that he did not recall when the officers who recorded Plaintiff's transport actually began the recording (nor would he know, as he did not watch it or record it). (See Torres Dep. Tr. 101:3—104:8.) He further testified that he did not review the Video and that when it was brought back to the facility, it should have been given to the Watch Commander's office and then made part of the

incident's file per standard operating procedure. (<u>Id.</u> 106:11-25.) Although Torres agreed with Plaintiff's counsel that such video should be available at least until the conclusion of "the investigation," that answer was over objection to form and foundation. (<u>Id.</u> 107:2-8.)

Sgt. Torres' role with respect to the events of August 31, 2018 was limited to his role as the on duty sergeant for the RMU building during the shift that COs Deal and Palou returned to Fishkill with Plaintiff. (<u>Id.</u> 107:21—108:14.) In that capacity, his job was to ensure that staff involved in the use of force complete the required paperwork and to summarize the information reported in a memorandum and report of his own. (<u>Id.</u> 81:20—82:6, 112:8—113:5, 113:15-23.) He did not testify that he "investigated" any incident that occurred that day.

On November 8, 2018, shortly following this Office's receipt of Plaintiff's Notice of Intention to File Claim in the New York State Court of Claims, and well before either of the federal lawsuits commenced, this Office instructed DOCCS to put into place a litigation hold concerning the events surrounding the August 31, 2018 incidents. (Collins Decl. ¶ 3 & Ex. G (Notice of Intent to File Claim).) Despite this, and after an exhaustive search, (<u>see</u> <u>generally</u> Pl.'s Not. of Mot. at Ex. 7), to date, the Video has not been located.

## <u>STANDARD OF REVIEW</u>

"Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." <u>In re Terrorist Bombings of U.S. Embassies in E. Africa</u>, 552 F.3d 93, 148 (2d Cir. 2008) (internal quotation marks and citation omitted). "A party seeking an adverse inference instruction based on the alleged spoliation of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed, (2) that the records were destroyed with a culpable state of mind, and (3) that the destroyed evidence was relevant to the

party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." <u>Johnson v. Perry</u>, 763 F. App'x 81, 84 (2d Cir. 2019) (summ. order). It is the movant's burden to establish all necessary elements of a motion for spoliation sanctions, <u>see</u> <u>Rivera v. Hudson Valley Hosp. Grp., Inc.</u>, No. 17-cv-5636 (KMK), 2019 WL 3955539, at *3 (S.D.N.Y. Aug. 22, 2019), and this burden must be met by a preponderance of the evidence, <u>Jacquety v. Baptista</u>, No. 19-cv-9642, 2021 WL 1885263, at *10 (S.D.N.Y. May 11, 2021) (citation omitted). Even if a court finds that evidence has been spoliated, the court may, in its discretion, find that no sanction is necessary. <u>Fujitsu Ltd. v. Fed. Exp. Corp.</u>, 247 F.3d 423, 436 (2d Cir. 2001).

## **ARGUMENT**

### **POINT I**

### **PLAINTIFF FAILS TO ESTABLISH THAT THE OAG REPRESENTED DEFENDANTS HAD CONTROL OVER THE VIDEO OR THAT THE UNION OR TORRES HAD A DUTY TO PRESERVE**

Plaintiff argues in his moving brief that the first element for his spoliation claim is satisfied because: (1) the New York State Correctional Officers and Police Benevolent Association, Inc. (hereinafter, the "Union") "functioned as the officers' agent," and "at some point . . . had physical possession of, and therefore 'control over,' at least a copy of" the Video," (Mem. of Law in Supp. of Pl.'s Mot. for an Order Imposing Spoliation Sanctions ("Pl.'s Mem.") at 11-12 (ECF 67-9)); and (2) Torres was assigned "the investigation of the underlying incident," (<u>id.</u> at 12). Plaintiff's arguments must be rejected.

#### **A.  There Is No Evidence The Union Ever Received A Copy Of The Video**

Plaintiff's reliance on a misleading interpretation of DSS Urbanski's declaration and hearsay statements within it is insufficient to meet his burden to establish by a preponderance of

the evidence the first element of a spoliation motion and show that the Union even received a copy

of the Video. Indeed, without having received a copy of the Video, the Union could not, therefore,

be found to have failed to preserve it.

Plaintiff asserts that DSS Urbanski affirmatively stated that a copy of the Video was sent

to the Union. (Pl.'s Mem. at 8.) This is incorrect. DSS Urbanski actually stated that he spoke with

an Assistant Director for the Bureau of Labor Relations ("BLR") in DOCCS, and that this

individual informed DSS Urbanski that the individual "believe[d] that the video was sent [by BLR]

to the [Union]." (Urbanski Decl. ¶ 13.) However, this individual's "belief" of what this labor

dispute adversary possessed is exactly that: a belief, which may ultimately be correct or incorrect,

but as such is certainly not evidence of any affirmative fact. Moreover, any statement made by this

individual is hearsay for which no exception applies. Fed. R. Evid. 801-805; see also id. R. 803(3)

(no exception to hearsay rule for "statement of memory or belief to prove the fact remembered or

believed" except as relevant to a declarant's will); Offor v. Mercy Med. Ctr., No. 15-cv-2219,

2019 WL 4918082, at *1 (E.D.N.Y. Oct. 4, 2019) (affidavit by individual with no personal

knowledge and which repeats statements made by another insufficient to carry burden of proof for

spoliation motion); Dilworth v. Goldberg, 3 F. Supp. 3d 198, 203-04 (S.D.N.Y. 2014) (hearsay

evidence insufficient to support spoliation motion); see id. (quoting Tri-Cnty. Motors, Inc. v. Am.

Suzuki Motor Corp., 494 F. Supp. 2d 161, 177 (E.D.N.Y. 2007)) ("Case law is clear . . . that

'speculative assertions as to the existence of documents do not suffice to sustain a motion for

spoliation of evidence.'").

For this reason, even assuming that the Union's actions are attributable to the OAG

Represented Defendants, but see Part I(B) below, Plaintiff has failed to meet his burden and

accordingly, his motion must be denied.

8

**B.  The Union Had No Duty To Preserve The Video And Was Not An Agent Of The OAG Represented Defendants For Purposes Of This Litigation**

Plaintiff also conclusorily asserts that the Union "functioned as the officers' agent" and therefore its alleged "obligation to preserve the videotape" is "imput[ed] to the officers." (Pl.'s Mem. at 12.) However, nowhere in the body of Plaintiff's argument does Plaintiff attempt to show that the Union, in fact, functioned as the OAG Represented Defendants' agent in this context, nor why it assumed any obligation to preserve any copy of the Video it may have received. Instead, Plaintiff string cites to non-binding cases from outside this Circuit and a single case from the Western District of New York, as well as deposition testimony, in footnotes of his brief, which this Court should not consider. (Id. at 12 nn.9-10); see, e.g., Sec. & Exch. Comm'n v. Allaire, No. 03-cv-4087, 2019 WL 6114484, at *3 n.1 (S.D.N.Y. Nov. 18, 2019) (citation omitted) ("An argument mentioned only in a footnote is not adequately raised and need not be considered."); Weslowski v. Zugibe, 96 F. Supp. 3d 308, 314 (S.D.N.Y. 2015), aff'd 626 F. App'x 20 (2d Cir. 2015) (summ. order) (collecting cases and noting where "arguments appear only in footnotes, they are not properly raised, and the Court is under no obligation to consider them"); Levy v. Young Adult Inst., Inc., 103 F. Supp. 3d 426, 441 (S.D.N.Y. 2015) (collecting cases and disregarding arguments raised in footnotes as not properly raised). For these reasons, Plaintiff has failed to meet his burden to establish the first spoliation factor.

In any event, the Union had no duty to preserve any copy of Video it may have received. "The threshold question when considering sanctions for the destruction of evidence is whether the party who destroyed the evidence had any obligation to preserve it, as where 'the party should have known that the evidence may be relevant to future litigation.'" Koch v. Greenberg, No. 07-cv-9600, 2011 WL 13260757, at *14 (S.D.N.Y. Aug. 16, 2011) (quoting Alaimo v. Trans World Airlines, Inc., No. 00-cv-3906, 2005 WL 267558, at *3 (S.D.N.Y. Feb. 3, 2005)); see also Fujitsu,

247 F.3d at 436 (citation omitted) ("The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.").

Here, the Union's responsibility lies with "facilitating employment discipline procedures between labor and management." (Urbanski Decl. ¶ 13.) Accordingly, even if the Union received a copy of the Video, it did so for purposes of defending any potential disciplinary action that may have resulted from the internal DOCCS' Office of Special Investigation ("OSI")'s investigation of the incident that occurred at WMC involving COs Deal, Palou, Landry, and Leonardo. Civil litigation defense—of which Plaintiff fails to submit any evidence that the Union plays any role in—would therefore not have been reasonably anticipated. See N.Y.S. Corr. Officers & Police Benevolent Ass'n, Inc., "About Us," available at nyscopba.org/about-us (last visited June 4, 2021). Indeed, under New York Public Officers Law Section 17, the State provides the defense for such actions. See N.Y. Pub. Off. Law § 17(2)(a). In fact, Plaintiff's failure to subpoena the Union to produce the Video demonstrates that even he did not reasonably believe that the Union had a duty to preserve the Video, even assuming the Union ever possessed it.[4]

Indeed, there is no evidence that any agency relationship existed between the OAG Represented Defendants and the Union, much less any evidence as to the scope of that relationship and whether or not it included a duty to preserve any video received from the BLR (or indeed, any evidence). "Agency is a legal concept that depends on the existence of three elements" that are established through factual information: "'(1) the manifestation by the principal that the agent shall act for him; (2) the agent's acceptance of the undertaking; and (3) the understanding of the parties that the principal is to be in control of the undertaking.'" Cleveland v. Caplaw Enters., 448 F.3d

---

[4] The Rules of Civil Procedure requires that a subpoena addressed to a non-party be served on the other parties, which has not occurred with respect to any subpoena addressed to the Union. See Fed. R. Civ. P. 45(a)(4).

518, 522 (2d Cir. 2006) (quoting <u>Cabrera v. Jakabovitz</u>, 24 F.3d 372, 386 n.13 (2d Cir. 1994), <u>cert.</u> <u>denied</u> 513 U.S. 876 (1994), <u>superseded</u> <u>by</u> <u>statute</u> <u>on</u> <u>other</u> <u>grounds</u> <u>as</u> <u>recognized</u> <u>by</u> <u>Mhany</u> <u>Mgmt., Inc. v. Cnty. of Nassau</u>, 819 F.3d 581 (2d Cir. 2016)) (emphasis omitted). More specifically,

> A determination that an agency relationship exists requires the application of a legal standard to a set of historical facts. "Agency is a legal concept which depends upon the existence of required factual elements: the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." Unless the facts are insufficient to support a finding of agency or there is no dispute as to the historical facts, the question of agency should be submitted to the jury so that it may apply the applicable legal standard, as set forth in the instructions, to the facts, as the jury finds them.

<u>Cabrera</u>, 24 F.3d at 386 (quoting Restatement (Second) of Agency § 1 (cmt. b) (1958) and citing <u>Slotkin v. Citizens Cas. Co.</u>, 614 F.2d 301, 317 (2d Cir. 1979), <u>cert.</u> <u>denied</u> 449 U.S. 981 (1980)). "An agent has a duty to take action only within the scope of the agent's actual authority," Restatement (Third) Agency § 8.09(1) (2006), which is "established through manifestations of the principal at the commencement of the agency relationship or through interim instructions from the principal," <u>id.</u> (cmt. a).

Here, Plaintiff presents no evidence as to either the existence or the scope of this alleged agency relationship, which is fatal to his motion. Plaintiff relies only upon—again, within a footnote, which is improper and should not be considered by this Court—the deposition testimony of COs Landry and Leonardo in which they stated that they met with a Union representative prior to their interviews with OSI. (Pl.'s Mem. at 12 n.10.) That infinitesimal evidence does not establish any necessary element of an agency relationship or its scope. Notably, COs Landry and Leonardo had no knowledge that any video of a transport from Fishkill to an outside hospital even <u>existed</u>, as they did not even work at Fishkill. Accordingly, they were not even aware of the Video until

11

the litigation of this issue. Further, Torres was not part of the OSI investigation and therefore had no agency relationship with the Union in which he could instruct his alleged "agent" to preserve it.

Further, the cases cited by Plaintiff in his footnote do not establish that a union acts as an agent of an employee for purposes of any duty to preserve. Rather, they generally describe a union's duty to act on behalf of employees for purposes of issues involved with collective bargaining. See Doe v. Cook Cnty., 798 F.3d 558 (7th Cir. 2015) (permitting union to move to intervene to act as agent of its members in order to oppose a settlement agreement that would restrict its members' collective bargaining rights); Beck v. Commc'ns Workers of Am., 800 F.2d 1280, 187 (4th Cir. 1986) (concurring opinion), per curiam decision aff'd 487 U.S. 735 (1988) (union's duty of fair representation to its members and statutorily imposed duty to act on behalf of non-union employees for purposes of collective bargaining restricted its ability to use expenses collected for matters that only benefitted itself); Eirhart v. Libbey-Owens Ford Co., 726 F. Supp. 700, 703 (N.D. Ill. 1989) (union moved to intervene in sex discrimination lawsuit filed by non-union member plaintiffs because the union had not been privy to negotiations that it argued would affect its members). Notably, Howard Johnson Rest., Inc. v. N.L.R.B., No. 77-cv-124, 1977 WL 1700 (W.D.N.Y. Apr. 14, 1977), does not contain the language quoted in Plaintiff's brief. Here, Plaintiff presents no evidence of the Union's collective bargaining agreement or otherwise any evidence that would reasonably indicate that it includes any duty with respect to civil litigation defense or that OAG Represented Defendants would be aware of it.

For these reasons, Plaintiff's motion must be denied.

### C.  **Torres Had No Duty To Preserve Video For Which He Had No Responsibility**

Plaintiff also conclusorily asserts that Torres had an independent duty to preserve the Video "by virtue of his having been assigned the investigation of the underlying incident and having signed off on reports regarding the same." (Pl.'s Mem. at 12.) Again, however, Plaintiff's argument is without merit. First, there is no evidence that Torres had any <u>ability</u> to preserve the Video. Indeed, although he testified that it was normal procedure to record such transports, (Torres Dep. Tr. 104:3-8), he also testified that he did not recall who authorized the handheld video (but it was not him), (<u>id.</u> 99:21—100:20), and that he did not recall if the Video started immediately after the transport team left the emergency room of the Fishkill RMU or when they exited the front door of the RMU, (<u>id.</u> 100:25—101:22, 103:21—104:8). He further testified that he did not have control of the Video, and that as part of standard procedure, the Video would be returned to the Watch Commander's Office upon the transport team's return to the facility. (<u>Id.</u> 106:18-25.) Second, there is no evidence that Torres "investigated" the incident. As the Sergeant on duty for the RMU at the time COs Deal and Palou returned to Fishkill, he was required to gather the appropriate paperwork—<u>i.e.</u>, the officer's memorandums, as well as any medical reports regarding the inmate and/or the officers—summarize the information in his own memorandum and use of force report, instruct the officers to fix any typo's or grammatical errors or other information if requested by someone higher up the chain of command, and then forward that paperwork up the chain of command. (<u>Id.</u> 81:20—82:6, 112:8—113:5, 113:15-23.) Torres did not testify that he "investigated" the incident or that his role involved anything more than collecting the paperwork described above and forwarding it on up the chain of command.

Further, Plaintiff's citation to <u>Thomas v. Butkiewicus</u>, No. 3:13-cv-747, 2016 WL 1718368 (D. Conn. Apr. 29, 2016), is inapposite. In that case, the court determined that, based on the

evidence presented on a spoliation motion, defendant Captain Butkiewicus had control of and therefore an obligation to preserve, surveillance video "for which he was the investigating officer." Thomas, 2016 WL 1718368, at *11. Unlike the instant matter, in Thomas, the evidence consisted of a report by Captain Butkiewicus in which he stated he personally investigated the incident, which included reviewing the videotape, and had the ability to preserve additional video footage if he deemed necessary, which he did not do. Id. at *2, 6; see id., No. 3:13-cv-747, at ECF 97-2, Ex. F, at 1-2. No similar documentation has been produced by Plaintiff in this case with respect to Torres, and indeed, none exists because Torres did not investigate the incident, did not review the Video, and did not have the authority, responsibility, or discretion to ensure that any video was specifically retained. For this reason, again, Plaintiff fails to meet his burden on his motion.

To the extent Plaintiff may argue, for the first time in his reply papers, that non-party DOCCS was the OAG Represented Defendants' agent for the purpose of preserving the Video, the argument must be rejected. See, e.g., Knipe v. Skinner, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief.").; c.f., e.g., Bernardez v. Graham, No. 11-cv-6463, 2015 WL 13236701, at *7 n.8 (S.D.N.Y. Nov. 3, 2015) (McCarthy, J.) (Rep. & Recommendation), adopted by 2016 WL 8715936 (S.D.N.Y. Apr. 15, 2016) (noting that the court does not "ordinarily consider arguments made for the first time" in a reply submission, but granting "special solicitude" due to the petitioner's pro se status). In any event, the OAG Represented Defendants are sued as individuals in this action under 42 U.S.C. § 1983. In Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009), the Supreme Court instructed that "[b]ecause vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Permitting a jury to draw inferences about the OAG Represented Defendants based on DOCCS's purported

conduct would be inconsistent with that principle, particularly given the non-existent evidence that the OAG Represented Defendants themselves had any role in preserving or administering the Video.

Accordingly, Plaintiff's motion must be denied.

### D.  **Any Duty To Preserve Arose After The Video Was Lost**

The duty to preserve is "triggered not only when a party has been put on notice by a discovery demand explicitly requesting the evidence, but also when a party has been served with a complaint or anticipates litigation." Barsoum v. N.Y.C. Hous. Auth., 202 F.R.D. 396, 400 (S.D.N.Y. 2001).

Here, this Office directed DOCCS to put into place a litigation hold on November 8, 2018, shortly after receiving Plaintiff Notice of Intent to File a claim in the New York State Court of Claims. However, because neither the Video, nor any copy thereof, can be located, it is reasonable to assume that it was lost at some point after DSS Urbanski viewed it after it was made and before the litigation hold was put into place. This is evidenced by the fact that OSI was notified immediately on the day of the incident of the events and began its investigation instantly, but does not have a copy of the Video, which it ordinarily would have obtained. (See Decl. of Eileen Vives (attached to Pl.'s Not. of Mot. at Ex. 7, at p. 4-5).)

Accordingly, because Plaintiff cannot establish the first element in support of his spoliation sanctions motion, his motion must be denied.

### POINT II

### PLAINTIFF FAILS TO ESTABLISH THAT THE OAG REPRESENTED DEFENDANTS ACTED WITH THE NECESSARY CULPABLE MENTAL STATE

Plaintiff acknowledges in his moving brief that there is no evidence that the Video was "willfully destroyed" or that any party "otherwise acted in bad faith." (Pl.'s Mem. at 13.)

Nonetheless, he argues that the second element of a spoliation motion is established, <u>and</u> <u>therefore</u> <u>his</u> <u>request</u> <u>for</u> <u>an</u> <u>adverse</u> <u>inference</u> <u>should</u> <u>be</u> <u>granted</u>, simply because the Video has been unable to be located "without explanation," which he asserts constitutes "ordinary negligence" and sufficient for his motion. (<u>Id.</u>; <u>see</u> <u>also</u> <u>id.</u> at 1.) Plaintiff is wrong.

Since 2015, revised Rule 37(e) of the Federal Rules of Civil Procedure specifically prohibits a Court from ordering the type of sanctions Plaintiff seeks—<u>i.e.</u>, an adverse inference— in the absence of a finding that the spoliating party "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2)(B). As the Advisory Committee's comments on the amendment make clear, the revised Rule 37(e)(2) "rejects cases such as <u>Residential Funding Corporation v. DeGeorge Financial Corporation</u>, 306 F.3d 99 (2d Cir. 2002) that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence." <u>Id.</u> (2015 Amend. cmt.); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Ungar v. City of New York</u>, 329 F.R.D. 8, 12-14 (S.D.N.Y. 2018). "In other words, the new Rule 37(e) overrules Second Circuit precedent on the question of what state of mind is sufficiently culpable to warrant an adverse inference instruction when electronically stored evidence is missing." <u>Thomas</u>, 2016 WL 1718368, at *7.

For this reason, and because Plaintiff admits no such culpable mental state exists in this case, Plaintiff's motion for an adverse inference must be denied.

In any event, even if an ordinary standard of negligence were applied, the motion must still be denied because, as discussed above, the OAG Represented Defendants were not responsible for either its preservation or loss and therefore have no culpable mental state. Indeed, the loss of the Video was at the hands of a nonparty, and more than likely occurred prior to the litigation hold was put into place. Plaintiff fails to explain what steps the OAG Represented Defendants

themselves could have taken to ensure that the Video was not lost, or how a nonparty's human error implicates the OAG Represented Defendants' states of mind.

Accordingly, Plaintiff's motion must be denied.

## POINT III

### PLAINTIFF FAILS TO ESTABLISH ANY PREJUDICE FROM THE LOSS OF THE VIDEO

Plaintiff argues in his moving brief only that the Video is "relevant" to Plaintiff's claims, and specifically that it is relevant: (1) to Plaintiff's claim that Torres "encouraged" and participated in "verbal and physical abuse" of Plaintiff because it may contain conversations, including by Torres, and (2) to show Plaintiff's "demeanor," which is relevant to his claim for "conscious pain and suffering." (Pl.'s Mem. at 13-14.) Plaintiff's arguments must be rejected. "Rule 37(e)(1) requires a finding of "prejudice" [from the loss of information] for sanctions to issue." Ungar, 329 F.R.D. at 15; see Fed. R. Civ. P. 37(e)(1). Such "[a]n evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." Fed. R. Civ. P. 37 (2015 Amend. cmt.). Further, "[p]roof of relevance does not necessarily equal proof of prejudice." Karsch v. Blink Health Ltd., No. 17-cv-3880, 2019 WL 2708125, at *20 (S.D.N.Y. June 20, 2019) (internal quotation marks and citation omitted).

Here, the Video is unlikely to show the information Plaintiff asserts it may. First, it is unlikely to show Torres (or anyone else) verbally or physically abusing Plaintiff. Notwithstanding the fact that the OAG Represented Defendants deny that this occurred, the timing of the Video does not correlate with the when Plaintiff alleges these events occurred. In particular, Plaintiff alleges that Torres "encouraged Pagliaro in his verbal and physical abuse of plaintiff, and himself verbally abused plaintiff and accused him of faking his injuries" "while plaintiff was in the infirmary" and Torres was "supervis[ing] the officers' and nurse's handling of plaintiff." (Am.

Compl. ¶¶ 48, 50 (ECF 12).) He also testified in his deposition that he was subject to verbal and physical abuse when he arrived back to Fishkill and was still inside the van, and when he was taken into the facility's RMU and evaluated inside the infirmary. (Pl.'s Dep. Tr. 152:21—153:11, 161:10—162:2.) He did not testify that he was subject to any verbal or physical abuse during the time the Video may have been recording, i.e., after the EMT's arrived, he was placed into the ambulance, and he was taken to St. Luke's Hospital. Notably, it is also unlikely that the Video would have portrayed anything that occurred inside the medical room where Plaintiff was taken and where the physical "abuse" by Nurse Pagliaro allegedly occurred due to HIPAA regulations. Further, any attempt by Plaintiff to conflate the general area "inside the RMU" with the specific room where Plaintiff was evaluated (as opposed to, for example, a hallway), is insufficient to meet his burden or to establish that the Video would plausibly show the events he alleges occurred. It is also highly implausible that anyone would engage in verbal or physical abuse while on-camera.

Further, it is not plausible that the Video would show any marks from the alleged foot sticks, pressure to his toenail, and "pinches" to his legs by Nurse Pagliaro because he testified that he could not feel these things and there is no indication that he was not wearing his shoes, socks, or pants when he was transported by the EMTs and the Video was recording. Accordingly, any evidence of "conscious pain and suffering" from these events is highly unlikely to be shown. As DSS Urbanski testified, the Video would only show the same things that are portrayed by the photographs of Plaintiff that were taken moments before the escort while he was inside the RMU exam room, as well as the surveillance video that shows Plaintiff at WMC as he left the dental exam room and taken to the State van by COs Palou and Deal. As such, there is already evidence of the "conscious pain and suffering" Plaintiff alleges he had and argues is relevant to his claims.

See Thousand v. Corrigan, No. 15-cv-1025, 2017 WL 4480185, at *3 (N.D.N.Y. Oct. 6, 2017) (no prejudice shown where photos of missing weapon existed).

Accordingly, Plaintiff's motion should be denied.

### POINT IV

### THE GOALS OF A SPOLIATION SANCTION WOULD NOT BE ADVANCED BY SANCTIONING THE OAG REPRESENTED DEFENDANTS

When determining whether to issue sanctions, the court should consider the extent to which, if any, the sanction would advance the goals that were intended by the Rule, which are: "(1) [to] deter parties from engaging in spoliation; (2) [to] place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) [to] restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 780 (2d Cir. 1999) (internal quotation marks and citations omitted).

Here, the first two goals are not advanced by any sanction against the OAG Represented Defendants because they were not responsible for, or had any actual control over, the Video's preservation or loss. See Thousand, 2017 WL 4480185, at *2 (citation omitted) (first two goals "are aimed at a party that both has the ability to destroy the evidence at issue and is responsible for the destruction," which "suggests that this sanction is inapplicable" to defendants whom the plaintiff "has not shown . . . had any control over the [evidence], any duty to maintain it, or were in any way involved in the failure to preserve it"); see also id. at *3 (collecting cases where no sanctions were issued in cases where defendant correction officers had no duty to preserve or maintain and were not involved in any loss or destruction). Further, as noted above, because other video and photographic evidence of Plaintiff exists, Plaintiff does not need to be "restored" to the position he would have been in had the Video not been lost.

19

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion for spoliation sanction must be denied.

Dated:  Westchester County, New York
        June 15, 2021

                                    LETITIA JAMES
                                    Attorney General
                                    State of New York
                                    Attorney for Defendants Kristofer Leonardo, Richard Landry, Enrique Torres, and Gary <u>Pagliaro</u>

By:    <u> /s/ Deanna L. Collins     </u>
               Deanna L. Collins
               Assistant Attorney General
               28 Liberty Street - 18th Floor
               New York, New York 10005
               Tel. (212) 416-8906
               Deanna.Collins@ag.ny.gov