**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| CHAD STANBRO, Plaintiff,<br><br>-against-<br><br>CORRECTION OFFICER NADYA PALOU, CORRECTION OFFICER RAYMOND DEAL, CORRECTION OFFICER KRISTOFER LEONARDO, CORRECTION OFFICER RICHARD LANDRY, CORRECTION NURSE GARY PAGLIARO and CORRECTION SERGEANT ENRIQUE TORRES,<br><br>Defendants | Case No.: 7:20-cv-01591-KMK |
|---|---|

# BRIEF OF DEFENDANTS PALOU AND DEAL IN OPPOSITION TO PLAINTIFF'S MOTION FOR SPOLIATION SANCTIONS

OFECK & HEINZE LLP
Attorneys for COs Deal & Paloue
85 Main Street, Suite 204
Hackensack, New Jersey 07601
Tel No. (201) 487-9900
mark@ofeckheinze.com

**Table of Contents**

Table of Citations 2

Introduction 3

Factual Background 4

POINT I 6

**THE RECORD IS INSUFFICIENT TO IMPOSE ANY SANCTION UNDER RULE 37(e)**

POINT II 8

**THE UNION WAS NOT DEFENDANTS' "AGENT" FOR THE PURPOSE OF MAINTENANCE OR PRESERVATION OF THE VIDEO**

Conclusion 10

**Table of Citations**

Beck v. Commc'ns Workers of Am. (C.W.A.), 800 F.2d 1280, 1287 (4th Cir. 1986), aff'd sub nom. Commc'ns Workers of Am. v. Beck, 487 U.S. 735, 108 S. Ct. 2641, 101 L. Ed. 2d 634 (1988) 9

Doe v. Cook Cty., Illinois, 798 F.3d 558, 561 (7th Cir. 2015) 9

Eirhart v. Libbey-Owens Ford Co., 726 F. Supp. 700, 703 (N.D. Ill. 1989) 10

Goodman v. Praxair Servs., Inc., 632 F. Supp. 2d 494, 523, fn. 16 (D. Md. 2009) 9

of Howard Johnson Rest., Inc. v. N.L.R.B., CIV. 77-124, 1977 WL 1700, at *1 (W.D.N.Y. Apr. 14, 1977) 10

New Jersey Manufacturers Ins. Co. v. Hearth & Home Techs., Inc., 3:06-CV-2234, 2008 WL 2571227, at *7 (M.D. Pa. 2008) 8

FRCP 37(e) passim

## Introduction

Defendants Nadya Palou and Raymond Deal submit this brief in opposition to plaintiff's motion for spoliation sanctions. A copy of a video recording of plaintiff's transportation from the Fishkill Correctional Center to the hospital, which was allegedly sent to these defendants' union, the Correction Officers & Police Benevolent Association, apparently cannot be found. Plaintiff seeks an adverse inference against defendants due to this.

The motion should be denied. As an initial matter, the motion is premature because plaintiff has not subpoenaed the Union that purportedly misplaced the recording. There is thus insufficient evidence, as required by Rule 37(e)(1), that the Union failed to "take reasonable steps to preserve" the video, or that it "cannot be restored or replaced through additional discovery." And there is surely no evidence that the Union acted with the intent to deprive another party of the information's use in the litigation. Rule 37(e)(2). (See Point I.)

The Union did not create the video. At most it received a copy. (But really, all we know is it may have been sent to the Union.) There is also no suggestion that the Union was sent this record for anything other than its members' benefit. Because it was a copy, any recipient (by definition) surely had every expectation that the original source of the video (and not itself) was responsible for its maintenance and preservation.

Nor, in any event, is there any showing that the Union maintained this record at Deal's or Palou's request, or even that Deal or Palou knew this had happened. (Point II.) The video surely does not show anything Palou or Deal said or did. (See Palou & Deal Decl.)

## Factual Background

At a dental appointment at Westchester Hospital on October 31, 2018, plaintiff Stanbro reacted badly to the anesthesia, interrupted the procedure, attempted to assault Dr. Weber and

CO Deal (plaintiff might deny, or not remember, that part), and had to be subdued by force. Stanbro came out of this incident with a neck injury, which he says was caused by excessive force.

Every other witness begs to differ. For one thing, plaintiff was so violent and resistant that he kicked CO Deal with both feet, causing him to crash into something in the room. (Palou Decl. ¶ 4; Deal Decl. ¶ 4.) Photos produced by CO Deal depict a large bruise on his back. He was out for weeks on medical leave. If only there were a video of the incident itself.[1]

After the incident, Palou and Deal brought Stanbro back to Fishkill. (Id. ¶ 7.) When they arrived, he was left in the van and the medical staff and other COs took over. (Id. ¶¶ 8-9.) Later, it apparently became necessary for plaintiff to be returned to the hospital, which is the trip that was apparently recorded on video. (See Pltf's brf., pp. 7-10.)

COs Deal and Palou had nothing to do with the creation of the video (¶¶ 13-14), and it could have nothing to do with their involvement in the incident. (Id. ¶ 15.) At most, one might speculate about what plaintiff or the COs with him said on that trip, or what it might show about his physical condition. It may not be as helpful as he suspects. (Id. ¶ 21.)

If a copy were sent to the Union – its receipt, or what happened to it, has not been confirmed first-hand – DOCCS seems to say that the Union cannot now provide its copy. At most, the motion record suggests that DSS Urbanski "believes" the video was sent in DVD form by DOCCS to its Bureau of Labor Relations, which sent it along to the Union. (Pltf's brf., p. 9.) Urbanski asked the Union to return the copy, but it was unable to do so. (Id., p.

---

[1] There is a video of the hallway outside the dental clinic, but it does not show what happened inside the procedure room. The video at issue here arose much later in that day, after Palou and Deal returned to Fishkill and handed Stanbro off to medical staff and other COs.

10.) Meanwhile, there is no allegation that Deal or Palou (who since left DOCCS) was or is a union representative, or had anything to do with the transmittal, receipt or preservation of the video.

Plaintiff has not subpoenaed the Union, either for its copy of the video, or for testimony of any custodians. For all we know, the Union may not have actually received the video, or may have a perfectly reasonable explanation why it cannot be found. Yet plaintiff now claims that the Union was Deal's and Palou's "agent" for the preservation for the video, and its alleged failure to preserve it should be "imputed" to them. (Id., pp. 11-12.)

For all of these reasons, the record here is at best incomplete. We urge in the first instance, however, that defendants Deal and Palou had nothing to do with the creation, preservation or production of the video, to say nothing of its alleged disappearance. (Point I.) In any event, the Union was not their "agent" concerning the video, even if a union might (in other contexts) generally act as an agent for its members. (Point II.)

The motion should be denied.

**POINT I**

**THE RECORD IS INSUFFICIENT TO IMPOSE ANY SANCTION UNDER RULE 37(e)**

This motion is governed by Rule 37(e), which permits spoliation sanctions for the loss or destruction of electronically stored information (here, a DVD copy of a video file):

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> **(1)** upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> **(2)** only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> **(A)** presume that the lost information was unfavorable to the party;
>
> **(B)** instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> **(C)** dismiss the action or enter a default judgment.

Here, there is no evidence the video "should have been preserved [by the Union] in the anticipation or conduct of litigation…." We imagine – because no record has been developed on the subject – that DOCCS sent the video to the Union in anticipation of possible disciplinary proceedings, or as a routine requirement under the union contract. But that would have had nothing to do with the plaintiff or his action, much less create an expectation in him that the Union was a record-keeper for his case.

Nor, in any event, is there any evidence that the Union "failed to take reasonable steps to preserve [the video]….." As we have said, there is no evidence that the Union actually received the copy, or if it did that it was in viewable form, or it went missing (assuming that's really true) because reasonable steps weren't taken to preserve it.

The chain of custody is scanty, to say the least. All we know is that Urbanski says a copy was sent to the Union by others, and it couldn't be returned when he asked. There are any number of perfectly reasonable explanations for this, which could only be gleaned by a deposition of the Union. Until that occurs, the required factual finding that might underlie a discovery sanction under Rule 37(e)(1) is not possible.

For the same reason, it is surely impossible determine that defendants' Deal or Palou (supposedly through their agent, the Union)(see Point II) "acted with the intent to deprive another party of the information's use in the litigation…." Rule 37(e)(2). The most one might infer from the record here is that the copy never arrived, or was misplaced due to clerical error, or there is some equally innocent explanation. Plaintiff does not suggest otherwise.

For all of the same reasons, the adverse inference sought by plaintiff bears no real connection to these defendants' role in the case, or how and why the copy may have gone missing. Apparently, the fact-finder is supposed to infer that someone said something that is in some way damning about Deal's or Palou's actions in the dental clinic.

No one in the van on the hospital (other than plaintiff) was in the clinic earlier that day, so they would have no personal knowledge of what had happened. Mr. Stanbro is surely not limited in what he might say about what occurred on the return trip to the hospital.

Similarly, there is no dispute that he was injured, for the obvious reason that he was being sent back to the hospital. But the mere fact of the injury says nothing at all about whether it was caused by excessive force, or plaintiff's violent and combative behavior.

For these reasons, the motion should be denied. At a minimum, the motion should be denied without prejudice, pending further development of the record, including through a deposition of the Union itself.

As we explain next, in no event was the Union these defendants' agent for the purpose of maintenance or preservation of the video. Accordingly, further discovery on the issue is futile. Naturally, plaintiff can still seek the video, but if the Union is shown to be unable to provide it, that has no bearing on defendants Deal and Palou.

## POINT II

### THE UNION WAS NOT DEFENDANTS' "AGENT" FOR THE PURPOSE OF MAINTENANCE OR PRESERVATION OF THE VIDEO

The Union was not Deal's or Palou's agent for the maintenance or preservation of the video. Accordingly, the Court should deny the motion without further discovery or other proceedings.

It is correct to say that, in the general sense, an agent's spoliation of evidence may be imputed to their principal. But in all the cases we found involving the loss of evidence by an agent, it was entrusted by the party to the agent, either in a particular instance or in its capacity as the principal's record-keeper or storage facility. New Jersey Manufacturers Ins. Co. v. Hearth & Home Techs., Inc., 3:06-CV-2234, 2008 WL 2571227, at *7 (M.D. Pa. 2008)(Collecting cases involving agents who lost evidence entrusted to them by a party.);

Goodman v. Praxair Servs., Inc., 632 F. Supp. 2d 494, 523, fn. 16 (D. Md. 2009)(same). The Union played neither role here.

There is no evidence – and none can be expected to be developed – that Deal or Palou entrusted the video to the Union or, for that matter, had any knowledge of its existence or of DOCCS transfer of a copy to the Union. That the Union might sometimes be the defendants' "agent", in the most broad and general sense, did not make it their agent for the purpose of maintaining records that did not come from defendants, that were not created at their direction, and they knew nothing about.

The cases relied on by plaintiff to establish the Union's agency status arise in entirely different contexts. For example, a union's agency status imposes limitations on a union's activities that do not benefit its members. Beck v. Commc'ns Workers of Am. (C.W.A.), 800 F.2d 1280, 1287 (4th Cir. 1986), aff'd sub nom. Commc'ns Workers of Am. v. Beck, 487 U.S. 735, 108 S. Ct. 2641, 101 L. Ed. 2d 634 (1988)(As an agent, the union may not seek to further its own interests at the expense of a principal. Instead, the union must use the fees collected from employees only for purposes within the scope of the agency relationship.)

This general principle does not make the Union here the defendants' record-keeper, or cause the defendants' rights in this litigation to be impaired because a third party (without their knowledge) may have sent the video to the Union.

A union's agency status may also confer standing to intervene in a suit that affects its members' interests. Doe v. Cook Cty., Illinois, 798 F.3d 558, 561 (7th Cir. 2015). But that has nothing to do with this case. There is no claim that the Union is responsible for the subject incident, and it has not involved itself in this case at all.

The case of Eirhart v. Libbey-Owens Ford Co., 726 F. Supp. 700, 703 (N.D. Ill. 1989), is not even remotely analogous, speaking to the attribution of income for back pay collected by a union to the members (and not to the union), because the union was the members' agent in pursuing collection for them. That just means the tax liability passes through to the members. Id.

The case of Howard Johnson Rest., Inc. v. N.L.R.B., CIV. 77-124, 1977 WL 1700, at *1 (W.D.N.Y. Apr. 14, 1977), spoke to when and how a union became a "bargaining agent", based upon its collection of "authorization cards" from workers. This concerns the relationship of the union to the employer, in the course of collective bargaining. It has nothing to do with a union's purported representative status as a member's record-keeper for evidence that it received from a third-party source, and that allegedly relates to a private litigation wholly unrelated to bargaining or union business.

None of these authorities make a union a party's agent for the custody of records that were not provided by the member, and were not requested to be preserved on the member's behalf, either expressly or impliedly.

**Conclusion**

For all of these reasons, plaintiff's motion for spoliation relief should be denied.

OFECK & HEINZE LLP
Attorneys for COs Deal & Palou

By: __*Mark F. Heinze*___
Mark F. Heinze