UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHAD STANBRO,

                Plaintiff,

           -against-

WESTCHESTER COUNTY HEALTH
CARE CORPORATION, WESTCHESTER
MEDICAL CENTER, FRANK WEBER and
JOHN FULL,

                Defendants.
------------------------------------------------------------X
CHAD STANBRO,

                Plaintiff,

           -against-

CORRECTION OFFICER NADYA PALOU,
CORRECTION OFFICER RAYMOND DEAL,
CORRECTION OFFICER KRISTOFER LEONARDO,
CORRECTION OFFICER RICHARD LANDRY,
CORRECTION NURSE GARY PAGLIARO and
CORRECTION SERGEANT ENRIQUE TORRES,

                Defendants.
------------------------------------------------------------X

Case No. 7:19-cv-10857 (KMK-JCM)

Case No. 7:20-cv-01591 (KMK-JCM)

# REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR AN ORDER IMPOSING SPOLIATION SANCTIONS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

ARGUMENT .............................................................................................................1

   I.   DEFENDANTS HAD CONTROL OVER AND A DUTY TO PRESERVE THE VIDEOTAPE ...............................................................................................1

   II.   FED. R. CIV. PROC. 37(e), WHICH ADDRESSES FAILURE TO PRESERVE *ELECTRONICALLY STORED INFORMATION*, IS NOT APPLICABLE HERE ....................................................................................................7

   III.   DEFENDANTS' FAILURE TO PRESERVE THE VIDEOTAPE PREJUDICES PLAINTIFF ..............................................................................................9

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Adkins v. Wolever*,
   692 F.3d 499 (6th Cir. 2012) ................................................................ 5, 6, 7

*Charlestown Capital Advisors, LLC v. Acero Junction, Inc.*,
   337 F.R.D. 47 (S.D.N.Y. 2020) ................................................................ 8

*Grant v. Salius*,
   2011 U.S. Dist. LEXIS 133248 (D. Conn. 2011) ..................................... 6

*Gross v. Lunduski*,
   304 F.R.D. 136 (W.D.N.Y. 2014) ............................................................ 4

*Guillory v. Skelly*,
   2014 U.S. Dist. LEXIS 128178 (W.D.N.Y. 2014) .................................... 4

*In re NTL, Inc. Sec. Litig.*,
   244 F.R.D. 179 (S.D.N.Y. 2007), *aff'd sub nom. Gordon Partners v. Blumenthal*,
   2007 WL 1518632 (S.D.N.Y. 2007) ........................................................ 8

*Jackson v. Monin*,
   2015 U.S. Dist. LEXIS 131560 (W.D.N.Y. 2015) .................................... 4

*Micolo v. Fuller*,
   2016 U.S. Dist. LEXIS 4316 (W.D.N.Y. 2016) ........................................ 5

*Moody v. CSX Transportation*, Inc.,
   271 F. Supp. 3d 410 (W.D.N.Y. 2017) ..................................................... 8

*Pizzella v. Liberty Gas Station and Convenience Store, LLC*,
   410 F.Supp.3d 425 (N.D.N.Y. 2019) ........................................................ 9

*Pyskaty v. Wide World of Cars, LLC*,
   2019 U.S. Dist. LEXIS 30006 (S.D.N.Y. 2019) ....................................... 9

*Shim-Larkin v. City of New York*,
   2019 U.S. Dist. LEXIS 169223 (S.D.N.Y. 2019) ..................................... 1

*Slater v. Lacapruccia*,
  2019 U.S. Dist. LEXIS 66262 (W.D.N.Y. 2019) .................................................3, 4

*Thousand v. Corrigan*,
  2017 U.S. Dist. LEXIS 166198 (N.D.N.Y. 2017) ...............................................3, 5

*Ungar v. City of New York*,
  329 F.R.D. 8 (E.D.N.Y. 2018)..................................................................................9

*Wandering Dago Inc. v. N.Y. State Office of Gen. Servs.*,
  2015 U.S. Dist. LEXIS 69375 (N.D.N.Y. 2015) ....................................................4

*Watson v. Edelen*,
  76 F. Supp. 3d 1332 (N.D. Fla. 2014) .....................................................................8

*Wilson v. Hauck*,
  141 F. Supp. 3d 226 (W.D.N.Y. 2015).................................................................4, 5

*Yun Xin Huang v. Gonzales*,
  165 F. App'x 7 (2d Cir. 2006).................................................................................1

## Other Authorities

Advisory Committee Notes, 2015 Amendments.......................................................7

Advisory Committee on Civil Rules, Notes of Conference Call Discovery
  Subcommittee Advisory Committee on Civil Rules ...................................... 7, 8, 9

N.Y.S. Corr. Officers & Police Benevolent Ass'n, Inc., "About Us" .......................2

## Rules

Fed. R. Civ. P. 37(e) ...............................................................................................7, 9

# ARGUMENT

## I.  DEFENDANTS HAD CONTROL OVER AND A DUTY TO PRESERVE THE VIDEOTAPE

In its first argument on the issue of "control and duty to preserve," the OAG emphasizes that DSS Urbanski stated in his declaration that the DOCCS official with whom he spoke only "'believe[d] that the video was sent by [BLR] to the [Union].'" *See OAG's MOL*, at p. 8 (underscore and brackets in original). However, the OAG can speak directly to that DOCCS official and ascertain with certainty the particulars of his "belief." That the OAG fails to submit an affidavit from this official should cause this Court to infer that such an affidavit would not be helpful to the OAG defendants. *See, e.g., Shim-Larkin v. City of New York*, 2019 U.S. Dist. LEXIS 169223, at *34 (S.D.N.Y. 2019) (granting motion for spoliation sanctions for failure to preserve text messages, and noting that defendants' opposition to the motion "is undermined by the defendant's failure to submit evidence, via an affidavit or other means…concerning what that agency knew about text messages."); *Yun Xin Huang v. Gonzales*, 165 F. App'x 7, 9 (2d Cir. 2006) (summary order) (noting that lower court properly "drew an adverse inference" from party's failure to reference certain pertinent facts in her affidavit.).

Similarly, Officers Palou, Deal, Landry, and Leonaro and Sgt. Torres presumably are in a position to contact NYSCOPBA, the Union that represents them and of which they are members, and ascertain whether and when the Union received a copy of the videotape, and what it then did with it. The failure of any of these defendants to submit an affidavit from the Union likewise should cause this Court to infer that such an affidavit would not be helpful to these defendants.

Next, the OAG asserts that the Union's agency relationship with the defendants does not extend to any of the issues arising out of the August 31, 2018 incident. However, that DOCCS sent

a copy of the August 31, 2018 videotape to the Union itself belies any suggestion that the Union has not acted on behalf of the defendants in connection with the events of that day.  Why else would the Union have been provided with that video? Further, the Union's website, to which the OAG cites, provides in pertinent part that one of the Union's objectives is to promote the *overall welfare* of [its] members." *See* N.Y.S. Corr. Officers & Police Benevolent Ass'n, Inc., "About Us," available at nyscopba.org/about-us (last visited June 16, 2021) (emphasis added).  Unless the videotape depicted events harmful to the officers' defense of the investigation that was being conducted by the Office of Special Investigation, preserving that videotape once it obtained a copy of same surely would have fallen with the Union's objective to promote its members' overall welfare.

The OAG attempts to downplay further any "agency" role of the Union by asserting that it is the State of New York that "provides the defense" for defendants herein. *See OAG's MOL*, at p. 10. However, at least with respect to defendants Palou and Deal, the State of New York is not providing a defense to this lawsuit; Palou and Deal are represented by outside counsel, Ofeck & Heinze, LLP. Moreover, that the State represents Landry, Leonardo, and Torres in this lawsuit does not mean that no other entity acts, or has acted, as an "agent" for those defendants.

Next the OAG's attempt to downplay Sgt. Torres' role in the post-incident investigation, and thereby suggest that Torres did not have the requisite control over or duty to preserve the videotape, is unconvincing. In an exchange between Torres and attorney Mark Heinze, who represents Officers Palou and Deal in the instant action, Torres testified at his deposition to the following:

> Q:….Were you assigned as the supervisor for this use of force incident?
> A:  Yes.

**************

Q: Well, are you still the supervisor on this use of force?

    Ms. Collins: Objection. You can answer.

A: Well, I am still here. Being in this deposition, I'm a part of it. My name is on that paperwork forever, yeah.

Q: I was not trying to be cleaver (sic). I was just asking did somebody take it over for you. Maybe I should just ask you, did somebody take it over for you?

A: No.

*Torres Depo*, at pp. 107-09.

    Finally, citing to *Thousand v. Corrigan*, 2017 U.S. Dist. LEXIS 166198 (N.D.N.Y. 2017), where the court found that the defendant officers had no control over or duty to maintain the alleged weapon at issue, and were not in any way involved in the failure to preserve it, *id.*, at *6, the OAG argues the general proposition that, for purposes of spoliation, correction officers do not have control over videotapes that are generated and maintained by DOCCS.[1] However, the general proposition is to the contrary, and the holding in *Thousand* differs only because the facts were inapposite.

    In *Slater v. Lacapruccia*, 2019 U.S. Dist. LEXIS 66262 (W.D.N.Y. 2019), the court rejected a similar defense as the one here, stating clearly the true general proposition:

> Defendants argue that they had no control over or involvement in the destruction of the audiotape and therefore no duty to preserve it. As this Court previously indicated, however, it concurs in the

---

[1] Defendants' initial assertion that any argument concerning the relationship between DOCCS and its employees with regard to preservation of the video would constitute a new argument on reply, *see OAG's MOL*, at p. 14, should be disregarded. Plaintiff's initial memorandum of law argued both generally that control existed and that a duty to preserve attached to, *inter alia*, defendant Sgt. Torres, who is, by definition, an employee of DOCCS. It is the "practical ability" of the *individual party* "to acquire the documents from a third-party" which defines control. *See Gross v. Lunduski*, 304 F.R.D. 136, 142 (W.D.N.Y. 2014). Since the duty to preserve ultimately attaches back to the *individual*—here, i.e., Sgt. Torres—his relationship with DOCSS was necessarily invoked by plaintiff. Plaintiff ought not be required to exhaust every feasible relationship that an individual possesses such that would suffice to preserve such an argument.

> pronouncements by other members of this court that in suits against individual corrections officers employed by DOCCS where DOCCS is not a defendant, a sufficiently close relationship nonetheless exists to impute DOCCS' control over evidence to the individual officers.

*Id.*, at *10-11; *accord Gross v. Lunduski*, 304 F.R.D. 136, 143-44 (W.D.N.Y. 2014) ("in defending a prisoner's claim of excessive force ... [corrections officers have] the 'practical ability' to obtain documents held by DOCCS, although a non-party"); *Jackson v. Monin*, 2015 U.S. Dist. LEXIS 131560, at *8 (W.D.N.Y. 2015) ("practically every other court within the Second Circuit share[s] the same observations ... that for litigation purposes, unless there is an obvious conflict of interest, DOCCS and its correctional officers are essentially inseparable when defending against constitutional claims") (quoting *Wandering Dago Inc. v. N.Y. State Office of Gen. Servs.*, 2015 U.S. Dist. LEXIS 69375, at *30 n.9 (N.D.N.Y. 2015)); *Guillory v. Skelly*, 2014 U.S. Dist. LEXIS 128178, at *21 (W.D.N.Y. 2014) ("although DOCCS is not a party to this action, the relationship between DOCCS and Defendants, all DOCCS employees, is sufficiently closely coordinated to find Defendants have practical access and control over the requested documents. Specifically, Defendants, being employees of DOCCS, are interrelated and share the same mission and goals with respect to the incarceration and rehabilitation of convicted persons committed to DOCCS's custody.").

Most similar is *Wilson v. Hauck*, 141 F. Supp. 3d 226 (W.D.N.Y. 2015), wherein the plaintiff requested that the jury be given an adverse inference instruction against the defendant correction officers based on a failure to preserve a video which was captured on a handheld video recorder and depicted a use-of-force incident and events immediately following that incident. *Id.* at 228. While initially preserved,[2] the video was then "somewhat confus[ingly] destroyed," and no

---

[2] Although the video in question was preserved subject to a preservation order, even where "DOCCS is not a defendant in th[e] action," courts "ha[ve] not hesitated to find in appropriate circumstances that DOCCS employees have

copy of the original existed; indeed, it remained unclear "exactly when or how the original videotape…w[as] lost or destroyed," and the "Defendants [] [did] not offer any explanation…" *Id.* at 228-29. The court found that "the facts of th[e] case inarguably support[ed] the conclusion that Defendants…had the ability to preserve the evidence at issue," and granted the motion for an adverse instruction. *Id.* at 230.

As previously mentioned, *Thousand v. Corrigan*, 2017 U.S. Dist. LEXIS 166198 (N.D.N.Y. 2017) is inapposite. The *Thousand* court found that the officers had no control over an alleged weapon that the officers claimed plaintiff had pulled out during an altercation; but a close reading of the decision makes clear that this was not the primary basis for the denial of an adverse inference instruction. The court instead explained that an adverse inference would not necessarily help the plaintiff, because—although the plaintiff maintained, and would claim at trial, that there never was a weapon—there were pictures of the alleged weapon that would be used at trial nonetheless. Thus, "find[ing] th[e] objection to be premature," the court saw it better to allow the plaintiff to object "to the admissibility of the[e] photographs on foundational grounds at trial." *Id.*, at *6-10.

The *Thousand* court did not provide any specific reason for its finding that the defendants did not possess control over the evidence, instead simply citing to and relying principally on two cases. First, pointing to a dearth of case law in the Second Circuit, the *Thousand* court cited *Adkins v. Wolever*, 692 F.3d 499 (6th Cir. 2012), a prisoner case which held that the district court did not err in denying the plaintiff's request for an adverse inference as to the destruction of video footage because the defendant correction officer had no access to or control over the video. Unlike here,

---

control over evidence held by DOCCS…. In other words, Defendant [employees of DOCCS] have an affirmative obligation to ensure that any relevant evidence (including evidence in the possession of DOCCS) is not destroyed and *that obligation exists independent of a preservation order*." *Micolo v. Fuller*, 2016 U.S. Dist. LEXIS 4316, at *2-3 (W.D.N.Y. 2016) (emphasis added) (internal quotation marks and citations omitted).

however—where the retention policy dictated that the footage in question, which was taken with a handheld camera, be burned to a DVD and retained in a locked cabinet[3]—the footage from the stationary surveillance camera in *Adkins* was recorded by computers which possessed only enough memory to record for ten days; after that, the computers recorded over the old footage. Affirming the district court's denial of spoliation sanctions, the court held that defendant officer Wolever did not have control over the video because he would not even have been allowed to download the video, since it was in a room requiring a special access code, and, in any event, he did not have the requisite specific training to operate the special computer program needed to download it. *Id.* at 502.[4]

Next, the *Thousand* court cited *Grant v. Salius*, 2011 U.S. Dist. LEXIS 133248 (D. Conn. 2011), where, similarly, the plaintiff moved for spoliation sanctions in connection with footage from a *stationary* surveillance camera outside of his cell which defendants claimed had been lost because "digital video recordings of the correctional facility that [we]re made through the institution's stationary camera system [we]re retained for [only] approximately 30 days." *Id.* at *3-4. Again, unlike here, the camera used was not a handheld camera, and the footage in question was never downloaded onto a disc. Ironically, however, the court noted that, while defendants did not produce footage from the stationary camera, they *did* produce "'*transfer videos' of Mr. Grant and his cellmate to the medical unit…*," *id.* (emphasis added), which is precisely the type of footage at issue

---

[3] *See Urbanski Depo.*, at pp. 74-78; *see generally* discussion *infra* section II.

[4] There was one exception, though: Wolever could have gotten a copy of the video at the conclusion of a possible disciplinary investigation into the incident, because, by happenstance, the record custodian at the facility with the requisite access and training did download the video while they awaited a decision as to whether the event would be investigated. Yet, in absolute contrast with the case here, where there was an OSI investigation in which Sgt. Torres was involved, the video in *Adkins* was destroyed and no copies of the disk were made because Wolever faced no possible discipline.

here.

The more instructive lesson from *Thousand*, then, is that "[t]he more prudent path ... is to consider incidences raising spoliation questions on a case-by-case basis…" *Id*., at *8 (*quoting Adkins*, 692 F.3d 499 at 507). In this particular case, for the reasons detailed above and in plaintiff's initial memorandum of law, plaintiff respectfully requests that this Court find that he has satisfied the first prong needed to demonstrate entitlement to spoliation sanctions.

## II. FED. R. CIV. PROC. 37(e), WHICH ADDRESSES FAILURE TO PRESERVE *ELECTRONICALLY STORED INFORMATION*, IS NOT APPLICABLE HERE

The OAG next asserts that sanctions are inappropriate because, under Fed. R. Civ. P. 37(e)(2)(B), the party accused of spoliation of electronically stored information (ESI) need have "acted with the intent to deprive another party of the information's use in the litigation." *See OAG's MOL*, at p. 16. However, neither the DVD that the OAG labeled and stored in a secure location, nor any of the copies of the DVD that then were made, constitutes ESI. *See* Advisory Committee Notes, 2015 Amendments ("The new rule applies only to electronically stored information ..."). The minutes of the Advisory Committee meetings reflect a painstaking debate over how Rule 37(e) ought to operate with respect to the "dividing line between ESI and other evidence." Advisory Committee on Civil Rules, Notes of Conference Call Discovery Subcommittee Advisory Committee on Civil Rules, p. 375 (March 4, 2014) https://www.uscourts.gov/sites/default/files/fr_import/CV2014-04.pdf (last visited June 17, 2021). This is because the adoption of Rule 37(e) was aimed to resolve a narrow set of evidentiary issues. *See id.* at p. 448 ("We should hesitate to extend a rule spurred by the special problems of preserving ESI to the more familiar problems of failures to preserve other forms of information."). The Committee settled on the heightened "intent" standard for ESI because "the sanction of an adverse

−7−

inference instruction imposes a heavy penalty for losses that are likely to become increasingly frequent as ESI multiplies exponentially and moves to the 'cloud,'" because "permitting an adverse inference for negligence creates powerful incentives to over-preserve, often at great cost," and because "the ubiquitous nature of ESI and the fact that it often may be found in many locations presents less risk of severe prejudice." *Id.* at p. 379. The "intent" standard is, understandably, almost exclusively invoked in cases where the evidence in question is obviously ESI, such as e-mails, *see Charlestown Capital Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47 (S.D.N.Y. 2020), computerized financial documents, *see In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179 (S.D.N.Y. 2007), *aff'd sub nom. Gordon Partners v. Blumenthal*, 2007 WL 1518632 (S.D.N.Y. 2007), and data from train event recorders, *see Moody v. CSX Transportation*, Inc., 271 F. Supp. 3d 410, 423 (W.D.N.Y. 2017).

Here, the evidence in question is video that was taken with a *handheld* video camera, *see Urbanski Depo.* at p. 78, "transferred to a DVD," "labeled, "placed in a sleeve," "stored in a locked cabinet" in "a secured room off the watch commander's office," which would be kept as a "hardcop[y]" for, at minimum, "longer" than five years. *Id.* at pp. 74-77. The DVD is physical evidence. *See Watson v. Edelen*, 76 F. Supp. 3d 1332, 1346 n.4 (N.D. Fla. 2014) (noting, in the context of a prison video spoliation motion, that the video was "burned…onto a CD," and chiding defendants for submitting as an exhibit the policy which "applies to videotapes and digital recordings produced by recording equipment from *fixed* security cameras," rather than the "policy regarding the processing and retention of use of force footage from *handheld* video cameras…") (emphasis original). As such, "[w]ith regard to other sorts of [non-ESI] evidence, the common law of spoliation still applies," and "courts are well equipped to deal with th[e] dividing line [between ESI and non-ESI] on a case-by-case basis…to come up with a sensible

resolution." Notes of Conference Call Discovery Subcommittee Advisory Committee on Civil Rules, at pp. 375, 422.

In this particular case, where the evidence is clearly physical in nature,[5] the sensible resolution would be to apply the "ordinary negligence," common-law standard applied to physical evidence. *See Pyskaty v. Wide World of Cars, LLC*, 2019 U.S. Dist. LEXIS 30006, at *19-20 (S.D.N.Y. 2019) (McCarthy, J.) (applying ordinary negligence standard and finding defendant had a "culpable state of mind" in connection with lost physical photographs.); *contra OAG's Memo of Law*, at p. 16 (*citing Ungar v. City of New York*, 329 F.R.D. 8 (E.D.N.Y. 2018) (applying 37(e) 'intent' standard where the *fixed surveillance device* footage was destroyed due to automatic 30-day overwrite programming)).[6] Consequently, for the reasons set forth in plaintiff's initial memorandum of law, *see* Dkt. No. 67-9, at p. 13, plaintiff respectfully requests that this Court find that he has satisfied the second prong needed to demonstrate entitlement to spoliation sanctions.

### III. DEFENDANTS' FAILURE TO PRESERVE THE VIDEOTAPE PREJUDICES PLAINTIFF

The OAG suggests that, because of HIPAA regulations and possibly other reasons, it is "unlikely" that the videotape would have contained any footage of events inside the actual medical room. *OAG's MOL*, at p. 18. However, at his deposition, Sgt. Torres testified, albeit somewhat reluctantly, that the videotape would have begun the moment plaintiff was placed by medics onto

---

[5] Even "[i]f and when a judge is faced with a hybrid issue," such as an e-mail versus "a paper print of an e-mail message," the judge will have discretion to fashion the "sensible resolution." *Id.* at pp. 422, 448.

[6] It is worth noting that, like in *Pyskaty*, defendants here still "offer[] no explanation for why the" DVD "w[as] lost or what efforts were made to locate the original" DVD. *Id.*, at *18; see Pizzella v. Liberty Gas Station and Convenience Store, LLC*, 410 F.Supp.3d 425, 433 n.5 (N.D.N.Y. 2019) "Significantly, Defendants have provided *no* explanation for what happened to those records…") (emphasis added).

the stretcher, *Torres Depo.*, at p. 103, which given plaintiff's physical condition, necessarily would have been when he still was inside the medical room.

Next, the OAG suggests that the video "did not begin until after the events that [plaintiff] claims occurred at Fishkill were over…." *OAG's MOL*, at p. 2. Not so. The video likely captured images of and words spoken by Sgt. Torres, which certainly could be relevant to plaintiff's claim that Torres verbally abused him inside the medical facility. Moreover, regardless of where the video began, plaintiff's conscious pain and suffering was *never* over during any portion of the videotaped transport from Fishkill to the outside hospital, and that pain and suffering necessarily would have been depicted in the videotape.

Finally, the OAG suggests that any videotape depiction of plaintiff's physical condition and pain and suffering would be cumulative of the photographs and other evidence of plaintiff's pain and suffering, and therefore the loss of that videotape does not prejudice plaintiff. *OAG's MOL*, at pp. 2-3, 18. However, unless the OAG will stipulate to plaintiff's own assessment of the degree of pain and suffering he endured on the day of the incident, plaintiff has a right to choose what evidence he will place before the jury in that regard.

Dated:  New York, New York
        June 22, 2021

                                            Sivin & Miller, LLP

                                            s/ Edward Sivin
                                            Edward Sivin
                                            Attorneys for Plaintiff
                                            20 Vesey Street, Suite 1400
                                            New York, NY 10007
                                            Telephone: (212) 349-0300
                                            E-mail: esivin@sivinandmiller.com