UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CHAD STANBRO,

                Plaintiff,

                        Case No. 7:19-cv-10857 (KMK-JCM)

        -against-

WESTCHESTER COUNTY HEALTH
CARE CORPORATION, WESTCHESTER
MEDICAL CENTER, FRANK WEBER and
JOHN FULL,

                Defendants.
-------------------------------------------------------------X
CHAD STANBRO,

                Plaintiff,

                        Case No. 7:20-cv-01591 (KMK-JCM)

        -against-

CORRECTION OFFICER NADYA PALOU,
CORRECTION OFFICER RAYMOND DEAL,
CORRECTION OFFICER KRISTOFER LEONARDO,
CORRECTION OFFICER RICHARD LANDRY,
CORRECTION NURSE GARY PAGLIARO and
CORRECTION SERGEANT ENRIQUE TORRES,

                Defendants.
-------------------------------------------------------------X


# REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR AN ORDER IMPOSING SPOLIATION SANCTIONS

# PRELIMINARY STATEMENT

Plaintiff submits this Memorandum of Law in reply to the June 15, 2021 Memorandum of Law in Opposition to Plaintiff's Motion for Spoliation Sanctions submitted on behalf of defendants Correction Officer Nadya Palou and Raymond Deal (hereinafter "Defendants' MOL"), and in further support of plaintiff's motion for an order imposing sanctions against defendants Nadya Palou, Raymond Deal, Kristofer Leonardo, Richard Landry, and Enrique Torres (hereinafter "defendants"), in the form of adverse inferences against said defendants for failure to preserve a videotape of plaintiff's escort to a hospital on the day of the incident underlying these lawsuits. For the additional reasons stated below, plaintiff's motion should be granted in its entirety.

# ARGUMENT

## I. FED. R. CIV. PROC. 37(e), WHICH ADDRESSES FAILURE TO PRESERVE *ELECTRONICALLY STORED INFORMATION*, IS NOT APPLICABLE HERE

Defendants assert that sanctions are inappropriate because, under Fed. R. Civ. P. 37(e)(2), the party accused of spoliation of electronically stored information (ESI) need have "acted with the intent to deprive another party of the information's use in the litigation." *See Defendants' MOL*, at p. 7. However, neither the DVD that the OAG labeled and stored in a secure location, nor any of the copies of the DVD that then were made, constitutes ESI. *See* Advisory Committee Notes, 2015 Amendments ("The new rule applies only to electronically stored information ..."). The minutes of the Advisory Committee meetings reflect a painstaking debate over how Rule 37(e) ought to operate with respect to the "dividing line between ESI and other evidence." Advisory Committee on Civil Rules, Notes of Conference Call Discovery Subcommittee Advisory Committee on Civil Rules, p. 375 (March 4, 2014) https://www.uscourts.gov/sites/default/files/fr_import/CV2014-04.pdf (last

visited June 17, 2021). This is because the adoption of Rule 37(e) was aimed to resolve a narrow set of evidentiary issues. *See id.* at p. 448 ("We should hesitate to extend a rule spurred by the special problems of preserving ESI to the more familiar problems of failures to preserve other forms of information."). The Committee settled on the heightened "intent" standard for ESI because "the sanction of an adverse inference instruction imposes a heavy penalty for losses that are likely to become increasingly frequent as ESI multiplies exponentially and moves to the 'cloud,'" because "permitting an adverse inference for negligence creates powerful incentives to over-preserve, often at great cost," and because "the ubiquitous nature of ESI and the fact that it often may be found in many locations presents less risk of severe prejudice." *Id.* at p. 379. The "intent" standard is, understandably, almost exclusively invoked in cases where the evidence in question is obviously ESI, such as e-mails, *see Charlestown Capital Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47 (S.D.N.Y. 2020), computerized financial documents, *see In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179 (S.D.N.Y. 2007), *aff'd sub nom. Gordon Partners v. Blumenthal*, 2007 WL 1518632 (S.D.N.Y. 2007), and data from train event recorders, *see Moody v. CSX Transportation*, Inc., 271 F. Supp. 3d 410, 423 (W.D.N.Y. 2017).

Here, the evidence in question is video that was taken with a *handheld* video camera, *see Urbanski Depo.* at p. 78, "transferred to a DVD," "labeled, "placed in a sleeve," "stored in a locked cabinet" in "a secured room off the watch commander's office," which would be kept as a "hardcop[y]" for, at minimum, "longer" than five years. *Id.* at pp. 74-77. The DVD is physical evidence. *See Watson v. Edelen*, 76 F. Supp. 3d 1332, 1346 n.4 (N.D. Fla. 2014) (noting, in the context of a prison video spoliation motion, that the video was "burned…onto a CD," and chiding defendants for submitting as an exhibit the policy which "applies to videotapes and digital recordings produced by recording equipment from *fixed* security cameras," rather than the

"policy regarding the processing and retention of use of force footage from *handheld* video cameras…") (emphasis original). As such, "[w]ith regard to other sorts of [non-ESI] evidence, the common law of spoliation still applies," and "courts are well equipped to deal with th[e] dividing line [between ESI and non-ESI] on a case-by-case basis…to come up with a sensible resolution." Notes of Conference Call Discovery Subcommittee Advisory Committee on Civil Rules, at pp. 375, 422.

In this particular case, where the evidence is clearly physical in nature,[1] the sensible resolution would be to apply the "ordinary negligence," common-law standard applied to physical evidence. *Compare Pyskaty v. Wide World of Cars, LLC*, 2019 U.S. Dist. LEXIS 30006, at *19-20 (S.D.N.Y. 2019) (McCarthy, J.) (applying ordinary negligence standard and finding defendant had a "culpable state of mind" in connection with lost physical photographs.), *with Ungar v. City of New York*, 329 F.R.D. 8 (E.D.N.Y. 2018) (applying 37(e) 'intent' standard where the *fixed surveillance device* footage was destroyed due to automatic 30-day overwrite programming)).[2] Consequently, for the reasons set forth in plaintiff's initial memorandum of law, *see* Dkt. No. 67-9, at p. 13, plaintiff respectfully requests that this Court find that he has satisfied the second prong needed to demonstrate entitlement to spoliation sanctions.

## II.   PALOU and DEAL HAD CONTROL OVER AND A DUTY TO PRESERVE THE VIDEOTAPE

Palou and Deal argue that, notwithstanding that DOCCS sent NYSCOPBA a copy of the

---

[1] Even "[i]f and when a judge is faced with a hybrid issue," such as an e-mail versus "a paper print of an e-mail message," the judge will have discretion to fashion the "sensible resolution." *Id.* at pp. 422, 448.

[2] It is worth noting that, like in *Pyskaty*, defendants here still "offer[] no explanation for why the" DVD "w[as] lost or what efforts were made to locate the original" DVD. *Id.*, at *18; see *Pizzella v. Liberty Gas Station and Convenience Store, LLC*, 410 F.Supp.3d 425, 433 n.5 (N.D.N.Y. 2019) "Significantly, Defendants have provided *no* explanation for what happened to those records…") (emphasis added).

videotape, the Union cannot be deemed to have had any agency relationship with Palou and Deal, at least with respect to the events underlying these lawsuits. This argument is unavailing.  Indeed, that the Union was sent a copy of the videotape itself belies any notion that the events depicted on the videotape are divorced from any role that the Union serves *vis a vis* its members. Why else would DOCCS send the Union a copy of the video? Moreover, DSS Urbanski testified at his deposition that the Union represents Palou, Deal, Leonardo, Landry, and Torres, *see Urbanski Depo.* at pp. 92-93, and the Union's website, *see* N.Y.S. Corr. Officers & Police Benevolent Ass'n, Inc., "About Us," available at nyscopba.org/about-us (last visited June 16, 2021), provides in pertinent part that one of the Union's objectives is to "promote the *overall welfare* of [its] members." (emphasis added). After the Union learned that Palou and Deal were being investigated by the DOCCS Office of Special Investigations in connection with the August 31, 2018 incident, and after it then received from DOCCS a copy of a videotape relating to the incident, safeguarding that videotape—assuming it depicted nothing damaging to Palou or Deal—surely would have fallen within the ambit of promoting the "overall welfare" of Palou and Deal.

Palou and Deal nevertheless argue that plaintiff's motion is premature, since plaintiff has not yet subpoenaed the Union to delve further into the issue of what happened with the videotape. This argument overlooks the procedural history of how plaintiff's spoliation motion came about, and improperly places a burden on plaintiff that actually belongs to defendants.

As set forth in plaintiff's June 1, 2021 Memorandum of Law, *see* Dkt. No. 67, it was only after plaintiff took several steps, including requesting this Court's intervention, that plaintiff even learned that DOCCS had sent a copy of the videotape to the Union. In a March 10, 2021 letter to Judge Karas, *see* Dkt. No. 56, plaintiff requested a pre-motion conference relating to his

–4–

prospective motion to compel defendants to produce the videotape. Plaintiff pointed out in that letter that, despite his months-long effort to secure a copy of the videotape, the OAG repeatedly responded only by claiming that it was continuing its search for the tape. Thereafter, by text order dated March 31, 2021, this Court directed DOCCS to complete its search and furnish an affidavit regarding same no later than April 21, 2021. On April 21, 2021, the OAG then submitted a declaration from DSS Urbanski in which he stated—and plaintiff learned for the first time—that a copy of the video had been sent by DOCCS to the Union, but that DOCCS had not yet been able to ascertain from the Union whether it still had a copy of the video. On April 26, 2021, after the parties reported back to the Court, the Court issued a text order authorizing plaintiff to file his motion for spoliation sanctions. Even then, on May 4, 2021, before filing the instant motion, plaintiff deposed DSS Urbanski and inquired, among other things, whether after the submission of his declaration he had obtained any additional information regarding the whereabouts of the copy of the video that had been sent to the Union and whether he had taken any other steps to locate the original or *any* copy of the video. Urbanski testified that he had since ascertained from the Union that it does not have a copy of the video, but that he otherwise took no additional steps to locate the video.  *See Urbanski Depo.*, at pp. 93-94.

Notwithstanding the aforementioned laborious efforts by plaintiff to obtain a copy of the videotape or, at least, to ascertain what happened to the original and the one copy of the videotape that DOCCS acknowledges having sent to the Union, Palou and Deal now suggest that plaintiff has somehow sat on his rights by not also subpoenaing the Union, and that plaintiff's motion therefore is premature. Plaintiff suggests, instead, that defendants' responses to plaintiff's months-long efforts to obtain a copy of the videotape resemble a cat-and-mouse game where defendants and the OAG have given plaintiff only a trail of breadcrumbs by which to attempt to

obtain the videotape. Defendants' suggestion that prior to making his spoliation motion plaintiff should be required to continue along that trail by now subpoenaing the Union to ascertain with certainty what it knows about the videotape should be rejected.

If the Union has a benign explanation for the missing videotape, a simple phone call to the Union from the officers (who are members of the Union)[3] and or their respective lawyers (the OAG and Ofeck & Heinze, LLP) likely would elicit that explanation, and defendants could then proffer that explanation via an affidavit from the Union. Given that they are facing the prospect of sanctions, defendants' failure to submit an affidavit from the Union, or even an affidavit from defendants detailing any efforts to communicate with the Union, seems inexplicable, and should cause this Court to draw an adverse inference against defendants. *See, e.g., Shim-Larkin v. City of New York*, 2019 U.S. Dist. LEXIS 169223, at *34 (S.D.N.Y. 2019) (granting motion for spoliation sanctions for failure to preserve text messages, and noting that defendants' opposition to the motion "is undermined by the defendant's failure to submit evidence, via an affidavit or other means…concerning what that agency knew about text message communications…."; *Yun Xin Huang v. Gonzales*, 165 F. App'x 7, 9 (2d Cir. 2006) (summary order) (noting that lower court properly "drew an adverse inference" from party's failure to reference certain pertinent facts in her affidavit."); *cf. Rothman v. City of New York*, 2019 U.S. Dist. LEXIS 202593, at *6 n.2 (S.D.N.Y. 2019) (noting that "Defendant has failed to submit sworn declarations or other material to support a number of statements made in its opposition," but denying on other grounds plaintiff's motion for spoliation sanctions for failure to preserve videotape).

---

[3] While Officer Palou is now retired from DOCCS, the aforementioned NYSCOPBA website states that the Union represents not only current employees, but also "retirees."

# CONCLUSION

For the additional reasons stated above, plaintiff respectfully requests that his motion be granted in its entirety, and that an order be made and entered imposing sanctions against defendants Nadya Palou, Raymond Deal, Kristofer Leonardo, Richard Landry, and Enrique Torres in the form of adverse inferences against said defendants for failure to preserve a videotape of plaintiff's escort to a hospital on the day of the incidents underlying these lawsuits.

Dated: New York, New York
      June 22, 2021

                    Sivin & Miller, LLP

                    s/ Edward Sivin
                    Edward Sivin
                    Attorneys for Plaintiff
                    20 Vesey Street, Suite 1400
                    New York, NY 10007
                    Telephone: (212) 349-0300
                    E-mail: esivin@sivinandmiller.com