UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CHAD STANBRO,

                   Plaintiff,                        **PLAINTIFF'S PROPOSED**

                                     **JURY INSTRUCTIONS**

        -against-

WESTCHESTER COUNTY HEALTH
CARE CORPORATION, WESTCHESTER
MEDICAL CENTER, FRANK WEBER and            19-cv-10857-KMK
JOHN FULL,

                   Defendants.
----------------------------------------------------------X

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CHAD STANBRO,

                   Plaintiff,

        -against-

CORRECTION OFFICER NADYA PALOU,
CORRECTION OFFICER RAYMOND DEAL,
CORRECTION OFFICER KRISTOFER LEONARDO,    20-cv-01591-KMK
CORRECTION OFFICER RICHARD LANDRY,
CORRECTION NURSE GARY PAGLIARO and
CORRECTION SERGEANT ENRIQUE TORRES,

                   Defendants.
----------------------------------------------------------X

     Plaintiff respectfully requests that, in addition to the Court's standard

procedural and evidentiary instructions, the Court give the following overview and

substantive law instructions to the jury at the time of trial:

## OVERVIEW OF CASE

In this action, plaintiff, who at the time was incarcerated at Fishkill Correctional Facility, has brought several claims against several defendants in connection with events that occurred at Westchester Medical Center (WMC), during his return from WMC to Fishkill Correctional Facility (Fishkill), and upon his arrival back at Fishkill.

As against Correction Officers Nadya Palou, Raymond Deal, Kristofer Leonardo, and Richard Landry, plaintiff alleges that while he was at WMC, undergoing a surgical procedure performed by Dr. Frank Weber and Dr. John Full, these four officers used force against him that was excessive and resulted in injuries to him. Plaintiff also alleges that each of these four officers had a reasonable opportunity to intervene to prevent and/or stop the force that was used by their fellow officers, but failed to do so. Plaintiff further alleges that, after force was used against him, Officers Palou, Deal, Leonardo, and Landry demonstrated a deliberate indifference to plaintiff's safety and/or medical needs by causing and/or allowing him to fall or slide off of the surgical chair and onto the floor of the clinic. Plaintiff further alleges that Officers Palou and Deal demonstrated a deliberate indifference to plaintiff's safety and/or medical needs in connection with their removal and transport of plaintiff from WMC back to Fishkill.

Officers Palou, Deal, Kristofer, and Landry acknowledge that they used force against plaintiff; however, each of them asserts that under the circumstances, the force was justified and was not excessive in nature. Each of the defendants also asserts that since the force was justified and reasonable, they were under no

obligation to intervene to prevent and/or stop that use of force by fellow officers. Officers Palou, Deal, Kristofer, and Landry also assert that if plaintiff ended up on the floor of the clinic, it was not due to any fault of these defendants.

Officers Palou and Deal also deny that they were deliberately indifferent to plaintiff's safety and/or medical needs when they removed him from WMC and transported him back to Fishkill. They also assert that they removed plaintiff from WMC and transported him back to Fishkill pursuant to the orders of their supervisor.

Each of these claims against Officers Palou, Deal, Leonardo, and Landry is brought by plaintiff pursuant to a federal statute known as 42 United States Code, Section 1983, which I will refer to simply as "Section 1983." That statute provides, in pertinent part, that every person who, under color of state law, "[c]auses to be subjected, any citizen of the United States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law…." I will explain that statute in more detail later in my instructions to you.

In this case, plaintiff alleges that Officers Palou, Deal, Leonardo, and Landry caused plaintiff to be deprived of his rights under the Eighth Amendment to the United States Constitution, which provides that an incarcerated individual will not be subjected to "cruel and unusual punishment." I will explain the Eighth Amendment in more detail later in my instructions to you.

The claims against Palou, Deal, Leonardo, and Landry are also brought by plaintiff under state law, and allege that these defendants committed a battery against plaintiff. I will explain the concept of battery later in my instructions to you.

Again, however, Officers Palou, Deal, Leonardo, and Landry deny plaintiff's allegations, and deny that they violated any of plaintiff's rights.

As against Nurse Gary Pagliaro and Sergeant Enrique Torres, plaintiff alleges that upon his return from WMC to Fishkill, these two defendants also used excessive force and/or authorized the use of excessive force against him, had a reasonable opportunity to intervene to prevent and/or stop the force that was used against him, but failed to do so, and that these defendants also demonstrated a deliberate indifference to plaintiff's safety and/or medical needs. Plaintiff also claims that Nurse Pagliaro and Sergeant Torres caused and/or allowed him to fall from a Striker chair onto the floor of the Fishkill infirmary. Plaintiff's claims against Nurse Pagliaro and Sergeant Torres also are brought under Section 1983, and similarly allege that these two defendants violated plaintiff's Eighth Amendment rights by subjecting him to cruel and unusual punishment.

The claims against Pagliaro and Torres are also brought by plaintiff under state law, and allege that these defendants committed a battery against plaintiff.

Nurse Pagliaro and Sergeant Torres deny plaintiff's allegations, and deny that they violated any of plaintiff's rights.

As against Dr. Frank Weber and Dr. John Full, plaintiff similarly alleges that while he was under their care at WMC, these two defendants had a reasonable

opportunity to intervene to prevent and/or stop the force that was being used against him by Officers Palou, Deal, Leonardo, and Landry, but failed to do so. Plaintiff further alleges that Drs. Weber and Full demonstrated a deliberate indifference to plaintiff's safety and/or medical needs by causing and/or allowing plaintiff to fall or slide off of the surgical chair and onto the floor of the clinic, and by then allowing plaintiff to be discharged from their care and transported back to Fishkill without first having plaintiff evaluated by a medical doctor. Plaintiff's claims against Drs. Weber and Full are also brought under Section 1983, and similarly allege that these two defendants violated plaintiff's Eighth Amendment rights by subjecting him to cruel and unusual punishment.

Plaintiff also claims that Drs. Weber and Full's actions constitute professional malpractice under New York State law. Professional malpractice is essentially the negligence of a healthcare provider. I will explain the concept of professional malpractice in more detail later in my instructions to you.

Drs. Weber and Full deny plaintiff's allegations. They deny that they observed any excessive force being used against plaintiff, and they further assert that if excessive force was used against plaintiff, they did not have either the right or the opportunity to intervene to prevent and/or stop that use of force. Drs. Weber and Full further deny that they caused and/or allowed plaintiff to be fall or slide off of the surgical chair and onto the floor of the clinic, and further claim that if plaintiff ended up on the floor of the clinic, it was not due to any fault of these defendants. Drs. Weber and Full further deny that they demonstrated a deliberate

indifference to plaintiff's safety and/or medical needs. They assert that, based on their evaluation of plaintiff and plaintiff's apparent medical condition, there was no need to have him further evaluated by a medical doctor before he was discharged, and that they followed appropriate protocol in discharging plaintiff from their care.

Plaintiff also claims that Westchester Medical Center is liable for professional malpractice under New York State law based on the actions of Drs. Weber and Full, who were treating plaintiff at WMC at the time of the incident. Plaintiff's claims against WMC are based on a legal concept known as "respondeat superior," which I will explain in more detail later in my instructions to you.

## PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983

As I stated earlier, plaintiff claims a right to recover under Section 1983 of Title 42 of the United State Code, which provides, in pertinent part, that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State...subjects or causes to be subjected, any citizen of the United States...to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured...

For purposes of these instructions, I will refer to this statute as "Section 1983."

Section 1983 does not create any substantive rights in and of itself; rather, it serves as a means by which individuals can seek redress in a court for alleged violations of their substantive rights under, among other things, the United States Constitution.[1]

---

[1] *See* Leonard B. Sand, *Modern Federal Jury Instructions* ch. 87:65, Civil Rights Actions and the Fair Housing Act (Matthew Bender, 2014) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982)).

While Section 1983 addresses actions taken under color of state law, it is important to note that the State of New York is not a defendant in this case. Defendants Palou, Deal, Leonardo, Landry, Pagliaro, and Torres are current or former employees and/or agents of the New York State Department of Corrections and Community Supervision, including past or present members of the staff at Fishkill Correctional Facility, Dr. Weber was retained by the State of New York to provide services to individuals incarcerated by the State, and Dr. Full was an employee of Westchester Medical Center, which is a public benefit corporation.

Section 1983 provides that a person may seek relief in this court, including in the nature of monetary damages, against any person or persons who, under color of any state law or custom, subjects such person to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

In order to prove his Section 1983 claim against a particular defendant, the burden is on plaintiff, Chad Stanbro, to establish by a preponderance of the evidence each of the following elements:

1) That the actions of the defendant were undertaken under color of state law;

2) That the defendant performed acts which operated to deprive the plaintiff of a federal constitutional right, as defined and explained in these instructions; and

3) That the acts or omissions of the defendant were the proximate cause of an injury sustained by the plaintiff.[2]

---

[2] *See id.* at 87:67 (citing *Gomez v. Toledo*, 446 U.S. 635 (1980)).

I instruct you, as a matter of law, that the defendants were acting under color of state law at the time and place of the incident, as defendants Nadya Palou, Raymond Deal, Kristofer Leonardo, Richard Landry, Gary Pagliaro, and Enrique Torres were employed by the New York State Department of Corrections and Community Supervision, defendant John Full was employed by Westchester Medical Center, a public benefit corporation, and defendant Frank Weber was acting under a contract with the State to provide medical services to individuals incarcerated by the State. [3]

Therefore, plaintiff has established the first element of his claim.[4]

---

[3] "'To state a claim under Section 1983, a plaintiff must plead that an alleged deprivation of rights protected by federal law 'was committed by a person acting under color of state law.' Analyzing the function of the physician, the Supreme Court held in *West* that where a state has delegated the provision of medical services to private physicians, whether by contract or more direct employment arrangement, those physicians are properly considered state actors and, as such, may be held liable under Section 1983." *Garraway v. Artuz*, 2002 U.S. Dist. LEXIS 2194, at *16-17 (S.D.N.Y. 2002) (citing *West v. Atkins*, 487 U.S. 42, 48, 55-57 (1988)); *see Johnson v. Westchester Med. Ctr.*, 2021 U.S. Dist. LEXIS 49181 (S.D.N.Y. 2021) (applying Eighth Amendment analysis to claims brought by incarcerated individual against Westchester Medical Center, Dr. Frank Weber, and Dr. John Full, though determining that the defendants' conduct as alleged by the *pro se* plaintiff did not rise to the level of cruel and unusual punishment); *see also id.*, Defs.' Mem. of Law Supp. Summ. J., ECF No. 41, at 4-5 (construing aforementioned claims as Eighth Amendment claims and seeking summary judgment as to those claims); *Simmons v. Diaz*, 2018 U.S. Dist. LEXIS 242111 (S.D.N.Y. 2018) (Karas, J.) (construing incarcerated individual's complaint against Dr. Frank Weber as alleging an Eighth Amendment claim but denying application for appointment of pro bono counsel).

[4] *See* 2A *New York Pattern Jury Instructions*, PJI 3:60, Constitutional Torts–42 USC § 1983–Action for Deprivation of Federally Secured Rights (3d ed. 2021).

## <u>Claims Against Defendants Palou, Deal, Leonardo, and Landry</u>

## <u>Excessive Force: Eighth Amendment</u>

Plaintiff alleges that defendants Palou, Deal, Leonardo, and Landry used excessive and unnecessary force against him on August 31, 2018. The use of excessive force against a prisoner may constitute cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

The Eighth Amendment to the United States Constitution protects all citizens of the United States, including a prisoner, from cruel and unusual punishment. That constitutional right is violated by the unnecessary and wanton infliction of pain. It should be noted, however, that as correction officers, the defendants are given the lawful authority to use such physical force as may be reasonably necessary to enforce compliance with proper instructions and to protect themselves from physical harm from a prisoner.

The issue that must be decided in a claim of excessive force against prison officials is whether force was applied in a good faith effort to maintain or restore discipline, or, rather, maliciously or sadistically for the very purpose of causing harm. This element is to be evaluated by a subjective analysis of the defendants and their respective states of mind at the time of the incident.[5] To act maliciously means to do a wrongful act without just cause or reason, with the intent to inflict harm. To

---

[5] *See Hudson v. McMillian*, 503 U.S. 1, 21 (1992); *Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000).

act sadistically means to engage in extreme or excessive cruelty or to take delight in cruelty.[6]

Your evaluation therefore involves consideration of the amount of force used; that is, whether the force was reasonable in light of the circumstances of the case. In deciding this you should consider such facts as you deem appropriate, including the extent of plaintiff's injuries, whether there was a need for the application of the force used, the threat reasonably perceived by the defendant you are considering, and any efforts made by the defendant to temper the severity of a forceful response—that is, the relationship between the need for force and the amount of force used.

In making that analysis you should also bear in mind that in the context of a prison setting, it is necessary to realize that not every push or shove violates a prisoner's constitutional rights, even if it is later established that in hindsight it may now seem to have been unnecessary. However, even a *de minimis* injury can establish a cognizable constitutional claim if there was no justification for the force that caused that injury.[7]

---

[6] *Morgan v. Luft*, 2017 U.S. Dist. LEXIS 160066, at *9 (N.D.N.Y. 2017) (citing 3B O'Malley, Grenig & Lee, *Fed. Jury Prac. & Instr*. § 166.31 (6th ed. 2013)).

[7] *See Ketcham v. City of Mount Vernon*, 992 F.3d 144, 150 (2d Cir. 2021) (noting that even a *de minimis* injury can sustain a Fourth Amendment excessive force claim where the force was unreasonable); *Little v. Soulia*, No. 9:19-CV-0263 (TJM/TWD), 2021 U.S. Dist. LEXIS 113161, at *26 (N.D.N.Y. June 16, 2021) (extending *Ketcham* to Eighth Amendment excessive force claims).

In the context of this case, the plaintiff, in order to prevail on his claim against the defendants, must prove by a preponderance of the credible evidence each of these three elements:[8]

- First, that the defendant in question used excessive force against the plaintiff;
- Second, that the defendant in question did so not in a good faith effort to maintain or restore discipline, but sadistically or maliciously; and
- Third, that the excessive force proximately caused injury to the plaintiff.

As to the first element, bear in mind that a correction officer has the right and duty to use such reasonable force as is necessary under the circumstances to maintain order and assure compliance with prison regulations. Accordingly, in this context, excessive force is force that exceeds what would be reasonable for a correction officer to use for such purposes under all of the facts and circumstances presented by the situation.

As to the second element, force that is excessive does not necessarily violate the Eighth Amendment. The force also must be used maliciously or sadistically for the very purpose of causing harm, as opposed to in a good faith effort to maintain or restore discipline.

---

[8] This sentence and the text that follows are taken substantially from Jed S. Rakoff & John S. Siffert, *Modern Federal Jury Instructions-Civil P 87.03*, ch. 87-79A, Short Form Section 1983 (Excessive Force) (Matthew Bender, 2012); *see* O'Malley, et al., *supra*, at § 166.23 (*citing Hudson v. McMillian*, 503 U.S. 1 (1992)).

As to the third element, an act is a proximate cause of an injury if it was a substantial factor in bringing about that injury and if the injury was a reasonably foreseeable consequence of the defendant's act.

If plaintiff proves all three of these elements by a preponderance of the credible evidence, you should record on your verdict form that the defendant in question used excessive force against plaintiff in violation of plaintiff's right to be free from cruel and unusual punishment.

### Failure to Intervene: Eighth Amendment

Additionally, a correction officer who, while not participating in an assault upon an incarcerated individual, is present while it occurs, may nonetheless bear responsibility for any resulting constitutional deprivation. It is well established that a law-enforcement official has an affirmative duty to intervene on behalf of an individual whose constitutional rights are being violated in his or her presence by other officers.[9] In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring.[10]

As stated earlier, plaintiff claims that on August 31, 2018, Fishkill Correction Officers Nadya Palou, Raymond Deal, Kristofer Leonardo, and Richard Landry used excessive force against him while he was inside the dental clinic at Westchester Medical Center. Plaintiff further alleges that each of these officers failed to intervene to prevent and/or stop that use of force by his or her fellow officers.

---

[9] *Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001).

[10] *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).

If you find that any of these defendants were present during a use of excessive force and failed to intervene to prevent and/or stop that use of force, despite having a realistic opportunity to do so, you necessarily must find that that officer violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. If, on the other hand, you find with respect to a particular defendant that he or she was not present during a use of excessive force, or that he or she did not fail to intervene to prevent and/or stop that use of force despite having a realistic opportunity to do so, you necessarily must find that that officer did not violate plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.

### Deliberate Indifference to Safety and/or Serious Medical Needs: Eighth Amendment

Plaintiff also alleges that defendants Palou, Deal, Leonardo, and Landry were deliberately indifferent to plaintiff's safety and/or medical needs following their use of force against him.[11] Specifically, plaintiff alleges that after force was used against him, these defendants caused and/or allowed plaintiff to slide or fall onto the floor of the dental clinic, causing plaintiff to sustain additional injuries. Plaintiff further alleges that Palou and Deal improperly removed plaintiff from WMC and transported him back to Fishkill without first ascertaining that it was medically safe to do so, and that they improperly transported plaintiff to Fishkill in

---

[11] Non-medical prison personnel can be liable for deliberate indifference to medical needs. *See, e.g.*, *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Easley v. Loverme*, 2020 U.S. Dist. LEXIS 88415, at *14-15 (W.D.N.Y. 2020).

the back of a prison van without first arranging for him to be properly secured inside the van, causing plaintiff to sustain additional injuries.

"The Eighth Amendment, which prohibits cruel and unusual punishment, requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody. To satisfy the deliberate indifference to safety standard, a plaintiff must show that (1) he is incarcerated under conditions posing a substantial risk of serious harm, and (2) the defendant prison officials possessed sufficient culpable intent. The first prong is objective and requires that prison officials provide inmates with basic human needs, one of which is reasonable safety. The second prong of the deliberate indifference test, culpable intent, in turn, involves a two-tier inquiry. In particular, a prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm[,] and he disregards that risk by failing to take reasonable measures to abate the harm. [T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. A defendant's knowledge can be established through inference from circumstantial evidence, including from the very fact that the risk was obvious…"[12]

"The Eighth Amendment [also] forbids 'deliberate indifference to serious medical needs of prisoners'… A convicted prisoner's claim of deliberate indifference to his medical needs by those overseeing his care is analyzed under the Eighth

---

[12] *Mays v. Falu*, No. 18-cv-6145 (KMK), 2019 U.S. Dist. LEXIS 210062, at *17-19 (S.D.N.Y. Dec. 5, 2019) (Karas, J.) (internal quotation marks and citations omitted).

Amendment because it is an allegation that his 'conditions of confinement [are] a form of punishment' and thus are a 'violation of [the] Eighth Amendment right to be free from cruel and unusual punishments.'" To state a deliberate indifference claim, Plaintiff must plausibly allege (1) "that he suffered a sufficiently serious constitutional deprivation," and (2) that defendants "acted with deliberate indifference."[13]

As to the first factor, there is no precise method by which to determine whether a plaintiff suffered a significantly serious constitutional deprivation. However, in making that determination, you should consider "(1) whether a reasonable doctor or patient [or officer] would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'"[14]

As to the second factor, whether defendants acted with deliberate indifference, the plaintiff must show that the official "must have appreciate[d] the risk to which a prisoner was subjected, and have had a subjective awareness of the harmfulness associated with those conditions. An official's awareness of the risk of serious harm can be established through inference from circumstantial evidence, including from the very fact that the risk was obvious. However, neither mere

---

[13] *Thurmond v. Thomas-Walsh*, 2019 U.S. Dist. LEXIS 54474, at *12-13 (S.D.N.Y. 2019) (Karas, J.) (citations omitted).

[14] *Murphy v. L.A. Spaulding*, 2022 U.S. Dist. LEXIS 18267, at *19 (S.D.N.Y. 2022) (Karas, J.) (citations omitted).

negligence nor mere disagreement over the proper treatment is sufficient to create a constitutional claim."[15]

Therefore, if you find that (1) plaintiff suffered a sufficiently serious constitutional deprivation, and (2) Defendants "acted with deliberate indifference" to plaintiff's safety and/or serious medical needs, you necessarily must find that plaintiff's right to be free from cruel and unusual punishment was violated. If, on the other hand, you find that (1) plaintiff did not suffer a sufficiently serious constitutional violation, or that (2) defendants did not act with deliberate indifference, you necessarily must find that plaintiff's right to be free from cruel and unusual punishment resulting from a deliberate indifference to safety and/or serious medical needs was not violated.

### Claims Against Defendants Pagliaro and Torres

### Excessive Force, Failure to Intervene, and Deliberate Indifference to Medical Needs

In this case, plaintiff also claims that on August 31, 2018, Nurse Gary Pagliaro and Sergeant Enrique Torres used excessive force and/or authorized the use of excessive force against him after his return to Fishkill from WMC. Plaintiff further alleges that both of these defendants failed to intervene to prevent and/or stop an excessive use of force against plaintiff upon his return to Fishkill. Plaintiff further alleges that both of these defendants demonstrated a deliberate indifference to plaintiff's safety and/or serious medical needs upon his return to Fishkill. These

---

[15] *Price v. Koenigsmann*, 2022 U.S. Dist. LEXIS 6939, at *16-17 (S.D.N.Y. 2022) (Karas, J.) (internal quotation marks and citations omitted).

claims against Gary Pagliaro and Enrique Torres also are brought pursuant to Section 1983, and allege that these defendants violated plaintiff's rights under the Eighth Amendment not to be subjected to cruel and unusual punishment.

Gary Pagliaro and Enrique Torres deny plaintiff's allegations. They both deny that they used or authorized the use of excessive force against plaintiff, and deny that they failed to intervene to prevent and/or stop any excessive force against plaintiff, and deny that they were deliberately indifferent to plaintiff's serious medical needs.

In determining whether Gary Pagliaro and/or Enrique Torres used and/or authorized the use of excessive force against plaintiff, failed to intervene to prevent and/or stop any excessive force against plaintiff, and/or were deliberately indifferent to plaintiff's safety and/or serious medical needs, in violation of the Eighth Amendment, you will use the same standards on which I instructed you with respect to Officers Palou, Deal, Leonardo, and Landry.

### Claims Against Defendants Weber and Full

### Failure to Intervene and Deliberate Indifference to Medical Needs

In this case, plaintiff also claims that on August 31, 2018, at WMC, Dr. Frank Weber and Dr. John Full failed to intervene to prevent and/or stop an excessive use of force against plaintiff by Officers Palou, Deal, Leonardo, and Landry. Plaintiff further alleges that Drs. Weber and Full demonstrated a deliberate indifference to plaintiff's safety and/or serious medical needs in causing and/or allowing plaintiff to fall to the floor of the dental clinic, and also in connection with plaintiff's discharge from their care. These claims against Drs.

17

Weber and Full also are brought pursuant to Section 1983, and allege that these defendants violated plaintiff's rights under the Eighth Amendment not to be subjected to cruel and unusual punishment.

Drs. Weber and Full deny plaintiff's allegations. They both deny that they failed to intervene to prevent and/or stop any excessive force against plaintiff, and deny that they were deliberately indifferent to plaintiff's safety and/or serious medical needs.

In determining whether Dr. Frank Weber and/or Dr. John Full failed to intervene to prevent and/or stop any excessive force against plaintiff and/or were deliberately indifferent to plaintiff's safety and/or serious medical needs, in violation of the Eighth Amendment, you will use the same standards on which I instructed you with respect to Officers Palou, Deal, Leonardo, and Landry.

## PLAINTIFF'S CLAIMS OF BATTERY UNDER NEW YORK STATE LAW[16]

## Claims Against Palou, Deal, Leonardo, and Landry

In this action, plaintiff also seeks damages against Palou, Deal, Leonardo, and Landry based on a New York state-law claim for battery. A person who intentionally touches another person, without that person's consent, and causes an offensive bodily contact commits a battery and is liable for all damages resulting from him or her act. Intent involves the state of mind with which an act is done. The intent required for battery is intent to cause a bodily contact that a reasonable

---

[16] This charge is taken from 2A New York Pattern Jury Instructions, PJI 3:3. Intentional Torts—Interference with Person or Property—Battery—Generally (3d ed. 2021).

person would find offensive. An offensive bodily contact is one that is done for the purpose of harming another or one that offends a reasonable sense of personal dignity, or one that is otherwise wrongful.

Plaintiff claims that defendants Palou, Deal, Leonardo, and Landry used force against him inside the WMC clinic, causing him to sustain injuries. Palou, Deal, Leonardo, and Landry admit that they used force against plaintiff in the WMC clinic, but claim that they were acting in self-defense and therefore are not liable for any damages to plaintiff. Palou, Deal, Leonardo, and Landry have the burden of establishing self-defense by a fair preponderance of the credible evidence, as I have described that term for you. In order to establish self-defense, defendants must establish that they reasonably believed that plaintiff was attacking or about to attack them or others inside the clinic, and that the force used to prevent injury to themselves or others was reasonable under the circumstances.

If you find that Palou, Deal, Leonardo, and Landry had a reasonable belief that they or others inside the clinic were facing a physical attack from plaintiff and that the force that they used was reasonable under the circumstances, you will find that these defendants were acting in self-defense and are not liable for battery. If you find that these defendants did not have a reasonable belief that they or others inside the clinic were facing a physical attack from plaintiff or that even though they did, the force that they used was not reasonable under the circumstances, you will find that these defendants were not acting in self-defense and therefore are liable for battery.

### Claims Against Pagliaro and Torres

Plaintiff also claims that defendant Nurse Gary Pagliaro and Sergeant Enrique Torres committed a battery against plaintiff in the manner in which they physically handled plaintiff upon his return from WMC to Fishkill. Pagliaro and Torres admit that they physically handled plaintiff upon his return to the Fishkill, but deny that their handling of him was intentionally offensive in any manner.

If you find that Pagliaro or Torres intentionally made contact with plaintiff and that such contact was offensive, you will find that these defendants committed a battery. If you find that Pagliaro and Torres did not intentionally make offensive contact with plaintiff, you will find that these defendants did not commit a battery.

## PLAINTIFF'S CLAIMS OF MALPRACTICE AGAINST
## DR. WEBER, DR. FULL, AND WESTCHESTER MEDICAL CENTER

### Claims Against Weber and Full

Plaintiff also claims that Dr. Frank Weber and Dr. John Full committed professional malpractice in connection with their care and treatment of plaintiff. This is a claim that plaintiff is bringing under New York State law.

Specifically, plaintiff claims that Drs. Weber and Full committed malpractice by 1) causing and/or allowing plaintiff to fall to the floor of the dental clinic; and 2) by allowing plaintiff to be discharged from their care and transported back to Fishkill without first having plaintiff evaluated by a medical doctor. As stated earlier, Drs. Weber and Full deny plaintiff's claims, and deny that they committed malpractice either in connection with plaintiff ending up on the floor of the dental clinic or in connection with plaintiff's discharge from their care.

20

Malpractice is professional negligence and medical malpractice is the negligence of a doctor.[17] Negligence is the failure to use reasonable care under the circumstances, doing something that a reasonably prudent doctor would not do under the circumstances, or failing to do something that a reasonably prudent doctor would do under the circumstances. It is a deviation or departure from accepted practice.

A doctor who renders a dental or oral surgical service to a patient is obligated to have that reasonable degree of knowledge and skill that is expected of an average doctor who performs that procedure in the medical community in which the doctor practices. The doctor must also comply with minimum statewide and national standards of care.

The law recognizes that there are differences in the abilities of doctors, just as there are differences in the abilities of people engaged in other activities. To practice in his field, a doctor is not required to have extraordinary knowledge and ability that belongs to a few doctors of exceptional ability. However, every doctor is required to keep reasonably informed of new developments in his field in accordance with approved methods and means of treatment in general use. A doctor must also use his best judgment and whatever superior knowledge and skill he possesses, even if the knowledge and skill exceeds that possessed by the average doctor in the community where the doctor practices.

---

[17] 1B *New York Pattern Jury Instructions*, PJI 2:150, Malpractice—Physician (3d ed. 2021).

By undertaking to perform a service, a doctor does not guarantee a good result. The fact that there was a bad result to the patient, by itself, does not make the doctor liable. The doctor is liable only if he was negligent. Whether the doctor was negligent is to be decided on the basis of the facts and conditions existing at the time of the claimed negligence.

A doctor is not liable for an error in judgment if he does what he decides is best after careful evaluation, if it is a judgment that a reasonably prudent doctor could have made under the circumstances. In other words, a doctor is not liable for malpractice if he chooses one of two or more acceptable courses of action.

If the doctor is negligent, that is, lacks the skill or knowledge required of him in providing a service, or fails to use reasonable care in providing the service, or fails to exercise his or her best judgment, and such failure is a substantial factor in causing harm to the patient, then the doctor is responsible for the injury or harm caused.

### Claims Against Westchester Medical Center (Respondeat Superior)

An employer is responsible for the act of its employer if the act is in furtherance of the employer's business and is within the scope of the employee's authority. An act is within the scope of any employee's authority if it is performed while the employee is engaged generally in the performance of his assigned duties

or if the act is reasonably necessary or incidental to the employment. The employer need not have authorized the specific act in question.[18]

Here, it is undisputed that Dr. Weber treated plaintiff at WMC and was an attending doctor and had admitting privileges at WMC,[19] and that Dr. John Full was employed by WMC. It also is undisputed that both doctors were acting within the scope of their employment at the time of the incident.[20]

Accordingly, if you find that either Dr. Weber or Dr. Full committed malpractice in their treatment of plaintiff, and that such malpractice caused plaintiff to sustain an injury, you must find that Westchester Medical Center also is responsible for that doctor's actions and for any injuries sustained by plaintiff as a result of either or both doctors' actions. If, on the other hand, you find that neither Dr. Weber nor Dr. Full committed malpractice in their treatment of plaintiff, then

---

[18] *See id*. at PJI 2:235, Liability for the Conduct of Another—Employer-Employee—Scope of Employment.

[19] Under these circumstances, WMC would be vicariously liable for Dr. Full's actions. *See, e.g.*, *Schiavone v. Victory Memorial Hosp.*, 292 A.D.2d 365 (2d Dep't 2002) (hospital vicariously liable for the negligence of an independent contractor emergency-room physician where the patient enters the emergency room seeking treatment from the hospital rather than a specific physician of the patient's own choosing); *Malcolm v. The Mount Vernon Hosp.*, 309 A.D.2d 704 (1st Dep't 2003) (hospital vicariously liable for negligence of private attending doctor or independent contractor utilizing its facilities where the doctor was provided by the hospital or was otherwise acting on the hospital's behalf, and the patient reasonably believed that the doctor was acting at the hospitals' behest).

[20] *See, e.g.*, *Tenczar v. Richmond*, 172 A.D.2d 952, 953 (3rd Dep't 1991) ("[W]here no conflicting evidence exists, a court may determine the 'scope of employment' issue as a matter of law.") (citation omitted).

you must also find that Westchester Medical Center is not responsible for any injuries sustained by plaintiff.

### JOINT LIABILITY FOR THE ACTIONS OF OFFICER LEONARDO[21]

In this case, plaintiff alleges that he sustained injuries inside the WMC dental clinic as a result of force used against him by Officers Palou, Deal, Leonardo, and Landry. However, plaintiff alleges that his injuries were caused primarily by force applied to his neck by Officer Leonardo. Where officers act in concert with each other, such as by lending aid or encouragement, the officers are each fully responsible for the plaintiff's injuries even though the other officers may not have wielded the instrumentality of harm. In other words, an officer may be liable for excessive force even if he or she did not strike the blow that caused plaintiff's most significant injury. It is enough that the officer was at the scene and participated in the use of force.

### SUBSEQUENT INJURIES

In this case, plaintiff also claims that following the injuries he sustained from the initial use of force by Officers Palou, Deal, Leonardo, and Landry inside the WMC dental clinic, plaintiff sustained additional injuries and/or an aggravation of those initial injuries from the following: 1) Officers Palou, Deal, Leonardo, and Landry, and Drs. Weber and Full, having caused and/or allowed plaintiff to fall onto the floor of the dental clinic; 2) Drs. Weber and Full having prematurely

---

[21] This instruction is taken from *Rivera v. State of New York*, 34 N.Y.3d 383, 406 (2019), *John v. City of New York*, 406 F. Supp. 3d 240, 244-45 (E.D.N.Y. 2017), and *Johnson v. City of New York*, 2019 U.S. Dist. LEXIS 10867, at *32-33 (S.D.N.Y. 2019).

discharged plaintiff from their care into Palou and Deal's custody; 3) Officers Palou and Deal having prematurely removed plaintiff from WMC; 4) The manner in which Palou and Deal transported plaintiff from WMC back to Fishkill Correctional Facility; and 5) Nurse Pagliaro and Sgt. Torres having caused/and or allowed plaintiff to be precipitated onto the floor of the Fishkill infirmary and having caused and/or allowed plaintiff to sustain other injuries while at the Fishkill infirmary.

If you find Officers Palou, Deal, Leonardo, and/or Landry liable for any injury sustained by plaintiff in the initial use of force inside the WMC dental clinic, those defendants are also liable for any aggravation of that injury and for any additional pain and suffering caused by any negligence or lack of skill by Dr. Weber and/or Dr. Full.[22]

If you find that subsequent to any injury wrongfully caused by an initial use of force by Officers Palou, Deal, Leonardo, or Landry inside the WMC dental clinic, plaintiff was injured in a subsequent incident or incidents, and if you find that the original injury was a substantial factor in causing any of the subsequent incidents, plaintiff is entitled to recover from Palou, Deal, Leonardo, and/or Landry for any aggravation of his original injury or any additional injury, or both, that you find

---

[22] *See* 2A *New York Pattern Jury Instructions*, *supra*, at PJI 2:305, Damages—Personal Injury—Subsequent Injury—Medical Malpractice. While this section refers to a "negligent" tortfeasor, any "wrongdoer" can be liable for subsequent malpractice which exacerbates the underlying injury he caused. *See e.g.*, *Ferrara v. Galluchio*, 5 N.Y.2d 16, 20 (1958) ("[T]he 'rule is now well established that *a wrongdoer* is liable for the ultimate result, though the mistake or even negligence of the physician who treated the injury may have increased the damage which would otherwise have followed from the original wrong.") (quoting *Milks v. McIver*, 264 N.Y. 267, 270 (1934)) (emphasis added).

resulted from any subsequent incident.[23] Similarly, if you find that subsequent to any wrongful discharge by Drs. Weber and Full of plaintiff from their care, plaintiff was injured in a subsequent incident or incidents, and if you find that Dr. Weber and/or Dr. Full's actions in wrongfully discharging plaintiff from their care were a substantial factor in causing any of the subsequent incidents, plaintiff is entitled to recover from Drs. Weber and Full for any aggravation of his original injury or any additional injury, or both, that you find resulted from any subsequent incident.

If you find that more than one defendant committed a wrongful act and that each of those acts was a substantial factor in causing injury to plaintiff, you will render a verdict in favor of plaintiff against each defendant. In such case you will determine the extent of the injuries each defendant caused to the plaintiff and award a separate verdict in favor of plaintiff against each defendant in such amount as you find will fairly and adequately compensates plaintiff for the injuries caused. In such case no defendant is liable for any injury sustained by plaintiff as the result of the separate wrongful conduct of any other defendant.[24]

If you find, however, that the wrongful act of more than one defendant caused plaintiff's injuries, but that, because of the nature of the acts and the nearness in time of the acts and resulting injuries, you cannot determine which of plaintiff's

---

[23] *Id.* at PJI 2:306, Damages—Personal Injury—Subsequent Injury—Subsequent Accident.

[24] *Id.* at PJI 2:307, Damages—Personal Injury—Subsequent Injury— Successive Accidents.

injuries were caused by each defendant, all of the defendants who committed the wrongful acts will be liable for all of plaintiff's injuries. [25]

## **COMPENSATORY DAMAGES**[26]

My charge to you on the law of damages must not be taken as a suggestion that you should find for the plaintiff. It is for you to decide on the evidence presented and the rules of law I have given you whether the plaintiff is entitled to recover from any or all of the defendants. If you decide that plaintiff is not entitled to recover from any or all of the defendants, you need not consider damages. Only if you decide that plaintiff is entitled to recover will you consider the measure of damages.

If you decide that a particular defendant is liable, plaintiff is entitled to recover from that defendant a sum of money which will justly and fairly compensate him for any injury, disability and conscious pain and suffering to date caused by that defendant. The purpose of the law of damages is to award, as far as possible, just and fair compensation for the loss, if any, that resulted from a defendant's violation of the plaintiff's rights. These types of damages are known as compensatory damages. Such damages seek to make a plaintiff whole—that is, to compensate him for the damage suffered. Compensatory damages are not awarded

---

[25] *Id.* at PJI 2:307, Damages—Personal Injury—Subsequent Injury—Successive Accidents.

[26] Since plaintiff has asserted state and federal claims, this charge borrows from *id.* at PJI 2:277, Damages—General, PJI 2:280 and 2:280.1, Damages—Personal Injury—Injury and Pain and Suffering, and applicable federal law. *See Gibeau v. Nellis*, 18 F.3d 107 (2d Cir. 1994); *Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004).

to punish a defendant—compensatory damages are awarded in order to attempt to put the injured party back in the same position as he would have been had the wrongful conduct not occurred. Compensatory damages are, however, not limited merely to expenses that the plaintiff may have incurred. A plaintiff is also entitled to recover compensatory damages for the physical injury, pain and suffering, mental anguish, loss of enjoyment of life, shock and discomfort that he has suffered because of a defendant's conduct. Loss of enjoyment of life involves the loss of the ability to perform daily tasks, to participate in the activities which were a party of the person's life before the injury, and to experience the pleasures of life. Any damage award, including for compensatory damages, however, must be just and reasonable. The award must be neither inadequate nor excessive.

### PUNITIVE DAMAGES[27]

If you award compensatory damages to plaintiff, the law permits you to make, but does not require, an award for punitive damages. Such damages are awarded in the discretion of you, the jury, to punish a defendant for extreme or outrageous conduct, or to deter or prevent a defendant and others like him or her from committing similar acts in the future.

You may award plaintiff punitive damages if you find that the acts or omissions of the defendant under consideration were done maliciously, wantonly, or oppressively. An act is done maliciously if it is prompted by ill will or spite towards

---

[27] Since plaintiff has asserted state and federal claims, this charge borrows from 2A *New York Pattern Jury Instructions*, *supra*, at PJI 2:278, Damages—Punitive, and applicable federal law. *See Smith v. Wade*, 461 U.S. 30, 56 (1983); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981); *Carlson v. Green*, 446 U.S. 14 (1980).

the injured person. An act is wanton if done in reckless or callous disregard of, or indifference to, the rights of the injured person. An act is done oppressively if done in a manner which injures, damages or otherwise violates the rights of another person with unnecessary harshness or severity, as by misuse or abuse of authority or power, or by taking advantage of some weakness, disability or misfortune of another person. In order to justify an award of punitive damages, plaintiff has the burden of proving by a preponderance of the evidence that the defendant under consideration acted maliciously, wantonly, or oppressively with regard to plaintiff's rights.

Dated:  New York, New York
        June 3, 2022

Yours, etc.

**SIVIN, MILLER & ROCHE LLP**

s/ Edward Sivin
Edward Sivin
Attorneys for Plaintiff
20 Vesey Street, Suite 1400
New York, NY 10007
Telephone: (212) 349-0300
E-mail: esivin@sivinandmiller.com

cc: Counsel of Record (via ECF)