## PRELIMINARY JURY INSTRUCTIONS[1]

Members of the jury, now that you've been sworn in as our jury, I want to briefly tell you something about your duties as jurors and give you some instructions.

At the end of the trial, I'm going to give you more detailed instructions about the law, and those instructions will control your deliberations. At the end of the presentation of all the evidence and my final charge to you, it will be your duty to decide from the evidence what the facts are and then to apply the law to those facts. In doing so, you must follow the law as I give it to you. Remember, you are the sole judges of the facts. You must not take anything I say or do during the trial as indicating what your verdict should be. Don't be influenced by my taking notes. What I write down may have nothing to do with this trial or with what you will be concerned with at the trial.

First of all, a word about evidence. You will decide what the facts are from the evidence that will be presented here in court. That evidence will consist of the testimony of witnesses, documents, and other things received into evidence as exhibits, and any facts on which the lawyers may stipulate. If they stipulate to something, that just means they agree on a fact and I'll tell you what the fact is or they'll tell you what the fact is and so it's stipulated, that is, no one disagrees with it. There are two kinds of evidence: direct and circumstantial. Direct evidence is testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is indirect evidence, that is, it is proof of one or more facts from which you can find another fact. You may consider both direct and circumstantial evidence in deciding this case. The law permits you to give equal weight to both or to none. It is up to you to decide how much weight, if any, to give to any evidence.

---

[1]Adapted from Choi v. City of New York, No. 10-cv-6617 (JPO) (S.D.N.Y.) (ECF No. 53).

At times during the trial I may sustain objections to questions that are asked. When that happens, I will not permit the witness to answer or, if the witness has already answered, I will instruct you that the answer must be stricken from the record and that you must disregard it and dismiss it from your minds. In reaching your decision, you may not draw any inference from an unanswered question, nor may you consider in your deliberations testimony that I have ordered stricken from the record. The law requires that your decision be made solely upon the evidence before you. The items I exclude from your consideration will be excluded because they are not legally admissible as evidence. The law does not, however, require you to accept all of the evidence that I do admit. In determining what evidence you will accept, you must make your own evaluation of the testimony given by each of the witnesses and of the documents that may be presented to you, and it's up you to determine what weight, if any, you choose to give to each witness's testimony or to an exhibit. There's no magic formula by which you should evaluate testimony or exhibits. At this time, suffice it to say, you bring with you to this courtroom all of the experience and background of your lives. You do not leave your common sense outside the courtroom. Use it in your deliberations. The same types of tests that you apply in your everyday dealings are the tests that you apply in your deliberations.

Now, what is not evidence? The questions and objections of the attorneys are not evidence and neither is the testimony that I instruct you to disregard. The statements and arguments of the attorneys during any part of the trial are also not evidence. Further, anything you may see or hear when the court is not in session, even if what you see or hear is done or said by one of the parties or by one of the witnesses, is not evidence. Only what is admitted into evidence here when court is in session and all the parties and jurors are present is evidence, competent evidence. I also want to caution you briefly about certain principles that govern your conduct as jurors during this trial.

First, as I mentioned, do not talk to each other about this case or about anyone who has anything to do with it until the end of the case when you go to the jury room to decide on your verdict.

Second, do not talk with anyone else about this case or with anyone who has anything to do with it until the trial has ended and you have been discharged as jurors. Anyone else includes members of your family and friends. Of course, someone might ask you what you're doing this week and you can say you're on a jury in a civil case in federal court, but please do not tell them anything else beyond that general description until after you've already been discharged when the case is done.

Third, do not let anyone talk to you about the case or about anyone who has anything to do with it. If someone tries to talk to you, as I mentioned, please do not talk to them. If someone involved in the case does try to talk to you, please report it to me. This includes the lawyers and the witnesses in the case.  If you do happen to run into one of the lawyers or the witnesses in the hallway or the elevator, don't speak to them and they won't speak to you. As I said, it doesn't mean they're being rude. It means that I told them not to talk to you while the trial is going on.

Fourth, do not read any newspaper stories or articles or listen to any radio television programs about anyone or anything having to do with this case. I don't have any reason to believe there's going to be media coverage regarding this trial, but if do you run across something about the case or about any of the parties or the witnesses, please do not view it.

Fifth, do not do any research or any investigation about the case on your own. As I've said a couple times now, what matters is what you hear and see here in the courtroom. Also, please do not use any social media to do any research on the case or to comment about the trial. This means no Facebook or Twitter or any social media site talking about the conduct of the trial or your

deliberations. The parties are entitled to have you personally render a verdict in this case on the basis of your independent evaluation of the evidence presented here in the courtroom. Speaking to others about the case, including family members, before you deliberate or exposing yourself to evidence outside the courtroom would compromise your service and fairness to the parties.

A word about the burden of proof. Please remember that this is a civil case. In civil cases, the burden is different from that in a criminal case.  In a civil case it's called "*proof by a preponderance of the evidence.*" I will instruct you fully on what that burden of proof means after all the evidence has been received in trial.

Finally, I'd like to summarize briefly the stages of the trial. First, each side may make an opening statement. An opening statement is not evidence or argument. It is an outline of what that party intends to prove and it is offered to help you follow the evidence. Next, the plaintiff will start by presenting witnesses and the defendants may cross-examine the witnesses. Then the defendants may present witnesses and the plaintiff may cross-examine them.   Finally, the attorneys will have a chance to make closing arguments to summarize and give you their interpretation of the evidence. Just like with the opening statements, the closing arguments are not evidence. After the closing summations, I will give you instructions on the law and then you will retire to the jury room to deliberate on your verdict.

Please do not make up your mind about the verdict until after I've instructed you and after you've heard all the evidence. Keep an open mind until that time. Both parties deserve and the law requires that you give them an opportunity to be fully heard before you make up your mind.

## GENERAL INSTRUCTIONS

**<u>Introductory Remarks</u>**

Members of the jury, you have now heard all of the evidence in the case as well as the final arguments of the parties. You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in the case.

Now it is time for me to instruct you as to the law that governs the case. There are three parts to these instructions. First, I'm going to give you some general instructions about your role, and about how you are to decide the facts of the case. Most of these instructions would apply to just about any trial. Second, I'll give you some specific instructions about the legal rules applicable to this particular case. Third, I'll give you some final instructions about procedure.

Listening to these instructions may not be easy. It is important however that you listen carefully and concentrate. You'll notice that I'm reading these instructions from a prepared text. It would be more lively, no doubt, if I just improvised. But it's important that I not do that. The law is made up of words, and those words are very carefully chosen. So when I tell you the law, it's critical that I use exactly the right words.

Because my instructions are lengthy, I have provided each of you with a copy of them, not only so that you can follow them as I read them now, but also so that you can have them with you for reference as you deliberate. Nonetheless, feel free to just listen for now.

**<u>Role of the Court</u>**

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and to apply them to the facts as you determine them.  With respect to legal matters, you must take the law as I give it to you.  If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow. You must not substitute your own notions or opinions of what the law is or ought to be.

**<u>Role of the Jury</u>**

As members of the jury, you are the sole and exclusive judges of the facts.  You pass upon the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

Do not conclude from any of my questions or any of my rulings on objections or anything else I have done during this trial that I have any view as to the credibility of the witnesses or how you should decide the case.

In determining the facts, you are reminded that you took an oath to render judgment impartially and fairly, without prejudice or sympathy and without fear, solely upon the evidence in the case and the applicable law. I know that you will do this and reach a just and true verdict.[2]

---

[2] Sand et al., Modern Fed. Jury Instructions, Instruction 71-4.

**<u>Role of Counsel</u>**

It is the duty of the attorneys to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. It is my job to rule on those objections.  Therefore, why an objection was made or why I ruled on it the way I did is not your concern.  You should draw no inference from the fact that an attorney objects to any evidence. Nor should you draw any inference from the fact that I might have sustained or overruled an objection.

The personalities and the conduct of counsel in the courtroom are not in any way at issue. If you formed reactions of any kind to any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those reactions should not enter into your deliberations.

During the course of the trial, I may have had to admonish an attorney or correct his or her presentation.  You should draw no inference against him or her or the client.  It is the duty of the attorneys to offer evidence and press objections on behalf of their clients.

From time to time, the lawyers and I had conferences out of your hearing.  These conferences involved procedural and other legal matters, and none of the events relating to these conferences should enter into your deliberations at all.

**<u>Sympathy or Bias</u>**

Under your oath as jurors you are not to be swayed by sympathy or prejudice.  Your verdict must be based solely upon the evidence developed at this trial, or the lack thereof.  It must be clear to you that once you let fear or prejudice or bias or sympathy interfere with your thinking, there is a risk that you will not arrive at a true and just verdict.

It would be improper for you to consider any personal feelings you may have about one of the parties' race, religion, national origin, gender or age, sexual orientation, disability or physical appearance.  It would be equally improper for you to allow any feelings you might have about the nature of the claim against the defendants to influence you in any way.  The parties in this case are entitled to a trial free from prejudice and bias.  Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

**<u>All Persons Equal Before the Law</u>**

In reaching your verdict, you must remember that all parties stand equal before a jury in the courts of the United States. You have heard the testimony of correction officers and other prison officials. The fact that a party or witness may be employed as a correction officer does not mean that his or her testimony is deserving of any more or less consideration or greater or lesser weight than that of an ordinary party or witness.  It is your decision, after reviewing all the evidence, whether to accept or reject all or parts of the testimony of the law enforcement witnesses as you would any other witness and to give to that testimony whatever weight, if any, you find it deserves.

You have heard the testimony of plaintiff and his witnesses, who are current or former inmates. The fact that a witness is or was an  inmate does not mean that the witness's testimony is deserving of more or less consideration or greater or lesser weight than that of any other witness. It is your decision, after reviewing all of the evidence, whether to accept or reject all or parts of the testimony of an inmate or former inmate witness as you would any other witness and to give to that testimony whatever weight, if any, you find it deserves.

**Burden of Proof**

As this is a civil case, the plaintiff has the burden of proving his claim by a preponderance of the evidence. This means that the plaintiff must prove by a preponderance of the evidence each and every disputed element of his claim with respect to each defendant. If you find that the plaintiff has failed to establish his claim by a preponderance of the evidence, you must decide against him on that claim.

What does a "preponderance of the evidence" mean? To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents. In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties—that it is equally probable that one side is right as it is that the other side is right—then you must decide that issue against the party having this burden of proof. That is because the party bearing this burden must prove more than simple equality of evidence—the party must prove the element at issue by a preponderance of the evidence. On the other hand, the party with this burden of proof need prove no more than a preponderance. So long as you find that the scales tip, however slightly, in favor of the party with this burden of proof—that what the party claims is more likely true than not true—then that element will have been proved by a preponderance of the evidence.

In this case, the plaintiff has the burden of proving each element of his claims. There are 3 defendants in this case. The plaintiff must satisfy his burden as to each defendant separately. If,

for example, you find that the plaintiff has satisfied his burden as to one defendant, but not as to the other defendants, then you must find in favor of plaintiff only against the first defendant, but you may not find in favor of the plaintiff against the other defendants.*

One final note on the burden of proof: some of you may have heard of "proof beyond a reasonable doubt."  This is the standard of proof in a criminal trial.  It does not apply to a civil case such as this and you should put it out of your mind.

* Paragraph modified from 4 Sand, et al., *Modern Federal Jury Instructions (Civil),* Instr. 73-1

**What Is and Is Not Evidence**

In determining the facts, you must rely upon your own recollection of the evidence.  The evidence in this case is the sworn testimony of the witnesses and the exhibits received in evidence.

However, testimony that I may have stricken or excluded is not evidence and may not be considered by you in rendering your verdict.  Also, if certain testimony was received for a limited purpose, you must follow the limiting instructions I gave you, and use the evidence only for the purpose I indicated.

The only exhibits that are evidence in this case are those that were received in evidence.  Exhibits marked for identification but not admitted are not evidence, nor are materials that were used only to refresh a witness's recollection.

As I told you at the start of this case, statements and arguments by lawyers are not evidence, because the lawyers are not witnesses.  What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict.  However, if your recollection of the facts differs from the lawyers' statements, it is your recollection that controls.

For the same reasons, you are not to consider a lawyer's questions as evidence.  It is the witnesses' answers that are evidence, not the questions.  Similarly, any statements that I may have made do not constitute evidence.  It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

Finally, this means, of course, that anything you may have heard or read in the news media or anything outside of this courtroom may play no role in your deliberations.  Your decision in this case must be made solely on the evidence presented at trial.

**Direct and Circumstantial Evidence**

Generally, there are two types of evidence that you may consider in reaching your verdict. One type of evidence is direct evidence. Direct evidence is testimony by a witness about something he knows by virtue of his or her own senses—something he has seen, felt, touched, or heard.  For example, if a witness testified that when he left his house this morning, it was raining, that would be direct evidence about the weather.

Circumstantial evidence is evidence from which you may infer the existence of certain facts.  For example, assume that when you came into the courthouse this morning the sun was shining and it was a nice day.  Assume that the courtroom blinds were drawn and you could not look outside.  As you were sitting here, someone walked in with an umbrella, which was dripping wet.  Then a few minutes later another person entered with a wet raincoat.  Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining.  So you have no direct evidence of that fact.  But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence.  You infer on the basis of reason, experience, and common sense from one established fact the existence or non-existence of some other fact.

As you can see, the matter of drawing inferences from facts in evidence is not a matter of guesswork or speculation.  An inference is a logical, factual conclusion which you might reasonably draw from other facts that have been proven.  Many material facts—such as what a person was thinking or intending—can rarely be proved by direct evidence.

Circumstantial evidence is as valuable as direct evidence.  The law makes no distinction between direct and circumstantial evidence.

There are times when different inferences may be drawn from the evidence.  The plaintiff asks you to draw one set of inferences.  The defendants ask you to draw another.  It is for you, and for you alone, to decide what inferences, if any, you will draw.

**<u>Effect of Inference on the Burden of Proof</u>**[3]

      The mere existence of an inference against a defendant does not relieve the plaintiff of the burden of establishing his case by a preponderance of the evidence.  If the plaintiff is to obtain a verdict against a defendant, you must still believe from the credible evidence that he has sustained the burden cast upon him.  If he has failed, then your verdict must be for that defendant.  If you should find that all of the evidence is evenly balanced, then the plaintiff has failed to sustain the burden of proof and your verdict should be for that defendant.

      If and only if you determine, after carefully weighing all the evidence, that the facts favor the plaintiff by the standard I have articulated, as to a defendant, then he has met the burden of proof against that defendant.

---

[3] 4 Sand, et al., <u>Modern Fed. Jury Instructions (Civil)</u>, Instr. 75-2

**<u>Witness Credibility</u>**

You have had the opportunity to observe the witnesses.  It is now your job to decide how believable each witness was in his or her testimony.  You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

You should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, the impression the witness made when testifying, the relationship of the witness to the controversy and the parties, the witness's bias or impartiality, the reasonableness of the witness's statement, the strength or weakness of the witness's recollection viewed in the light of all other testimony, and any other matter in evidence that may help you decide the truth and the importance of each witness's testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given and all of the other evidence in the case.  How did the witness appear?  Was the witness candid, frank, and forthright; or, did the witness seem to be evasive or suspect in some way?  How did the way the witness testified on direct examination compare with how the witness testified on cross-examination?  Was the witness consistent or contradictory?  Did the witness appear to know what he or she was talking about?  Did the witness strike you as someone who was trying to report his or her knowledge accurately?  These are examples of the kinds of common sense questions you should ask yourselves in deciding whether a witness is, or is not, truthful.

In passing upon the credibility of a witness, you may take into account any inconsistencies or contradictions as to material matters in his or her testimony.  You should also take into account any evidence that the witness who testified may benefit in some way from the outcome in this case.  Likewise, you should note any evidence of hostility or affection that the witness may have towards

one of the parties. Such bias or interest in the outcome creates a motive to testify falsely. It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony and bear that factor in mind when evaluating the credibility of the testimony.

This is not to suggest that every witness who has an interest in the outcome of a case will testify falsely. It is for you to decide to what extent, if at all, the witness's interest has affected or colored his or her testimony.

If you find that any witness has willfully testified falsely as to any material fact, you have the right to reject the testimony of that witness in its entirety. On the other hand, even if you find that a witness has testified falsely about one matter, you may reject as false that portion of his or her testimony and accept as true any other portion of the testimony which commends itself to your belief or which you may find corroborated by other evidence in this case. A witness may be inaccurate, contradictory, or even untruthful in some aspects, and yet be truthful and entirely credible in other aspects of his or her testimony.

The ultimate question for you to decide in passing upon credibility is: did the witness tell the truth before you? It is for you to say whether his or her testimony at this trial is truthful in whole or in part.

**<u>Impeachment by Felony Conviction</u>**

You have heard the testimony of Plaintiff and some of his witnesses who were previously convicted of a crime punishable by more than one year in year.  Those prior convictions were put in evidence only for considering the Plaintiff's and the witness's credibility.  You may consider the fact that the Plaintiff or a witness is a convicted felon in deciding how much of his testimony to accept and what weight, if any, it should be given.[4]

---

[4] 4 Sand, et al., Modern Federal Jury Instructions (Civil), Instr. 76-6 (modified).

**<u>Prior Inconsistent Statement</u>**

You have heard evidence that a witness may have made a statement on an earlier occasion which counsel argues is inconsistent with the witness's trial testimony. Evidence of the prior inconsistent statement was placed before you for the limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself or herself.  If you find that the witness made an earlier statement that conflicts with his or her trial testimony, you may consider that fact in deciding how much of that witness's trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency; and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to be given to the inconsistent statement in determining whether to believe all or part of the witness's testimony.

## **All Available Witnesses or Evidence Need Not Be Produced**

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters at issue in this trial. Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case.

Each party has had an equal opportunity to call any witnesses. Therefore, you should not draw any inferences or reach any conclusions as to what any uncalled witnesses would have testified to had they been called. The absence of any witnesses should not affect your judgment in any way.

## <u>OVERVIEW OF CASE</u>

In this action, plaintiff, who at the time was incarcerated at Fishkill Correctional Facility, has brought several claims against several defendants in connection with events that occurred at Westchester Medical Center (WMC), during his return from WMC to Fishkill Correctional Facility (Fishkill), and upon his arrival back at Fishkill.

As against Correction Officers Nadya Palou, Raymond Deal, Kristofer Leonardo, and Richard Landry, plaintiff alleges that while he was at WMC, undergoing a surgical procedure by Dr. Frank Weber and Dr. John Full, these four officers used excessive force against him. Plaintiff also alleges that each of these four officers had a reasonable opportunity to intervene and/or stop the force that was used by their fellow officers, but failed to do so. Plaintiff further alleges that, after force was used against him, Officers Palou, Deal, Leonardo, and Landry demonstrated a deliberate indifference to plaintiff's medical needs by causing and/or allowing him to fall or slide off of the surgical chair to the floor of the clinic. Plaintiff further alleges that Officers Palou and Deal demonstrated a deliberate indifference to plaintiff's medical needs in connection with their removal and transport of plaintiff from WMC back to Fishkill.

Officers Palou, Deal, Kristofer, and Landry acknowledge that they used force; however, each of Officer maintains that the force used was reasonable and in their defense as well as that of Dr. Webber's, Dr. Full's, and all other medical staff present and as such the force was justified and was not excessive in nature. Each of the Officers also maintains that because the force was justified and reasonable, they were under no obligation to intervene to prevent and/or stop that use of force by their fellow officers. Officers Palou, Deal, Kristofer, and Landry further maintain that if plaintiff ended up on the floor of the clinic it was not due to any fault of these Officers, but rather that of plaintiff's.

In addition, Officers Palou and Deal also deny that they were deliberately indifferent to plaintiff's medical needs when they removed him from WMC and transported him back to Fishkill. They also assert that they removed plaintiff from WMC and transported him back to Fishkill pursuant to the orders of their supervisor.

The claims asserted against Officers Palou, Deal, Leonardo, and Landry, which they deny, are being asserted by plaintiff under a state law claim of battery and pursuant to a federal statute known as 42 United States Code, Section 1983, which I will refer to simply as "Section 1983." Although I will explain the claims in more detail later in my instructions to you, for now know that plaintiff has asserted his Section 1983 claims under the Eight Amendment to the United States Constitution, which provides that an incarcerated individual will not be subjected to "cruel and unusual punishment." Again, however, I will explain Section 1983 and the Eighth Amendment in more detail later in my instructions to you.

As against Nurse Gary Pagliaro and Sergeant Enrique Torres, plaintiff alleges that upon his return from WMC to Fishkill, these two defendants also used excessive force against him, had a reasonable opportunity to intervene to prevent and/or stop the force, and that these defendants also demonstrated a deliberate indifference to plaintiff's medical needs. Plaintiff further claims that Nurse Pagliaro and Sergeant Torres caused and/or allowed plaintiff to fall from a Striker chair onto the floor of the Fishkill infirmary. Plaintiff's claims against Nurse Pagliaro and Sergeant Torres are also brought under Section 1983, specifically the Eighth Amendment, as well as under a state law claim of battery.

Nurse Pagliaro and Sergeant Torres maintain that they did not used any force, much less excessive force. They further maintain that since no force was used, they were under no obligation to intervene to prevent and/or stop the alleged use of force by Nurse Pagliaro and

Sergeant Torres. Nurse Pagliaro and Sergeant Torres also maintain that if plaintiff ended up on the floor of the Fishkill infirmary it was not due to any fault of Nurse Pagliaro or Sergeant Torres, but rather, that of plaintiff's.

As against Dr. Frank Weber and Dr. John Full, plaintiff similarly alleges that while he was under their care at WMC, these two defendants had a reasonable opportunity to intervene to prevent and/or stop the force that was being used against him by Officers Palou, Deal, Leonardo, and Landry, but failed to do so. Plaintiff further alleges that Drs. Weber and Full demonstrated a deliberate indifference to plaintiff's medical needs by causing and/or allowing plaintiff to fall or slide off of the surgical chair to the floor of the clinic, and then allowing plaintiff to be discharged from their care and transported back to Fishkill without first having plaintiff evaluated by a medical doctor. Plaintiff's claims against Drs. Weber and Full are also brought under Section 1983, and similarly allege that these two defendants violated plaintiff's Eighth Amendment rights by subjecting him to cruel and unusual punishment.

Plaintiff also claims that Drs. Weber and Full's actions constitute professional malpractice under New York State law. Professional malpractice essentially is the negligence of a healthcare provider. I will explain the concept of professional malpractice in more detail later in my instructions to you.

Drs. Weber and Full deny plaintiff's allegations. They deny that they observed any excessive force being used against plaintiff, and they further assert that if excessive force was used against plaintiff, they did not have either the right or the opportunity to intervene to prevent and/or stop that use of force. Drs. Weber and Full further deny that they caused and/or allowed plaintiff to be fall or slide off of the surgical chair to the floor of the clinic, and further claim that if plaintiff ended up on the floor of the clinic it was not due to any fault of these defendants. Drs.

Weber and Full further deny that they demonstrated a deliberate indifference to plaintiff's medical needs. They assert that, based on their evaluation of plaintiff and plaintiff's apparent medical condition, there was no need to have him evaluated further by a medical doctor before he was discharged, and that they followed appropriate protocol in discharging plaintiff from their care.

Plaintiff also claims that Westchester Medical Center is liable for professional malpractice under New York State law based on the actions of Drs. Weber and Full, who were treating plaintiff at WMC at the time of the incident. Plaintiff's claims against WMC are based on a legal concept known as "respondeat superior," which I will explain in more detail later in my instructions to you.

Although some of the defendants are represented by the same counsel, while others are not, you should consider each defendant separately. You should consider the evidence against each defendant separately and ask with respect to each defendant whether the plaintiff has proved the elements of his claim against the defendant you are considering by a preponderance of the evidence. Each defendant is entitled to a fair consideration of the evidence relating to that defendant, and is not to be prejudiced by any finding you make for or against another defendant. I will turn now to my instructions on the substantive law to be applied to this case.

## PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983

### A.      Section 1983 Generally

As I stated earlier, plaintiff claims a right to recover under Section 1983 of Title 42 of the

United State Code, which provides, in pertinent part, that

> [e]very person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State...subjects or causes to be
> subjected, any citizen of the United States...to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured...

Section 1983 does not create any substantive rights in and of itself; rather, it serves as a

means by which individuals can seek redress in a court for alleged violations of their substantive

rights under the United States Constitution.[5]

While Section 1983 addresses actions taken under color of state law, it is important to

note that the State of New York is not a defendant in this case. Defendants Palou, Deal,

Leonardo, Landry, Pagliaro, and Torre are current or former employees of the New York State

Department of Corrections and Community Supervision. Dr. Weber was retained by the New

York State Department of Corrections and Community Supervision to provide services to

individuals incarcerated by the State, and Dr. Full was an employee of Westchester Medical

Center, which is a public benefit corporation.

Section 1983 provides that a person may seek relief in this court, including in the nature

of monetary damages, against any person or persons who, under color of any state law or

custom, subjects such person to the deprivation of any rights, privileges, or immunities secured

or protected by the Constitution or laws of the United States.

---

[5] *See* Leonard B. Sand, Modern Federal Jury Instruction*s* ch. 87:65, Civil Rights Actions and the
Fair Housing Act (Matthew Bender, 2014) (citing Lugar v. Edmondson Oil Co., 457 U.S. 922
(1982)).

As the plaintiff, Mr. Stanbro has the burden of proving each essential element of his claims by a preponderance of the evidence.  With respect to each of the defendants, if you find that any of the essential elements of the plaintiff's claims against them have not been proven by a preponderance of the evidence, you must return a verdict for that defendant.

Under Section 1983, a plaintiff must establish, by a preponderance of the evidence, each of the following three elements as to each defendant: <u>first</u>, that the acts complained of were committed by the defendant while acting under color of state law; <u>second</u>, that in committing these acts the defendant deprived the plaintiff of rights, privileges, or immunities secured by the United States Constitution or the laws of the United States; and <u>third</u>, that the defendant's acts were the proximate cause of the injuries sustained by the plaintiff.

### 1.       *First Element—Acting under Color of State Law*

The first element of the plaintiff's claim is that the conduct complained of was committed by the specific defendant acting under color of state law.  In this case, it is undisputed that the actions of the defendants were taken in their capacities as officials of the State of New York at the time of the acts in question.  Therefore, I instruct you that the first element of the plaintiff's Section 1983 claims has been met.

### 2.       *Second Element—Deprivation of a Right*

The second element of each of the plaintiff's claim is that each defendant in committing the acts complained of intentionally or recklessly deprived the plaintiff of a federal right. In order for the plaintiff to establish this second element, he must show that the defendant's actions caused the plaintiff to suffer the loss of a federal right and that the defendant performed these acts intentionally or recklessly rather than accidentally. As a state official, the failure to comply with state law regulation does not in and of itself give rise to a federal constitutional claim; instead, federal

constitutional standards define the federal right. An act is intentional if it is done voluntarily and deliberately and not because of mistake, accident, negligence or other innocent reason. Please note that intent can be proved directly or it can be proved by reasonable inference from circumstantial evidence. An act is reckless if done in conscious disregard of its known probable consequences.

In other words, even if a defendant did not intentionally seek to deprive a plaintiff of the plaintiff's rights, if nevertheless he purposely disregarded the high probability that his actions would deprive the plaintiff of the plaintiff's rights, then the second essential element would be satisfied.[6]

### 3.    *Third Element—Proximate Cause*

The third element that a plaintiff must prove is that the acts of a defendant were a proximate cause of the harm sustained by the plaintiff.  Proximate cause means that there must be a sufficient causal connection between the acts or omissions of a defendant and any harm sustained by the plaintiff.  An act or omission is a proximate cause if it was a substantial factor in bringing about or actually causing the harm, that is, if the harm was a reasonably foreseeable consequence of the defendant's act or omission. If a harm was a direct result or reasonably probable consequence of the defendant's act or omission, it was proximately caused by such act or omission.  In other words, if a defendant's act or omission had such an effect in producing the harm that reasonable persons would regard it as being a cause of the harm, then the act or omission is a proximate cause.

These are necessary elements of every Section 1983 claim.  Furthermore, in order to prove a claim under § 1983, a plaintiff must establish that one or more of the defendants were personally

---

[6]  Taken from the charge given in <u>Vidal v. Lampon</u>, 16-cv-5006 (JCM) (S.D.N.Y.) (ECF No. 95).

involved in and caused the deprivation of his rights.   The plaintiff must establish fault and causation on the part of the defendants to satisfy the requirements of § 1983.

B.      <u>**Section 1983**</u>

1.      *Eighth Amendment Excessive Force*

Plaintiff alleges that defendants Palou, Deal, Leonardo, and Landry used excessive force against him on August 31, 2018 in violation of the Eighth Amendment to the United States Constitution. These defendants deny these allegations.

The Eighth Amendment to the United States Constitution protects all citizens of the United States, including a prisoner, from cruel and unusual punishment. That constitutional right is violated by the unnecessary and wanton infliction of pain. It should be noted, however, that as correction officers, the defendants are given the lawful authority to use such physical force as may be reasonably necessary to enforce compliance with proper instructions and to protect themselves and others from physical harm from a prisoner. Indeed, not every push or shove violates a person's constitutional rights.

Second, in order to prove that the level of the force was excessive, the plaintiff must also show that the officer engaging in the alleged misconduct had a wanton state of mind. That is, he acted in bad faith and not because of mistake, accident, negligence, or other innocent reason. An officer has a wanton state of mind if he does not apply force in a good-faith effort to maintain or restore discipline. Force applied maliciously and sadistically meets the wantonness standard, but an individual's act need not be malicious or sadistic to be actions taken in bad faith.  To determine whether an officer acted with a wanton state of mind, you should consider the extent of the plaintiff's injuries, the need for the application of force, the correlation between that need and the amount of force used, the threat reasonably perceived by the defendant, and any efforts made by the officer to temper the severity of a forceful response.

The management of prisoners by correction officers may require the occasional use of a degree of intentional force. A use of force is intentional if it is done knowingly. That is, if it is done voluntarily and deliberately and not because of mistake, accident, negligence, or another innocent reason. A use of force is reckless if it is done with known disregard for its known probable consequences. In determining whether a person acted intentionally or recklessly, you should remember that there is no way of looking into a person's mind. You must depend on what was done and what the person involved said was in his mind and your belief or disbelief of those facts.[7]

To hold the correction office liable for excessive force, you must find that the plaintiff proofed by a preponderance of the evidence either that he or she: (1) directly **participated** in an assault; or (2) was present during the assault, yet failed to intercede on behalf of the victim even though he had a reasonable opportunity to do so.[8]

I will instruct you on the plaintiff's claim of failure to intervene separately.

Furthermore, you must consider the acts and conduct of each of the correction officer individually. That is, you must determine whether, in the case of each officer separately, whether they themselves used excessive force.[9]

---

[7]  Taken from the charge given in <u>Vidal v. Lampon</u>, 16-cv-5006 (JCM) (S.D.N.Y.) (ECF No. 95); <u>see also</u>, <u>e.g.</u>, <u>Blyden v. Mancusi</u>, 186 F.3d 252, 262 (2d Cir. 1999) (citing <u>Hudson v. McMillan</u>, 503 U.S. 1, 7-8 (1992)).

[8] <u>Jeffreys v. Rossi</u>, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003), <i>aff'd sub nom.</i> <u>Jeffreys v. City of New York</u>, 426 F.3d 549 (2d Cir. 2005) (citing <u>Ricciuti v. N.Y. City Transit Auth.</u>, 124 F.3d 123, 129 (2d Cir. 1997)); <u>Gonzalez v. Waterbury Police Dep't</u>, 199 F. Supp. 3d 616, 621 (D. Conn. 2016).

[9] <u>Stinson v City of New York</u>, 18CV0027LAKBCM, 2021 WL 3438284, at *14 [SDNY 2021]; <u>McGrier v City of New York</u>, 849 Fed Appx 268, 272 [2d Cir 2021]; <u>Gaston v. Coughlin</u>, 249 F.3d 156, 164 (2d Cir. 2001); <u>Gonzalez v. Waterbury Police Dep't</u>, 199 F. Supp. 3d 616, 621 (D. Conn. 2016).

2.      *Failure to intervene*

All law enforcement officials have an affirmative duty to intervene on behalf of an individual whose constitutional rights are being violated in his or her presence by other officers."[10] In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring.[11]

Before you can determine whether defendants failed to intervene, you must first determine whether defendants Palou, Deal, Leonardo, or Landry employed excessive force against plaintiff on August 31, 2018. In a case such as this, where the parties' factual contentions are disputed, you must determine what actually occurred, whether force was used, and if so, whether the force used was excessive.

If you find that no excessive force was used against plaintiff, you must return a verdict for defendants. If you find that excessive force was used against plaintiff, then you must decide whether defendant Palou, Deal, Leonardo, or Landry failed to intervene. To do so, you must determine whether defendant Palou, Deal, Leonardo, or Landry had a realistic opportunity to stop the excessive force and failed to do so. In order for an officer to have a realistic opportunity to stop excessive force, the officer must have sufficient time to intercede and a capability to prevent the harm.

In sum, before you can hold defendant Palou, Deal, Leonardo, or Landry liable for failing to intervene, you must conclude by a preponderance of the evidence that the following elements have been met: first, that defendants Palou, Deal, Leonardo, or Landry subjected plaintiff to excessive force on August 31, 2018; second, that defendant Palou, Deal, Leonardo, or Landry

---

[10] Curley v. Village of Suffern, 268 F.3d 65, 72 (2d Cir. 2001).
[11] Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994).

observed the use of excessive force and knew it was unlawful; <u>third</u>, that defendant Palou, Deal, Leonardo, or Landry had a realistic opportunity to intervene, as I have just described that phrase; and <u>fourth</u>, that defendant Palou, Deal, Leonardo, or Landry failed to take reasonable steps to prevent the use of excessive force.

If you find that plaintiff has proved these four elements with a preponderance of the evidence against defendant Palou, Deal, Leonardo, or Landry, then your verdict must be for the plaintiff. In that case, you must then decide whether the plaintiff's alleged injuries were proximately caused by defendant Palou, Deal, Leonardo, or Landry's failure to intervene. Injury is proximately caused by a defendant's conduct when it appears from the evidence in the case that the conduct played a substantial role in bringing about the injury. The plaintiff's alleged injury or damage must be a reasonably foreseeable consequence of a defendant's act. Stated differently, the issue is whether a reasonable person would view the defendant's conduct as the cause of plaintiff's alleged injuries. The plaintiff has the burden of proving that defendants' actions were a proximate cause of injury to him. [12]

---

[12] Taken from the Court's charge in Jackson v. Kaufman, 13 Civ. 6544 (RA)

3.        *Deliberate Indifference to Serious Medical Needs*

The Eighth Amendment to the United States Constitution protects a person from being subjected to cruel and unusual punishment, such as punishments that involve the unnecessary and wanton infliction of pain.  As applied to prison inmates, it confers the right to be provided with basic human needs, including adequate care for his serious medical needs. Plaintiff here alleges that defendants Palou, Deal, Leonardo, and Landry were deliberately indifferent to plaintiff's medical needs following the use of force against him.[13] These defendants deny these allegations.

In order for plaintiff to succeed on a deliberately indifferent to his serious medical needs claim, he must prove by a preponderance of the evidence that: (1) The deprivation of care must be, objectively, "sufficiently serious" - that is, the official's act or omission "must result in the denial of the minimal civilized measure of life's necessities,"[14] and (2) the official must be shown to have a "sufficiently culpable state of mind."[15]  Only "those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment claim . . . ."[16]   If a plaintiff fails to satisfy either of these elements, his claim must be denied.[17]   Plaintiff therefore must demonstrate by a preponderance of the evidence, first,

---

[13] Non-medical prison personnel can be liable for deliberate indifference to medical needs. *See, e.g.*, Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); Easley v. Loverme, 2020 U.S. Dist. LEXIS 88415, at *14-15 (W.D.N.Y. 2020).

[14]      Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

[15]       Farmer, 452 U.S. at 834, quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991).

[16]      Hudson v. McMillian, 503 U.S. 1, 9 (1992).

[17]      See, e.g., Trammell v. Keane, 338 F.3d 155, 162 (2d Cir. 2003 (where plaintiff failed to satisfy "Farmer's second prong," unnecessary to consider "sufficiently serious" element);  Warren v. Purcell, 03 Civ. 8736 (GEL), 2004 WL 1970642, *8 (S.D.N.Y. Sept. 3, 2004 (court need not resolve objective element issues where "plaintiff fails to allege any improper or wanton motive for the officers' actions").

that he was deprived of medical care for a serious medical condition - that is, a condition of urgency that might produce death, degeneration or extreme pain.[18] If he cannot show such a condition, then you must find for the defendants.

But simply having a serious, even debilitating, condition is insufficient to meet the objective requirement of deliberate indifference.  It is "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes."[19]

If, on the other hand, you find that plaintiff was deprived of care for a serious condition, plaintiff must then show that defendants were aware of plaintiff's serious medical need and consciously disregarded a substantial risk of serious harm to plaintiff - in other words, that they were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also that he in fact drew such an inference.

To succeed in showing deliberate indifference, plaintiff must also show that the acts of defendants involved more than lack of due care, but rather involved obduracy and wantonness in placing their health in danger.[20]  In other words, they must show "that the defendant knew of the health dangers and yet refused to remedy the situation."[21]  "Medical decisions will constitute 'indifference' only when they are contrary to accepted medical standards."[22]  "Deliberate

---

[18]     Turner v. Punzal, 1997 U.S. Dist. LEXIS 17903, at **5-6 (S.D.N.Y. Oct. 1, 1997); Hutchinson v. Civitella, 2003 U.S. Dist. LEXIS 15417, at *15 (S.D.N.Y. Sept. 4, 2003).

[19]     Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003).

[20]     Whitley v. Albers, 475 U.S. 312, 319 (1986).

[21]     LaBounty v. Coughlin, 137 F.3d 68, 72 -73 (2d Cir.1998).

[22]     Ramos v. Artuz, 2003 WL 342347, at *7 (S.D.N.Y., Feb.14, 2003) (citing Harding v. Kuhlmann, 588 F.Supp. 1315, 1316 (S.D.N.Y.1984), aff'd, 762 F.2d 990 (2d Cir.1985).

indifference is 'a state of mind that is the equivalent of criminal recklessness.'"[23]

   Mere negligence, by which I mean the failure to use such care as a reasonably prudent and careful person would use under similar circumstances, is just not enough to impose liability on the defendants in a case like this one, where plaintiff is claiming deliberate indifference in violation of the United States Constitution.  It is thus different from the typical cases you may have heard about involving medical malpractice. Similarly, differences of opinion regarding medical treatment are not enough to support liability, nor is it enough that a reasonable person would have known of the serious medical needs.  It is not enough to determine that a defendant acted with poor judgment or lack of due care. If you find that the acts of a defendant were merely negligent, or caused by medical malpractice or by a difference of opinion on medical treatment, then, even if you find that plaintiff was injured as a result of those acts, you must return a verdict for the defendant. On the other hand, if the defendant's actions were criminally reckless or wanton and cruel, then you must find that plaintiff has established the intent requirement of his claim.

---

[23]  <u>Hernandez v. Keane</u>, 341 F.3d 137, 145 (2d Cir. 2003).

**Claims Against Defendants Pagliaro and Torres**

**Excessive Force, Failure to Intervene, and Deliberate Indifference to Medical Needs**

In this case, plaintiff also claims, pursuant to Section 1983, that on August 31, 2018, Nurse Gary Pagliaro and Sergeant Enrique Torres used excessive force against him after his return to Fishkill from WMC. Plaintiff further alleges that both of these defendants failed to intervene to prevent and/or stop an excessive use of force against plaintiff upon his return to Fishkill. Plaintiff further alleges that both of these defendants demonstrated a deliberate indifference to plaintiff's serious medical needs upon his return to Fishkill.

Nurse Gary Pagliaro and Sergeant Enrique Torres deny these allegations and maintain that they did not used any force, much less excessive force, nor where they deliberately indifferent to a serious medical need of the plaintiff. They further maintain that because no force was used, much less excessive force, they were under no obligation to intervene to prevent and/or stop the alleged use of force by Nurse Pagliaro and Sergeant Torres.

In determining whether Nurse Gary Pagliaro and/or Sergeant Enrique Torres used excessive force against plaintiff, failed to intervene to prevent and/or stop any excessive force against plaintiff, and/or were deliberately indifferent to plaintiff's serious medical needs, in violation of the Eighth Amendment, you will use the same standards on which I instructed you with respect to Officers Palou, Deal, Leonardo, and Landry.

**Claims Against Defendants Weber and Full**

**Failure to Intervene and Deliberate Indifference to Medical Needs**

In this case, plaintiff also claims that on August 31, 2018, at WMC, Dr. Frank Weber and Dr. John Full failed to intervene to prevent and/or stop an excessive use of force against plaintiff by Officers Palou, Deal, Leonardo, and Landry. Plaintiff further alleges that Drs. Weber and Full demonstrated a deliberate indifference to plaintiff's serious medical needs in causing and/or

allowing plaintiff to be precipitated to the floor of the dental clinic, and also in connection with plaintiff's discharge from their care. These claims against Drs. Weber and Full also are brought pursuant to Section 1983, and allege that these defendants violated plaintiff's rights under the Eighth Amendment not to be subjected to cruel and unusual punishment.

Drs. Weber and Full deny plaintiff's allegations. They both deny that they failed to intervene to prevent and/or stop any excessive force against plaintiff, and deny that they were deliberately indifferent to plaintiff's serious medical needs.

In determining whether Dr. Frank Weber and/or Dr. John Full failed to intervene to prevent and/or stop any excessive force against plaintiff and/or were deliberately indifferent to plaintiff's serious medical needs, in violation of the Eighth Amendment, you will use the same standards on which I instructed you with respect to Officers Palou, Deal, Leonardo, and Landry.

## PLAINTIFF'S CLAIMS OF BATTERY UNDER NY STATE LAW[24]

### Claims Against Palou, Deal, Leonardo, and Landry[25]

In this action, plaintiff also seeks damages against Palou, Deal, Leonardo, Landry based on a New York state-law claim for battery. A person commits a battery when they intentionally touch another person, without that person's consent, and causes an offensive bodily contact . Intent involves the state of mind with which an act is done. The intent required for battery is intent to cause a bodily contact that a reasonable person would find offensive. An offensive bodily contact is one that is done for the purpose of harming another or one that offends a reasonable sense of personal dignity, or one that is otherwise wrongful.

---

[24] Correctional Defendants Palou, Deal, Landry, Leonardo, Pagliaro, and Torres have moved, in their Motions in Limine, to preclude Plaintiff's state-law battery claim as such claim is barred by Correction Law § 24.

[25] This charge is taken from 2A New York Pattern Jury Instructions, PJI 3:3. Intentional Torts—Interference with Person or Property—Battery—Generally (3d ed. 2021).

Before you begin analyzing these elements, you must first determine if defendants Palou, Deal, Leonardo, and Landry were acting within the scope of their employment.[26] "'[A]n employee will be considered within the scope of his employment so long as he is discharging his duties, 'no matter how irregularly, or with what disregard of instructions.'"[27] If you find that defendants Palou, Deal, Leonardo, and Landry were acting within the scope of their employment, then you need not proceed further on this claim. Only if you find that defendants Palou, Deal, Leonardo, and Landry were not acting within the scope of their employment may you consider whether or not plaintiff has proven by a preponderance of the evidence the elements of a claim of battery as I have explained them to you.

In addition, and because Palou, Deal, Leonardo, and Landry are and/or were correctional officers at the time of the incident, the law permits these individuals to make reasonable contact with plaintiff's person in order to execute their duties as correctional officers.[28] As such, it is plaintiff's responsibility, to prove by a preponderance of the credible evidence, that the touching for which he claims constitutes a battery was not reasonable under the circumstances.[29]

Again, however, before determining any elements to this claim, as well as considering whether the contact alleged to have occurred was unreasonable under the circumstances, you must first determine whether or not Officers Palou, Deal, Landry, or Leonardo were acting within the scope of their employment at the time plaintiff claims the battery occurred. If you

---

[26] N.Y. Correction Law § 24(1)

[27] Small v. New York, 12-CV-1236S, 16 (W.D.N.Y. Mar. 30, 2017) (citing Cepeda v. Coughlin, 128 A.D.2d 995, 996 (3d Dep't 1987))

[28] N.Y. Penal Law § 35.10(2)

[29] Ling-Rong Chen v. City of Syracuse, No. 06 Civ. 1143, 2009 U.S. Dist. LEXIS 16227, at ** 13-14 (N.D.N.Y Mar. 2, 2009)

determine that they were acting within the scope of their employment, you need not proceed further on this claim.

### Claims Against Pagliaro and Torres[30]

Plaintiff also claims that defendant Nurse Gary Pagliaro and Sergeant Enrique Torres committed a battery against plaintiff in the manner in which they physically handled plaintiff upon his return from WMC to Fishkill.  Nurse Pagliaro and Sergeant Torres, on the other hand, maintain that plaintiff was not handled in an intentionally offensive manner.

As with defendants Palou, Deal, Landry, and Leonardo, you must first determine whether or not Nurse Pagliaro and Sergeant Torres were acting within the scope of their employment. If you find that they were, you need not proceed further on this claim. If on the other hand you find that they were not acting within the scope of their employment, only then may you consider the remaining elements of a claim for battery as I have explained them to you. You need not determine whether their actions were in self-defense or in the defense of others as neither defendant has made such a claim.

---

[30] Correctional Defendants Palou, Deal, Landry, Leonardo, Pagliaro, and Torres have moved, in their Motions in Limine, to preclude Plaintiff's state-law battery claim as such claim is barred by Correction Law § 24.

## PLAINTIFF'S CLAIMS OF MALPRACTICE AGAINST
## DR. WEBER, DR. FULL, AND WESTCHESTER MEDICAL CENTER

### Claims Against Weber and Full

Plaintiff also claims that Dr. Frank Weber and Dr. John Full committed professional malpractice in connection with their care and treatment of plaintiff. This is a claim that plaintiff is bringing under New York State law.

Specifically, plaintiff claims that Drs. Weber and Full committed malpractice by 1) causing and/or allowing plaintiff to be precipitated to the floor of the dental clinic; and 2) by allowing plaintiff to be discharged from their care and transported back to Fishkill without first having plaintiff evaluated by a medical doctor. As stated earlier, Drs. Weber and Full deny plaintiff's claims, and deny that they committed malpractice either in connection with plaintiff ending up on the floor of the dental clinic or plaintiff's discharge from their care.

Malpractice is professional negligence and medical malpractice is the negligence of a doctor.[31] Negligence is the failure to use reasonable care under the circumstances, doing something that a reasonably prudent doctor would not do under the circumstances, or failing to do something that a reasonably prudent doctor would do under the circumstances. It is a deviation or departure from accepted practice.

A doctor who renders a dental or oral surgical service to a patient is obligated to have that reasonable degree of knowledge and skill that is expected of an average doctor who performs that procedure in the medical community in which the doctor practices. The doctor must also comply with minimum statewide and national standards of care.

The law recognizes that there are differences in the abilities of doctors, just as there are differences in the abilities of people engaged in other activities. To practice in his field, a doctor

---

[31] 1B *New York Pattern Jury Instructions*, PJI 2:150, Malpractice—Physician (3d ed. 2021).

is not required to have extraordinary knowledge and ability that belongs to a few doctors of exceptional ability. However, every doctor is required to keep reasonably informed of new developments in his field in accordance with approved methods and means of treatment in general use. A doctor must also use his best judgment and whatever superior knowledge and skill he possesses, even if the knowledge and skill exceeds that possessed by the average doctor in the community where the doctor practices.

By undertaking to perform a service, a doctor does not guarantee a good result. The fact that there was a bad result to the patient, by itself, does not make the doctor liable. The doctor is liable only if he was negligent. Whether the doctor was negligent is to be decided on the basis of the facts and conditions existing at the time of the claimed negligence.

A doctor is not liable for an error in judgment if he does what he decides is best after careful evaluation, if it is a judgment that a reasonably prudent doctor could have made under the circumstances. In other words, a doctor is not liable for malpractice if he chooses one of two or more acceptable courses of action.

If the doctor is negligent, that is, lacks the skill or knowledge required of him in providing a service, or fails to use reasonable care in providing the service, or fails to exercise his or her best judgment, and such failure is a substantial factor in causing harm to the patient, then the doctor is responsible for the injury or harm caused.

42

**Claims Against Westchester Medical Center (Respondeat Superior)**

[32]An employer is responsible for the act of its employer if the act is in furtherance of the employer's business and is within the scope of the employee's authority. An act is within the scope of any employee's authority if it is performed while the employee is engaged generally in the performance of his assigned duties or if the act is reasonably necessary or incidental to the employment. The employer need not have authorized the specific act in question.

Here, it is undisputed that Dr. Weber treated plaintiff at WMC and was an attending doctor and had admitting privileges at WMC,[33] and that Dr. John Full was employed by WMC. It also is undisputed that both doctors were acting within the scope of their employment at the time of the incident.[34]

Accordingly, if you find that either Dr. Weber or Dr. Full committed malpractice in their treatment of plaintiff, and that such malpractice caused plaintiff to sustain an injury, you must find that Westchester Medical Center also is responsible for that doctor's actions and for any injuries sustained by plaintiff as a result of either or both doctors' actions. If, on the other hand, you find that neither Dr. Weber nor Dr. Full committed malpractice in their treatment of plaintiff,

---

[32] *See id*. at PJI 2:235, Liability for the Conduct of Another—Employer-Employee—Scope of Employment.

[33] Under these circumstances, WMC would be vicariously liable for Dr. Full's actions. *See, e.g*., *Schiavone v. Victory Memorial Hosp.*, 292 A.D.2d 365 (2d Dep't 2002) (hospital vicariously liable for the negligence of an independent contractor emergency-room physician where the patient enters the emergency room seeking treatment from the hospital rather than a specific physician of the patient's own choosing); *Malcolm v. The Mount Vernon Hosp.*, 309 A.D.2d 704 (1st Dep't 2003) (hospital vicariously liable for negligence of private attending doctor or independent contractor utilizing its facilities where the doctor was provided by the hospital or was otherwise acting on the hospital's behalf, and the patient reasonably believed that the doctor was acting at the hospitals' behest).

[34] *See, e.g*., *Tenczar v. Richmond*, 172 A.D.2d 952, 953 (3rd Dep't 1991) ("[W]here no conflicting evidence exists, a court may determine the 'scope of employment' issue as a matter of law.") (citation omitted).

then you must also find that Westchester Medical Center is not responsible for any injuries sustained by plaintiff.

## COMPENSATORY DAMAGES[35]

If you find in favor of the plaintiff on his claims against a defendant, then you must determine an amount that is fair compensation for the plaintiff's injuries.  This type of damages is known as "compensatory damages."  You shall award damages only for those injuries that you find plaintiff has proven by a preponderance of the evidence.  Moreover, you may not simply award damages for *any* injury suffered by plaintiff—you must award damages only for those injuries that are a proximate result of conduct by any liable defendant that violated plaintiff's federal rights under color of law. The damages that you award must be fair compensation for all of the plaintiff's damages, no more and no less. Compensatory damages must not be based on speculation or sympathy.  They must be based on the evidence presented at trial.[36]  The purpose is not to punish any defendant found liable.

Compensatory damages may include damages for physical injury, pain and suffering, mental anguish, shock, and discomfort that he has suffered because of a defendant's conduct. In assessing compensatory damages, you may include an amount for pain, suffering, and emotional distress – past, present and future – that you determine to be reasonable compensation in the light of all the evidence in this case. Keep in mind that in order to recover damages for pain and suffering, a plaintiff must present credible evidence with respect to his suffering and

---

[35] Since plaintiff has asserted state and federal claims, this charge borrows from *id.* at PJI 2:277, Damages—General, PJI 2:280 and 2:280.1, Damages—Personal Injury—Injury and Pain and Suffering, and applicable federal law. *See* Gibeau v. Nellis, 18 F.3d 107 (2d Cir. 1994); Kerman v. City of New York, 374 F.3d 93 (2d Cir. 2004).

[36] See Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299 (1986); Smith v. Wade, 461 U.S. 30 (1983); Carey v. Piphus, 435 U.S. 247 (1978);Amato v. City of Saratoga Springs, 170 F.3d 311 (2d Cir. 1999); Mathie v. Fries, 121 F.3d 808 (2d Cir. 1997); Walz v. Town of Smithtown, 46 F.3d 162 (2d Cir. 1995); Gibeau v. Nellis, 18 F.3d 107 (2d Cir. 1994); Miner v. City of Glens Falls, 999 F.2d 655 (2d Cir. 1993); Mileski v. Long Island R.R. Co., 499 F.2d 1169 (2d Cir. 1974); 139 F. Supp. 2d 469 (S.D.N.Y. 2001); Bick v. City of New York, 1998 WL 190283, *25 (S.D.N.Y. Apr. 21, 1998); Epstein v. Kalvin-Miller Int'l, Inc.,; Sand, et al., Modern Fed. Jury Instructions  77-3, 77-4, 87-87.

corroboration that a defendant's impermissible conduct caused his suffering. To satisfy the requirement, the plaintiff does not need to provide evidence from a medical expert.

There is no exact standard for determining the precise amount of damages or pain and suffering. An award you make must be fair and reasonable in light of the evidence at trial. An award must not be based only on speculation or sympathy.

## MITIGATION OF DAMAGES

If you find that the plaintiff was injured as a natural consequence of conduct by the defendant, you must determine whether the plaintiff could thereafter have done something to lessen the harm that he suffered. The burden is on defendant to prove, by a preponderance of evidence, that the plaintiff could have lessened the harm that was done to him, and that he failed to do so. If the defendant convinces you that the plaintiff could have reduced the harm done to him but failed to do so, the plaintiff is entitled only to damages sufficient to compensate him for the injury that he would have suffered if he had taken appropriate action to reduce the harm done to him.

## NOMINAL DAMAGES

If you find in favor of the plaintiff on any of his claims, but do not award compensatory damages, then you must award "nominal damages." Nominal damages are awarded as recognition that a plaintiff's rights have been violated. If you find after considering all the evidence presented, that, with respect to any claim, the plaintiff's rights were violated, but that the plaintiff has failed to prove by a preponderance of the evidence that he suffered any actual damages as a result of the violation, you must award the plaintiff nominal damages.

You may also award nominal damages, if, upon finding that some injury resulted from the deprivation of the plaintiff's rights, you find that you are unable to compute monetary

46

damages except by engaging in pure speculation and guessing. You may not award both nominal and compensatory damages.  Either Plaintiff experienced actual damages, in which case you must award compensatory damages, or else he did not experience actual damages, in which case you must award nominal damages. Nominal damages may only be awarded for a token sum, not to exceed one dollar.

## PUNITIVE DAMAGES[37]

If you award compensatory damages to plaintiff, the law permits you to make, but does not require, an award for punitive damages. Such damages are awarded in the discretion of you, the jury, to punish a defendant for extreme or outrageous conduct, or to deter or prevent a defendant and others like him or her from committing similar acts in the future.

You may award plaintiff punitive damages if you find that the acts or omissions of the defendant under consideration were done maliciously, wantonly, or oppressively. An act is done maliciously if it is prompted by ill will or spite towards the injured person. An act is wanton if done in reckless or callous disregard of, or indifference to, the rights of the injured person. Accordingly, "[t]he test for wantonness is whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."[38]

An act is done oppressively if done in a manner which injures, damages or otherwise violates the rights of another person with unnecessary harshness or severity, as by misuse or abuse of authority or power, or by taking advantage of some weakness, disability or misfortune of another person.

---

[37] Since plaintiff has asserted state and federal claims, this charge borrows from 2A New York Pattern Jury Instructions, *supra*, at PJI 2:278, Damages—Punitive, and applicable federal law. *See* Smith v. Wade, 461 U.S. 30, 56 (1983); City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981); Carlson v. Green, 446 U.S. 14 (1980).

[38] Fabricio v. Annucci, 790 F. App'x 308, 310 (2d Cir. 2019); Rivera v. Connolly, No. 18-CV-03958 (PMH), 2022 U.S. Dist. LEXIS 98056, at *8 (S.D.N.Y. June 1, 2022)

If you find by a preponderance of the evidence that a defendant acted with malicious intent to violate the plaintiff's federal rights, or if you find that a defendant acted with a callous or reckless disregard of the plaintiff's rights, then you may award punitive damages against that defendant. An award of punitive damages, however, is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied, then you may decide to award punitive damages, or you may decide not to award them.

In making this decision, you should consider the underlying purpose of punitive damages. Punitive damages are awarded in the jury's discretion to punish a defendant for outrageous conduct or to deter him and others like him from performing similar conduct in the future. Thus, in deciding whether to award punitive damages, you should consider whether the defendant may be adequately punished by an award of actual damages only, or whether the conduct is so extreme and outrageous that actual damages are inadequate to punish the wrongful conduct. You should also consider whether actual damages, standing alone, are likely to deter or prevent the defendant from similar wrongful conduct in the future, if it was in fact wrongful, or whether punitive damages are necessary to provide deterrence. Finally, you should consider whether punitive damages are likely to deter or prevent other persons from performing wrongful acts similar to those the defendant may have committed.

If you decide to award punitive damages, these same purposes should be kept in mind as you determine the appropriate sum of money to be awarded as punitive damages. That is, in fixing the sum to be awarded, you should consider the degree to which the defendant should be punished for his wrongful conduct, and the degree to which an award of one sum or another will deter the defendant or persons like him from committing wrongful acts in the future.

## DELIBERATIONS OF THE JURY

### A.      Right to See Exhibits and Hear Testimony; Communication with the Court

Ladies and gentlemen of the jury, that concludes the substantive portion of my instructions to you.  You are about to go into the jury room and begin your deliberations.  All of the exhibits admitted into evidence will be sent to the jury room with you.  If you want any of the testimony read, you may request that.  Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can be in requesting portions of the testimony.  If you want any further explanation of the law as I have explained it to you, you may also request that.

Your requests for testimony—in fact any communications with the Court—should be made to me in writing, signed, dated, and timed by your foreperson, and given to one of the marshals. In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached and announced in open court by your foreperson.

### B.      Notes

Some of you have taken notes periodically throughout this trial.  I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory.  Notes that any of you may have made may not be given any greater weight or influence than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence.  All jurors' recollections are equal.  If you can't agree on what you remember the testimony was, you can ask to have the transcript read back.

### C.      Duty to Deliberate; Unanimous Verdict

Shortly, you will retire to decide the case.  You must base your verdict solely on the evidence and these instructions as to the law, and you are obliged on your oath as jurors to follow

the law as I instruct you, whether you agree or disagree with the particular law in question. Of course, the fact that I have given you instructions concerning the issue of the plaintiff's damages should not be interpreted in any way as an indication that I believe that the plaintiff should, or should not, prevail in this case.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Again, your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

Remember at all times, you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

If you are divided, do *not* report how the vote stands and if you have reached a verdict do not report what it is until you are asked in open court.

### D.   **Verdict Form**

I have prepared a verdict form for you to use in recording your decisions.  You should answer every question except where the verdict form indicates otherwise.  You should also proceed through the questions in the order in which they are listed.

### E.   **Duty of Foreperson**

You should by your own vote select one of you to sit as your foreperson.  The foreperson doesn't have any more power or authority than any other juror, and his or her vote or opinion doesn't count for any more than any other juror's vote or opinion.  The foreperson is merely your spokesperson to the court.  He or she will send out any notes, and when the jury has reached a verdict, he or she will notify the marshal that the jury has reached a verdict, and you will come into open court and give the verdict.

### F.   **Return of Verdict**

After you have reached a verdict, your foreperson will fill in the form that has been given to you, you will all sign and date it, and your foreperson will advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that each of you must be in agreement with the verdict which is announced in court.  Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

**CONCLUSION**

In conclusion, ladies and gentlemen, I am confident that if you listen to the views of your fellow jurors, if you apply your own common sense, and follow my instructions on the law, you will reach a fair verdict here.