UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CHAD STANBRO,

        Plaintiff,                              20-cv-1591(KMK)

        -against-

CORRECTION OFFICER NADYA PALOU,
CORRECTION OFFICER RAYMOND DEAL,
CORRECTION OFFICER KRISTOFER
LEONARDO, CORRECTION OFFICER
RICHARD LANDRY, CORRECTION NURSE
GARY PAGLIARO and CORRECTION
SERGEANT ENRIQUE TORRES,               Consolidated for Purposes of
                                                         Discovery with:

        Defendants.
-------------------------------------------------------------X
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CHAD STANBRO,

        Plaintiff,                              19-cv-10857(KMK)

        -against-

WESTCHESTER COUNTY HEALTH CARE
CORPORATION, WESTCHESTER MEDICAL
CENTER, FRANK WEBER and JOHN FULL,

        Defendants.
-------------------------------------------------------------X

**MEMORANDUM OF LAW IN REPLY AND IN FURTHER SUPPORT OF POST-TRIAL MOTION SEEKING TO SET ASIDE THE PUNITIVE AND COMPENSATORY DAMAGES AGAINST DEFENDANT, DR. FRANK WEBER**

**Robert A. Fitch, Esq.**
**Iolanda V. D'Ambrosi-Francavilla, Esq.**
**Rawle & Henderson, LLP**
**Attorneys for Defendant**
**Frank Weber**
**14 Wall Street, 27th Fl.**
**New York, New York 10005**
**(212) 323-7070**
**rfitch@rawle.com**
**ifrancavilla@rawle.com**

16593495-1

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................................i

ARGUMENT

POINT I
      A. PLAINTIFF'S PROCEDURAL ARGUMENT REGARDING THE VERDICT SHEET FAILS AS DEFENDANT DR. WEBER MADE MULTIPLE OBJECTIONS TO PUNITIVE DAMAGES…………..........................................................................1
      B. THE PUNITIVE DAMAGES AWARD AGAINST DR. WEBER WAS IMPROPER ………………………….……………………………………………………....2
      C. PLAINTIFF KNEW THAT THE MENTION OF A COVER UP WOULD INFLAME THE JURY AND LEAD TO AN AWARD OF PUNTIVE DAMAGES……………………….…………………………………………….4

POINT II
      A. DR. WEBER DID NOT WAIVE THE ARGUMENT REGARDING COMPENSATORY DAMAGES AS THE REQUEST WAS MADE PRIOR TO THE CONCLUSION OF THE TRIAL ………………………………….……………4
      B. THE COMPENSATORY DAMAGES AWARD AGAINST DR. WEBER WAS INAPPROPRIATE GIVEN THE SPECULATIVE TESTIMONY OF PLAINTIFF'S EXPERT……………………………………...…………………………………….5
      C. PLAINTIFF'S PAIN AND SUFFERING SHOULD HAVE BEEN LIMITED TO SIX HOURS ON THE VERDICT SHEET………………………...…………………………………………………..6

CONCLUSION...............................................................................................................6

# TABLE OF AUTHORITIES

**Cases**                                                **Page(s)**

*Dupree v. Giugliano*,
  20 N.Y.3d 921 [2012] ............................................................................................................... 2

*Graham v. Columbia Presbyterian Med. Ctr.*,
  185 A.D.2d 753 (1st Dept. 1992) ............................................................................................ 2

*Maglios v. Peralta*,
  2022 U.S. Dist. LEXIS 24265 ............................................................................................. 3, 4

*Marsh v. Arnot Ogden Med. Ctr.*,
  91 A.D.3d 1070 (3rd Dept. 2012) ........................................................................................... 2

*McDougald v. Garber*,
  73 N.Y.2d 246 [1989] ............................................................................................................. 3

*Montemurro v. Dodick,*
  160 A.D.2d 690 (2d Dept. 1990) ........................................................................................... 3

*Prozeralik v Capital Cities Communications*,
  82 N.Y.2d 466, 479, 626 N.E.2d 34, 605 NYS2d 218 [1993] ............................................... 2

*Sultan v. Kings Highway Hosp. Ctr., Inc.,*
  167 A.D.2d 354 (2d Dept. 1990) ........................................................................................... 3

## Other Authorities

*Prosser and Keeton*,
  Torts §2 at 9-10 [5th ed 1984] ................................................................................................ 2

  Public Health Law § 2805-b [4] ............................................................................................. 3

## ARGUMENT

### POINT I

**A. PLAINTIFF'S PROCEDURAL ARGUMENT REGARDING THE VERDICT SHEET FAILS AS DEFENDANT DR. WEBER MADE MULTIPLE OBJECTIONS TO PUNITIVE DAMAGES**

1. Plaintiff's procedural argument regarding the verdict sheet patently fails since Dr. Weber made multiple objections to punitive damages being on the verdict sheet. These applications were made about punitive damages in general. Prior to the start of the trial, a motion seeking to dismiss punitive damages was made. *See*, **ECF #134**. Thereafter, on July 10, 2022, counsel for Dr. Weber submitted a Motion seeking to dismiss the punitive damages and deliberate indifference claims. This letter outlined why punitive damages in this case could not be supported by either the §1983 claim or the state law malpractice claim. S*ee*, **Exhibit D to defendant's Motion**. Finally, during the final charge conference which concerned the final changes to the charges and verdict sheet, on July 11, 2022, Dr. Weber again objected to the punitive damages. *See*, **Exhibit A at p. 1533**. All of Dr. Weber's objections were denied and punitive damages was ultimately included in the verdict sheet.

2. Plaintiff's argument regarding a possible "tactical" choice of not raising the objection prior to the jury being discharged, also fails. In no way did Dr. Weber waive his right. As stated above, Dr. Weber objected to punitive damages several times before the jury rendered their verdict and also after. There was no opportunity given for objections after the verdict was read, as the jury was discharged swiftly after. After the reading of the verdict, defense counsels immediately discussed Post-Trial Motions and the issue of the punitive damages against Dr. Weber was specifically discussed with the Court. The Court deemed the Post-Trial Motions submitted and then set a briefing schedule for the submission of the written Motions. S*ee*, **Exhibit F to**

1

**defendant's Motion at pgs. 1927-1931**. The whole purpose of post-trial motions is to modify, correct or reverse a decision that was made during the trial or in the verdict.

### B. THE PUNITIVE DAMAGES AWARD AGAINST DR. WEBER WAS IMPROPER

3. Plaintiff's argues that punitive damages may be awarded in state-law medical malpractice claims. While that may be true, the level of the defendant's conduct in order to award punitive damages on a medical malpractice claim must still be of an intentional and malicious nature. The Court of Appeals case of Dupree v. Giugliano, 20 N.Y.3d 921 [2012], states,

> The standard for an award of punitive damages is that a defendant manifest evil or malicious conduct beyond any breach of professional duty. There must be:
>
> "aggravation or outrage, such as spite or "malice," or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called willful or wanton" (*see,* Prozeralik v Capital Cities Communications, 82 N.Y.2d 466, 479, 626 N.E.2d 34, 605 NYS2d 218 [1993] quoting Prosser and Keeton, Torts §2 at 9-10 [5th ed 1984]). *Id.* at 924.

4. Here, there was no jury finding that Dr. Weber acted with evil motive or intent or reckless or callous indifference. On the verdict sheet, the jury was specifically asked whether plaintiff proved by a preponderance of the evidence whether Dr. Weber was deliberately indifferent to a serious medical need of plaintiff's in violation of his rights under the 8th Amendment by discharging plaintiff from WMC and the jury answered that question with "no". S*ee*, **Exhibit F to defendant's Motion**.

5. The cases cited by plaintiff in support of his position about punitive damages being awarded in medical malpractice cases are all state court cases. Generally, the verdict sheet in state law cases do not specifically ask juries to determine whether the defendant doctor's treatment amounted to reckless indifference as they do in §1983 federal cases, such as this one. The Courts in the state law cases of Graham, 185 A.D.2d 753 (1st Dept. 1992) and Marsh, 91 A.D.3d 1070 (3rd Dept. 2012) cited by plaintiff found that punitive damages could be supported because the Doctors'

2

actions could have been intentional and malicious. Here, we know that is not true because the jury specifically did not find that Dr. Weber was deliberately indifferent to plaintiff's medical needs.

6.     It should also be noted that none of the state law cases cited by plaintiff deal with the actual award of punitive damages. The cases of Graham, Marsh, Sultan, 167 A.D.2d 354 (2d Dept. 1990), Mullany, 125 A.D.2d 457 (2d Dept. 1986) and Montemurro, 160 A.D.2d 690 (2d Dept. 1990) all deal with whether punitive damages are appropriate in Summary Judgment Motions. Specifically, the Sultan case was against a hospital who had violated its duty to provide emergency treatment to the public pursuant to Public Health Law § 2805-b [4]. The case of McDougald, 73 N.Y.2d 246 [1989] did not concern punitive damages and only contained a sentence about punitive damages in general. As such, none of these cases should have any bearing on the matter at hand. Plaintiff has not cited one case where punitive damages against a Doctor on a state malpractice case were affirmed.

7.     Plaintiff also points to a "cover up" between Drs. Weber and Full where they knowingly assigned plaintiff a bogus score of 10 on the Aldrete scale before he was discharged. As testified by defendant's expert, Dr. Harry Dym, the Aldrete score of 10 was appropriate. *See*, **Exhibit C to defendant's Motion at p. 1002-1003**. At most, the assignment of the 10 Aldrete score could be seen as a difference in expert opinions and does not come close to a cover up, a theory which was never even referenced at trial. It is interesting that plaintiff would cite a case (Maglios v. Peralta, 2022 U.S. Dist. LEXIS 24265) in which the attempted cover up of defendants was an important consideration for the jury when they assessed a punitive damages award. This brings us to the next point.

3

### C. **PLAINTIFF KNEW THAT THE MENTION OF A COVER UP WOULD INFLAME THE JURY AND LEAD TO AN AWARD OF PUNTIVE DAMAGES**

8. Plaintiff argues that the comments regarding a conspiracy/cover up between the Doctors or the Doctors and guards were responsive to comments made by defendants Deal and Palou. However, the comments by Deal and Palou were in reference to themselves not being in a cover up despite having falsified reports. *See*, **Exhibit B at p. 1706-1707**. There was no mention during the trial of Dr. Weber being involved in a cover up – neither with the guards, nor with Dr. Full. This was only referenced by plaintiff during closing arguments right before the jury was left to deliberate. As such, these comments were highly inappropriate and designed to inflame the jury.

9. This is even more likely given the case of <u>Maglios v. Peralta</u>, 2022 U.S. Dist. LEXIS 24265 mentioned in the previous point. Plaintiff's counsel in this case is the same as the plaintiff's counsel in the <u>Maglios</u> case. In that case, which went to trial in April 2021, the attempted cover up of defendants was an important consideration when the jury assessed the punitive damages award. Perhaps plaintiff's counsel in knowing for a fact that inflammatory remarks regarding cover ups and conspiracies would lead to punitive damages having previously tried the <u>Maglios</u> case, stated that Dr. Weber was involved in a cover up in an effort to obtain punitive damages against Dr. Weber, despite there being no evidence as such.

### **POINT II**

### A. **DR. WEBER DID NOT WAIVE THE ARGUMENT REGARDING COMPENSATORY DAMAGES AS THE REQUEST WAS MADE PRIOR TO THE CONCLUSION OF THE TRIAL**

10. Plaintiff argues that Dr. Weber did not raise the argument regarding dismissing the malpractice claim during the trial and as such, it is waived post-trial. This is incorrect as Dr. Weber did raise the issue of plaintiff's expert, Dr. Todd not being qualified to render the opinion he

expressed at trial to support a claim of malpractice during the final Charge Conference on July 11, 2022.  *See*, **Exhibit A at p. 1533-1535**.  Without a qualified expert opinion, a medical malpractice claim cannot stand.

**B. THE COMPENSATORY DAMAGES AWARD AGAINST DR. WEBER WAS INAPPROPRIATE GIVEN THE SPECULATIVE TESTIMONY OF PLAINTIFF'S EXPERT**

11. Notably, plaintiff does not comment on defendant's argument regarding Dr. Todd being unqualified and giving conclusory opinions during his trial testimony.  Instead, plaintiff sets forth his own argument.  As such, it is respectfully submitted that no real opposition to that argument has been set forth by plaintiff.

12. Dr. Todd, a self-professed expert in Aldrete scores, testifies at length about plaintiff's incorrect Aldrete score issued by the oral surgery defendants.  However, Dr. Todd admitted to not using Aldrete scores in his practice as a neurologist.  Clearly, Dr. Todd was unqualified to render such an opinion.  Dr. Todd also admitted that he could not see into the examination room and could not tell what examinations were performed on plaintiff by the oral surgery defendants, yet he was able to state that the Aldrete score was incorrect, which he based solely off the hallway video.  Moreover, Dr. Todd testified that he was not offering, nor was he qualified to offer an opinion on the dental treatment rendered to plaintiff by Dr. Weber.  Dr. Todd's opinions were not based on any relevant experience or evidence in the case, and as such were conclusory and speculative.  Plaintiff has offered no comment whatsoever on this argument.

13. Instead, plaintiff sets forth his own argument speculating about what the jury might have thought about Dr. Weber's credibility.  The issue at hand is different.  The issue is that the jury was permitted to hear testimony from an unqualified expert who rendered conclusory and speculative opinions. Without a qualified expert, plaintiff's malpractice claim fails.  As such, the compensatory damages against Dr. Weber should be set side.

## C. PLAINTIFF'S PAIN AND SUFFERING SHOULD HAVE BEEN LIMITED TO SIX HOURS ON THE VERDICT SHEET

14. Plaintiff argues that in awarding compensatory damages, the jury was also entitled to factor in emotional pain and suffering that plaintiff has endured over the past 4 years. This does not change Dr. Weber's argument. As stated in the original motion papers, Dr. Weber did not inflict the injury on plaintiff. Plaintiff did eventually get treatment and the difference in time had plaintiff been treated immediately and the actual time in which plaintiff was treated for his injury was a matter of hours. If plaintiff has emotional pain and suffering over the memory of his injury, that should be directed to the co-defendants, as Dr. Weber's role in the scenario did not affect plaintiff's ultimate injury. Assuming *arguendo* that Dr. Weber would be, in part, responsible for plaintiff's emotional injury, that too should have been limited to a few hours since plaintiff did eventually receive treatment later that day.

## CONCLUSION

15. Based on the foregoing, this Court should issue an order granting the Post-Trial Motion by defendant, Dr. Frank Weber and set aside both the punitive and compensatory damages against Dr. Weber or in the alternative, grant a new trial and issue such other, further, and different relief as this Court deems just and proper.

Dated:   New York, New York
         December 20, 2022

_____
Robert A. Fitch, Esq.

Of counsel,
    Robert A. Fitch, Esq.
    Iolanda V. D'Ambrosi-Francavilla, Esq.